## Clerk of Court - Caddo Parish

**GARY LOFTIN**
CLERK OF COURT
**MIKE SPENCE**
CHIEF DEPUTY

501 Texas, Room 103                                Shreveport, LA  71101-5408


RED SOX INVESTMENTS LLC  ETAL            NUMBER:  576478-C

    VERSUS                                 FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT LOUISIANA  ETAL       CADDO PARISH, LOUISIANA


I hereby certify that this is a true and correct copy of the entire
proceedings filed in the above styled suit.

Given under my hand and seal of office on this date
April 26, 2016.


                              KARA CRAWFORD
                              DEPUTY CLERK



EXHIBIT
B

DOCKET NUMBER: _576,478_ - SECTION OR DIVISION: ___C___

| | | |
|---|---|---|
| RED SOX INVESTMENTS, L.L.C.,<br>ET AL, ON BEHALF OF ITSELF<br>AND A CLASS OF SIMILARLY<br>SITUATED PROPERTY OWNERS | § | FIRST JUDICIAL DISTRICT COURT |
| VERSUS | § | PARISH OF CADDO |
| CITY OF SHREVEPORT,<br>LOUISIANA, and CADDO PARISH,<br>LOUISIANA | § | STATE OF LOUISIANA |

**ORIGINAL PETITION**

The petition of Red Sox Investments, L.L.C., individually and on behalf of a class of

similarly situated Louisiana property owners, who shows that:

1.  Petitioner herein is Red Sox Investments, L.L.C. ("Plaintiff"), a domestic Limited

    Liability Company whose domicile and principal place of business are in Caddo Parish,

    Louisiana, who brings this action on its own behalf and, on behalf of all other members

    of the Class defined herein, as a Class Action under the provisions of La. C.C.P. art. 591

    et seq.

2.  The individuals or entities comprising the Plaintiff Class, including Plaintiff, Red Sox

    Investments, L.L.C., are defined as:

    a.  Louisiana residents and non-residents who:

    b.  Own or owned property ("Property") in the City of Shreveport ("the City") and/or

        the Parish of Caddo ("the Parish") and failed to pay ad valorem taxes

        ("Delinquent Taxes") on said Property; and

    c.  By reason of the Delinquent Taxes, said Property was offered in a tax sale

        conducted by the City and/or the Parish; and

    d.  Said property was not sold at the tax sale; and

    e.  Said property was adjudicated ("Adjudicated Property") to the City and/or Parish

2892

B. Richie

PGS 53   EXH ___  MIN ✓
CC 3    CP ___  MAIL ___  N/J ___
INDEX 4  REC ___  FAX ___
W/D DOC ___  CERT MAIL ___
SERVICE 2 C.F  3 Rules

Original Class Action Petition     ROUTE TO
MINUTE CLERK

$400.00 FILED
MAY 01 2014
E. G. BRUMLEY
CADDO DEPUTY CLERK OF COURT

pg. 1

under the provisions of La. R.S. 47:2196 et seq. (the "Adjudicated Property Law"); and

f. Said Property was included in a Mineral Lease granted by the City and/or Parish during the calendar year 2009, and/or any subsequent calendar year up to the date of this filing; and

g. Neither the mineral leasing bonus nor any of the royalties paid, which were attributable to the Property, were paid to Plaintiffs or credited to Plaintiffs' Delinquent Taxes and/or the fees relating to Plaintiffs' Delinquent Taxes as required by the Adjudicated Property Law;

3. To the best knowledge, information and belief of plaintiffs herein, 500 individual parcels, more or less (the exact number to be calculated with certainty through discovery), many owned by separate and distinct owners, fall within the aforementioned definition of "Adjudicated Property" in the City of Shreveport, Louisiana.

4. To the best knowledge, information and belief of plaintiffs herein, 500 individual parcels, more or less (the exact number to be calculated with certainty through discovery), many owned by separate and distinct owners, fall within the aforementioned definition of "Adjudicated Property" in Caddo Parish, Louisiana.

5. To the best knowledge, information and belief of plaintiffs herein, 500 individual parcels, more or less (the exact number to be calculated with certainty through discovery), many owned by separate and distinct owners, fall within the aforementioned definition of "Adjudicated Property" in both the Caddo Parish and the City of Shreveport, Louisiana, meaning that said parcels have been adjudicated to both defendant Taxing Authorities concurrently.

6. Made Defendants herein (sometimes referenced individually as "Taxing Authority" or collectively as "Taxing Authorities") are:

a. The City of Shreveport, Louisiana, a political subdivision of the State of Louisiana, which may be served with process in these proceedings through its

Chief Executive Officer, Mayor Cedric Glover, or, in his absence, through any

employee of suitable age and discretion, at 505 Travis Street, Suite 200,

Shreveport, Louisiana 71101; and,

b.  Caddo Parish, Louisiana, a political subdivision of the State of Louisiana, which

may be served with process in these proceedings through its Administrator,

Woody Wilson, or, in his absence, through any employee of suitable age and

discretion, at 505 Travis Street, Suite 800, Shreveport, Louisiana 71101.

7.  This court has jurisdiction and venue over this action pursuant to La. R.S. 13:5104(B).

## APPLICABLE LAW

8.  The law applicable to the wrongful conduct that forms the basis for each cause of action

asserted herein is as follows:

a.  If the owner of land located within the jurisdiction of a Taxing Authority does not

timely pay ad valorem taxes or other legally imposed fees or assessments when

due, the Taxing Authority (in this case the City and/or the Parish) is allowed the

right to collect said unpaid taxes by tax sale. La. R.S. 47:2121, et seq.

b.  If the bid in a tax sale is not at least equal to the amount of the taxes, statutory

impositions, interest, and costs, the tax collector must bid on tax sale title to the

property on behalf of the Taxing Authority (i.e., the City or the Parish) and file a

tax sale certificate in the conveyance records of the parish in which the property is

located, after which the property is considered to be "Adjudicated Property". La.

R.S. 47:2196(A).

c.  By statute and as used herein, "Adjudicated Property" is immovable property on

which the property taxes were not paid and which was not purchased at a

subsequent tax sale. La. R.S. 47:2196; 47:2122(2)

d.  Pursuant to La. R.S. 47:2196(A), once property becomes Adjudicated Property,

legal title can only:

- ■ Be redeemed (i.e., placed back into the name of the tax debtor) pursuant to the provisions of La. R.S. 47:2241 et seq.; or

- ■ Be donated or sold to a third party by the taxing City or Parish pursuant to La. R.S. 47:2201, 2211, and 2237; or

- ■ Have ownership and/or the right to take possession transferred to the taxing City or Parish pursuant to La. R.S. 47:2231 et seq.

e.  If the City or Parish, as the Taxing Authority, desires to pursue possession of the Adjudicated Property, it may institute suit in district court to obtain possession of an Adjudicated Property. La. R.S. 47:2231.

f.  After such suit is filed, the court must be presented with a certified copy of the tax sale certificate, ten days' notice must be given to the property owner, and a proper hearing must be had. La. R.S. 47:2232.

g.  Only after such steps have been taken will the court then issue an order of possession commanding the Sheriff to place the City or Parish in actual possession of the Adjudicated Property. La R.S. 47:2232.

h.  Absent compliance with the procedures set forth in La. R.S. 47:2231-2232 the Taxing Authority has no legal right to lease the Adjudicated Property. Stated differently, only after taking or being placed in possession of the Adjudicated Property as set forth above may the City or Parish lease the Adjudicated Property on commercially reasonable terms and collect rentals therefrom. La. R.S. 47:2233.

i.  Once the Taxing Authority has the order of possession through compliance with the procedures described above, La. R.S. 47:2233 mandates that the City or Parish "**shall apply the rentals first to the payment of all costs of court incurred in the proceeding**" and "**[t]hereafter, all rental income shall be applied against any taxes, charges imposed pursuant to R.S. 33:1236, or paving or other local**

improvement assessments due against the property." (Emphasis added.)

j.  Furthermore, **"when all of the obligations have been paid in full, the political subdivision shall issue a proper certificate of redemption and surrender its possession of the property"** to the formerly delinquent taxpayer. La. R.S. 47:2233 (emphasis added).

k.  Obviously, once the certificate of redemption is issued reflecting satisfaction of the tax obligation through rental income, any rental payments should be payable to the formerly delinquent taxpayer whose property has now been redeemed.

## FACTUAL SUMMARY

9.  Beginning in 2009, both the City and the Parish entered[1] into mineral leases covering areas that include the Adjudicated Property belonging to members of the Plaintiff Class, including, more specifically:

a.  Mineral Lease by and between Caddo Parish and Theophilus Oil & Gas. dated July 8, 2009 (State Agency Lease No. 20104 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2241923, at Book 4251, Page 256, in the records of Caddo Parish, Louisiana;

b.  Mineral Lease by and between Caddo Parish and Classic Petroleum, dated August 12, 2009 (State Agency Lease No. 20120 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2248278, at Book 4264, Page 379, in the records of Caddo Parish, Louisiana;

---

[1] The execution of the original leases was made by the State Mineral and Energy Board on behalf of the City and/or the Parish pursuant to La. R.S. 30:153, which provides: "Any agency may by resolution direct the State Mineral and Energy Board to lease its land…The bonus money, if any, received for the lease shall be transmitted by the State Mineral and Energy Board to the agency. After the execution of the original lease, all rights and authority in connection therewith shall be vested in the agency to the same extent as if the agency itself had leased the land."

Original Class Action Petition                                              pg. 5

c.  Mineral Lease by and between Caddo Parish and Merit Energy, dated August 12,

2009 (State Agency Lease No. 20121 executed by the State Mineral and Energy

Board of the State of Louisiana on behalf of the Caddo Parish Commission),

recorded under Registry Number 2248627, at Book 4265, Page 122, in the records

of Caddo Parish, Louisiana;

d.  Mineral Lease by and between Caddo Parish and Suncoast, dated August 12, 2009

(State Agency Lease No. 20122 executed by the State Mineral and Energy Board

of the State of Louisiana on behalf of the Caddo Parish Commission), recorded

under Registry Number 2248812, at Book 4265, Page 699, in the records of

Caddo Parish, Louisiana;

e.  Mineral Lease by and between Caddo Parish and Classic Petroleum, dated August

12, 2009 (State Agency Lease No. 20123 executed by the State Mineral and

Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2248281, at Book 4264, Page

379, in the records of Caddo Parish, Louisiana;

f.  Mineral Lease by and between Caddo Parish and Merit Energy, dated August 12,

2009 (State Agency Lease No. 20124 executed by the State Mineral and Energy

Board of the State of Louisiana on behalf of the Caddo Parish Commission),

recorded under Registry Number 2248626, at Book 4265, Page 109, in the records

of Caddo Parish, Louisiana;

g.  Mineral Lease by and between Caddo Parish and Merit Energy, dated August 12,

2009 (State Agency Lease No. 20126 executed by the State Mineral and Energy

Board of the State of Louisiana on behalf of the Caddo Parish Commission),

recorded under Registry Number 2248625, at Book 4265, Page 96, in the records

of Caddo Parish, Louisiana;

h.  Mineral Lease by and between Caddo Parish and Classic Petroleum, dated August

12, 2009 (State Agency Lease No. 20131 executed by the State Mineral and

Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2248285, at Book 4264, Page

422, in the records of Caddo Parish, Louisiana;

i.   Mineral Lease by and between Caddo Parish and Suncoast, dated August 12, 2009

(State Agency Lease No. 20132 executed by the State Mineral and Energy Board

of the State of Louisiana on behalf of the Caddo Parish Commission), recorded

under Registry Number 2248817, at Book 4265, Page 743, in the records of

Caddo Parish, Louisiana;

j.   Mineral Lease by and between Caddo Parish and Merit Energy, dated August 12,

2009 (State Agency Lease No. 20133 executed by the State Mineral and Energy

Board of the State of Louisiana on behalf of the Caddo Parish Commission),

recorded under Registry Number 2248623, at Book 4265, Page 70, in the records

of Caddo Parish, Louisiana;

k.   Mineral Lease by and between Caddo Parish and Classic Petroleum, dated August

12, 2009 (State Agency Lease No. 20134 executed by the State Mineral and

Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2248287, at Book 4264, Page

435, in the records of Caddo Parish, Louisiana;

l.   Mineral Lease by and between the City of Shreveport and Cypress Energy, dated

October 14, 2009 (State Agency Lease No. 20163 executed by the State Mineral

and Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2259640, at Book 4290, Page

793, in the records of Caddo Parish, Louisiana;

m.   Mineral Lease by and between the City of Shreveport and Cypress Energy, dated

October 14, 2009 (State Agency Lease No. 20164 executed by the State Mineral

and Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2259641, at Book 4291, Page 1,

in the records of Caddo Parish, Louisiana;

n.   Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated October 14, 2009 (State Agency Lease No. 20165 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2258346, at Book 4287, Page 764, in the records of Caddo Parish, Louisiana;

o.   Mineral Lease by and between the Caddo Parish and Questar, dated January 13, 2010 (State Agency Lease No. 20240 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2272385, at Book 4322, Page 135, in the records of Caddo Parish, Louisiana;

p.   Mineral Lease by and between the City of Shreveport and Classic Petroleum, dated , March 10, 2010 (State Agency Lease No. 20282 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2281473, at Book 4342, Page 470, in the records of Caddo Parish, Louisiana;

q.   Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20300 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286274, at Book 4353, Page 760, in the records of Caddo Parish, Louisiana;

r.   Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20303 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286277, at Book 4353, Page 799, in the records of Caddo Parish, Louisiana;

s.   Mineral Lease by and between the Caddo Parish and Questar, dated April 14,

2010 (State Agency Lease No. 20304 executed by the State Mineral and Energy

Board of the State of Louisiana on behalf of the Caddo Parish Commission),

recorded under Registry Number 2286999, at Book 4355, Page 660, in the records

of Caddo Parish, Louisiana;

t.    Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated

April 14, 2010 (State Agency Lease No. 20305 executed by the State Mineral and

Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2286278, at Book 4354, Page 1,

in the records of Caddo Parish, Louisiana;

u.    Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated

April 14, 2010 (State Agency Lease No. 20306 executed by the State Mineral and

Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2286279, at Book 4354, Page 15,

in the records of Caddo Parish, Louisiana;

v.    Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated

April 14, 2010 (State Agency Lease No. 20307 executed by the State Mineral and

Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2286280, at Book 4354, Page 28,

in the records of Caddo Parish, Louisiana;

w.   Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated

April 14, 2010 (State Agency Lease No. 20309 executed by the State Mineral and

Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2286281, at Book 4354, Page 41,

in the records of Caddo Parish, Louisiana;

x.    Mineral Lease by and between the Caddo Parish and Questar, dated April 14,

2010 (State Agency Lease No. 20310 executed by the State Mineral and Energy

Board of the State of Louisiana on behalf of the Caddo Parish Commission),

recorded under Registry Number 2287001, at Book 4355, Page 686, in the records of Caddo Parish, Louisiana;

y.  Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20311 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286282, at Book 4354, Page 54, in the records of Caddo Parish, Louisiana;

z.  Mineral Lease by and between the Caddo Parish and Questar, dated April 14, 2010 (State Agency Lease No. 20312 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2287002, at Book 4355, Page 699, in the records of Caddo Parish, Louisiana;

aa. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20313 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286283, at Book 4354, Page 67, in the records of Caddo Parish, Louisiana;

bb. Mineral Lease by and between the Caddo Parish and Encana, dated May 12, 2010 (State Agency Lease No. 20346 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2292378, at Book 4369, Page 27, in the records of Caddo Parish, Louisiana;

cc. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated July 14, 2010 (State Agency Lease No. 20380 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2305212, at Book 4392, Page 352, in the records of Caddo Parish, Louisiana;

dd. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated July 14, 2010 (State Agency Lease No. 20382 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2305214, at Book 4392, Page 386, in the records of Caddo Parish, Louisiana;

ee. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated July 14, 2010 (State Agency Lease No. 20383 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2305215, at Book 4392, Page 403, in the records of Caddo Parish, Louisiana;

ff.  Mineral Lease by and between the City of Shreveport and Classic Petroleum, dated August 11, 2010 (State Agency Lease No. 20419 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2311290, at Book 4403, Page 747, in the records of Caddo Parish, Louisiana;

gg. Mineral Lease by and between the Caddo Parish and Tacoma Energy, dated February 13, 2013 (State Agency Lease No. 21110 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2446929, at Book 4645, Page 213, in the records of Caddo Parish, Louisiana;

hh. Mineral Lease by and between the Caddo Parish and HEP Energy, dated September 11, 2013 (State Agency Lease No. 21258 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2478185, at Book 4698, Page 398, in the records of Caddo Parish, Louisiana;

ii.  Mineral Lease by and between the Caddo Parish and HEP Energy, dated September 11, 2013 (State Agency Lease No. 21259 executed by the State

Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2478186, at Book 4698, Page

412, in the records of Caddo Parish, Louisiana;

jj.  Mineral Lease by and between the Caddo Parish and HEP Energy, dated

September 11, 2013 (State Agency Lease No. 21260 executed by the State

Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2478187, at Book 4698, Page

426, in the records of Caddo Parish, Louisiana;

kk.  Mineral Lease by and between the Caddo Parish and HEP Energy, dated

September 11, 2013 (State Agency Lease No. 21261 executed by the State

Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2478188, at Book 4698, Page

440, in the records of Caddo Parish, Louisiana;

ll.  Mineral Lease by and between the Caddo Parish and HEP Energy, dated

September 11, 2013 (State Agency Lease No. 21262 executed by the State

Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2478189, at Book 4698, Page

454, in the records of Caddo Parish, Louisiana;

mm.  Mineral Lease by and between the Caddo Parish and HEP Energy, dated

September 11, 2013 (State Agency Lease No. 21263 executed by the State

Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish

Commission), recorded under Registry Number 2478190, at Book 4698, Page

468, in the records of Caddo Parish, Louisiana;

10. Upon information and belief, the City and/or the Parish entered into other Mineral Leases

covering areas including the Adjudicated Property belonging to members of the Plaintiff

Class, which Mineral Leases are not currently known but will be identified with certainty

through discovery.

11. Each of the aforementioned leases specifically listed the Adjudicated Property attributable to the members of the Plaintiff Class as being part and parcel of the mineral acreage subject to said leases.

12. The aforementioned leases gave the mineral lessee the right to explore for and extract minerals from the lands encompassed in each lease, including the Adjudicated Property attributable to the members of the Plaintiff Class.

13. In exchange for execution of the aforementioned leases, the City and Parish received "bonus payments", or sums of money based upon the amount of acreage subject to the lease, which necessarily meant that the respective Taxing Authority received bonus payments attributable to the acreage represented by the Adjudicated Property included within each such lease.

14. Further, as additional compensation for said leases, the City and Parish agreed to receive annual rental and/or royalty payments based upon the acreage included within the leases, including the acreage attributable to the Adjudicated Property listed in each such lease.

15. Upon information and belief, wells have been drilled and completed under the authority of said mineral leases, and the City and Parish have received and accepted royalty payments from the production of those wells, including royalty payments attributable to the acreage included within the Adjudicated Property listed in each such lease.

16. Accordingly, by including the Adjudicated Property within the listed acreage covered by these mineral leases, the City and Parish have received bonus payments, annual rental, and royalty payments that are directly attributable to the acreage represented by the listed Adjudicated Property within each such lease.

17. Upon information and belief, the City and the Parish leased the Adjudicated Property belonging to members of the Plaintiff Class without first obtaining possession of said properties pursuant to the procedures outlined in La. R.S. 47:2231 and 2232.

18. Upon information and belief, the City and Parish have failed and/or refused to properly apply the mineral revenues to the benefit of the Plaintiff taxpayers in accordance La. R.S.

47:2233 which requires that the Taxing Authority "**shall apply the rentals first to the payment of all costs of court incurred in the proceeding**" and "**[t]hereafter, all rental income shall be applied against any taxes, charges imposed pursuant to R.S. 33:1236, or paving or other local improvement assessments due against the property.**"

19. Furthermore, after failing to properly apply the mineral revenues so as to satisfy the tax obligations, the Taxing Authorities have failed to issue proper certificates of redemption and surrender possession of the property to the formerly delinquent taxpayer as required by  La. R.S. 47:2233

20. Upon information and belief, after failing to properly apply the mineral revenues to satisfy the tax obligations and then failing to issue proper certificates of redemption on property whose tax obligations would have been so satisfied, the City and Parish have sold some parcels of Adjudicated Properties to third parties to satisfy the tax obligations thereby permanently depriving the taxpayer owners of the ownership, possession and fruits of their property.

21. The failure of the Defendant Taxing Authorities to comply with proper legal procedures before entering into mineral leases on the Adjudicated Property, the failure of the Defendant Taxing Authorities to apply the fruits of those leases to the benefit of the delinquent taxpayers as required by law, the failure of the Defendant Taxing Authorities to issue proper certificates of redemption to the formerly delinquent taxpayers once the tax obligations were satisfied by the mineral revenues, and the affirmative acts of the Defendant Taxing Authorities in selling Adjudicated Property which would have been redeemed had the mineral revenues been properly applied to the delinquent taxes, give rise to the  following causes of action which are, to the extent they conflict, submitted as alternative causes of action:

**FIRST CAUSE OF ACTION:** **AS THE CITY AND PARISH VOLUNTARILY UNDERTOOK TO RECEIVE REVENUE FROM THE ADJUDICATED PROPERTIES BY ENTERING INTO MINERAL LEASES, THEY ALSO VOLUNTARILY UNDERTOOK THE STATUTORY OBLIGATIONS OF**

**PROPER APPLICATION OF THOSE REVENUES AND ARE ESSTOPPED FROM REFUSING TO PROPERLY APPLY THOSE REVENUES TO THE BENEFIT OF THE DELINQUENT TAXPAYERS, AS REQUIRED BY LAW**

22. As detailed above, the La. R.S. 47:2231 – 2233 set forth a specific statutory procedure to allow a Taxing Authority to generate rental revenue on Adjudicated Property. That statutory scheme also creates obligations for the Taxing Authorities who chose to take the benefit of that revenue.

23. In this case, despite failing to obtain proper possession of the Adjudicated Property prior to entering into leases specifically listing said Adjudicated Property, the City and Parish generated rental revenue on the Adjudicated Property by use of Adjudicated Property acreage in the mineral leases and thus are obligated to comply with the statutory obligations of La. R.S. 47:2233 regarding the proper use and application of said rental and royalty revenues.

24. The City and Parish did not comply – presumably through willful noncompliance – with the due process procedures required for them to legally enter into such mineral leases as an exercise of the possessory right under the Adjudicated Property Law. Nevertheless, since the City and Parish voluntarily undertook the benefits of renting the Adjudicated Properties by specifically listing them in the mineral leases, they likewise should be deemed to have voluntarily undertaken the collateral obligations with respect to the proper allocation of rental income. To say otherwise would allow these governmental Taxing Authorities to gather enormous profits through willful noncompliance with law at the expense of innocent taxpayers.

25. Stated differently, the only basis upon which these parcels were included within a lease of governmental property was their adjudicated status; once the Taxing Authorities used the adjudicated status of these properties as authority or justification for including them in mineral leases, they are estopped from failing or refusing to apply the mineral revenues to the benefit of the delinquent taxpayer, as required by law.

26. Upon information and belief, the City and Parish have failed and/or refused to properly apply the mineral revenues in accordance with La. R.S. 47:2233, and the members of the Plaintiff Class are entitled to an order from this honorable court compelling the proper application of said mineral revenues, redemption of property, recovery of excess revenues collected over and above that which was necessary to redeem the property, recovery of any payments made by the taxpayer to redeem property which would otherwise have been redeemed through proper application of the mineral revenues, recovery of damages for property which may have been sold, donated or otherwise disposed of after the date upon which proper application of revenues would have necessitated redemption, recovery of damages for the period of time Plaintiffs were denied possession of their property due to the failure of the Taxing Authority to properly apply the revenues and issue the certificate of redemption, and such other just and equitable relief as may be warranted and allowed by law.

**SECOND CAUSE OF ACTION:** FAILING COMPLIANCE WITH THE DUE PROCESS REQUIREMENTS NECESSARY TO AVAIL ITSELF OF THE RIGHTS AND PRIVELIGES TO RENTAL REVENUES AS A POSSESSOR OF ADJUDICATED PROPERTY, THE CITY AND PARISH ACTED AS NEGOTIORUM GESTORS ON BEHALF OF THE PLAINTIFF CLASS MEMBERS IN ENTERING INTO THESE MINERAL LEASES

27. As noted above, the City and/or the Parish knew or should have known that they did not have the right to grant mineral leases or receive the proceeds therefrom without first performing the steps required by La. R.S. 47:2231 and 2232.

28. Nevertheless, under the circumstances then present, it was in the best interest of the delinquent taxpayers that said mineral leases be executed at that point in time, to wit:

   a. In 2009 and 2010, when most of these leases were executed, because of the natural gas industry's extraordinary interest in the exploration and development of the Haynesville Shale formation, there was a "leasing frenzy" in terms of the bonuses being paid and the lease terms being given for acreage within Caddo

Parish and the City of Shreveport, and the leases by the Taxing Authorities may

have been the only feasible way for the owners of Adjudicated Property to take

advantage of that favorable leasing window;

b.   By definition, the acreage at issue was Adjudicated Property, meaning that the

ownership or title of the taxpayer/owner was tenuous and of impaired

marketability and that the Taxing Authority was in a better position to enter into

mineral leases than were the individual owners of Adjudicated Property;

c.   Upon information and belief, many of these Adjudicated Properties are subject to

extremely fragmented ownership, meaning that it would be extraordinarily

difficult and not commercially feasible for leasing agents to locate and secure

leases from the various co-owners of said Adjudicated Property as opposed to

dealing with the Taxing Authority;

d.   Many of these Adjudicated Properties are very small, meaning that the owners

had little bargaining position, as opposed to the Taxing Authority who, by

combining the adjudicated property with its own acreage, could negotiate for a

much larger portion of the proposed drilling unit and, by reason of that stronger

negotiating position, could secure better terms through competitive bidding;

e.   By reason of its access to the leverage, knowledge, and expertise of the State

Mineral and Energy Board, the City and Parish were in a position to negotiate

more favorable leases than was possible for the individual owners of small

Adjudicated Property tracts;

f.   The owners of the Adjudicated Property were clearly unable to pay the taxes

necessary to maintain that ownership (as evidenced by the necessity of a tax sale),

and thus the immediate availability of leasing bonus money through mineral

leases executed by the Taxing Authority was a perfect mechanism by which funds

could be generated to redeem the property, which was in the best interest of the

delinquent taxpayers.

29. Therefore, even though the City and Parish did not comply with the procedural requirements of La. R.S. 47:2231 and 2232, it is alleged upon information and belief that these Taxing Authorities recognized that it was in the best interest of the owners of the Adjudicated Properties that said Adjudicated Properties be included within the mineral leases being executed by said Taxing Authorities on their own property.

30. La. C.C. art. 2292 defines a Negotiorum Gestio as follows: "There is a management of affairs when a person, the manager, acts without authority to protect the interests of another, the owner, in the reasonable belief that the owner would approve of the action if made aware of the circumstances."

31. In this case, absent compliance with the due process requirements of La. R.S. 47:2231 and 2232, the defendant Taxing Authorities clearly acted without legal authority when they included the Adjudicated Property within the mineral leases covering property owned by said Taxing Authorities.

32. Therefore, assuming that it was not the intent of these defendant Taxing Authorities to take the property of their taxpayers without due process of law, and recognizing the indisputable fact that it was in the best interest of these delinquent taxpayers that their property be included within the favorable leases executed by these Taxing Authorities, it is alleged upon information and belief that the City and Parish were acting as negotiorum gestors on behalf of their taxpayers when executing these mineral leases.

33. Having included the Adjudicated Properties in the mineral leases as negotiorum gestors for the taxpayers, the defendant Taxing Authorities were and are obligated to comply with La. R.S. 47:2233, which mandates that the City or Parish "shall apply the rentals first to the payment of all costs of court incurred in the proceeding" and "[t]hereafter, all rental income shall be applied against any taxes, charges imposed pursuant to R.S. 33:1236, or paving or other local improvement assessments due against the property." (Emphasis added.) Furthermore, "when all of the obligations have been paid in full, the political subdivision shall issue a proper certificate of redemption

and surrender its possession of the property" to the formerly delinquent taxpayer.

(Emphasis added).

34. Moreover, as negotiorum gestors, the defendant Taxing Authorities owe the duties of a

prudent administrator to the members of the Plaintiff Class and are liable for any

damages caused by their fault or neglect. La. C.C. art. 2295

35. Upon information and belief, the City and Parish have failed and/or refused to properly

apply the mineral revenues in accordance with La. R.S. 47:2233, and the members of the

Plaintiff Class are entitled to an order from this honorable court compelling the proper

application of said mineral revenues, the redemption of property, the recovery of excess

revenues collected over and above that which was necessary to redeem the property,

recovery of any payments made by the taxpayer to redeem property which would

otherwise have been redeemed through proper application of the mineral revenues, the

recovery of damages for property which may have been sold, donated or otherwise

disposed of after the date upon which proper application of revenues would have

necessitated redemption, recovery of damages for the period of time Plaintiffs were

denied possession of their property due to the failure of the Taxing Authority to properly

apply the revenues and issue the certificate of redemption, and such other just and

equitable relief as may be warranted and allowed by law.

**THIRD CAUSE OF ACTION: BY SPECIFICALLY INCLUDING ADJUDICATED PROPERTY WITHIN THE MINERAL LEASES WITHOUT COMPLYING WITH THE DUE PROCESS REQUIREMENTS OF LA. R.S. 47:2231-2232, AND THEN FAILING OR REFUSING TO PROPERLY APPLY THE REVENUES DERIVED FROM ADJUDICATED PROPERTY IN THE MANNER SET FORTH BY 47:2233, THE CITY AND PARISH VIOLATED BOTH ARTICLE 1, SECTION 2 AND ARTICLE 7, SECTION 25 OF THE CONSTITUTION OF THE STATE OF LOUISIANA**

36. Article 1, Section 2 of the Constitution of the State of Louisiana provides as follows: "No

person shall be deprived of life, liberty, or property, except by due process of law."

37. Article 7, Section 25 of the Constitution of the State of Louisiana provides, in pertinent

part, as follows: "There shall be no forfeiture of property for non-payment of taxes."

38. As noted above, La. R.S. 47:2231-2232 set forth a specific judicial process to be followed
by a Taxing Authority as a prerequisite to leasing Adjudicated Property so as to generate
rental income.

39. Further, La. R.S. 47:2233 sets forth a specific method by which revenues derived from
Adjudicated Property are to be allocated to the best interest of the property owner.

40. Clearly, this statutory scheme embodies the due process protections which are required
by Article 1, Section 2 and the non-forfeiture protections of Article 7, Section 25 of the
Constitution of the State of Louisiana.

41. At the time that the City and/or the Parish entered into the mineral leases, and at all times
subsequent thereto, they knowingly and intentionally failed to follow said due process
procedures and non-forfeiture procedures prior to entering into the mineral leases and/or
made no effort to determine and ensure that said procedures had been followed prior to
entering into the mineral leases.

42. Thereafter, the City and/or Parish knowingly and intentionally, and on a continuing basis
up to and including the date of filing of this lawsuit, failed to properly apply the revenues
from Adjudicated Property in the manner required by La. R.S. 47:2233, which failure
constitutes a continuing violation of the due process rights guaranteed under Article 1,
Section 2 and the non-forfeiture protections of Article 7, Section 25 of the Constitution of
the State of Louisiana and is a continuing tort in violation of La. C.C. art. 2315, et. seq.

43. The failure of the City and/or the Parish to follow the possession procedures mandated by
La. R.S. 47:2231 and 2232 caused, and, due to the continuing conversion of royalty
proceeds from the mineral leases, continues to cause damages to the members of the
Plaintiff Class, and the members of the Plaintiff Class are entitled to an order from this
honorable court compelling the proper application of said mineral revenues, the
redemption of the property upon which such revenues have been generated, the recovery
of excess revenues collected over and above that which was necessary to redeem the

property, the recovery of any payments made by the taxpayer to redeem property which would otherwise have been redeemed through proper application of the mineral revenues, general damages for the unconstitutional seizure, denial of due process, and other wrongful conduct of the defendants, the recovery of damages for property which may have been sold, donated or otherwise disposed of after the date upon which proper application of revenues would have necessitated redemption, recovery of damages for the period of time Plaintiffs were denied possession of their property due to the failure of the Taxing Authority to properly apply the revenues and issue the certificate of redemption, and such other just and equitable relief and monetary damages as may be warranted and allowed by law.

**FOURTH CAUSE OF ACTION:** BY SPECIFICALLY INCLUDING ADJUDICATED PROPERTY WITHIN THE MINERAL LEASES WITHOUT COMPLYING WITH THE DUE PROCESS REQUIREMENTS OF LA. R.S. 47:2231-2232 THE TAXING AUTHORITIES CREATED PRACTICAL AND LEGAL BARRIERS TO LEASING THE PROPERTY BY THE PLAINTIFF CLASS MEMBERS, AND THUS THE CITY AND PARISH VIOLATED ARTICLE 1, SECTION 2 AND ARTICLE 7, SECTION 25 OF THE CONSTITUTION OF THE STATE OF LOUISIANA

44. As noted above, Article 1, Section 2 of the Constitution of the State of Louisiana provides as follows: "No person shall be deprived of life, liberty, or property, except by due process of law."

45. As noted above, Article 7, Section 25 of the Constitution of the State of Louisiana provides, in pertinent part, as follows: "There shall be no forfeiture of property for non-payment of taxes."

46. As noted above, La. R.S. 47:2231-2232 set forth a specific judicial process to be followed by a Taxing Authority as a prerequisite to leasing Adjudicated Property so as to generate rental income.

47. Clearly, this statutory scheme embodies the due process protections which are required by Article 1, Section 2 and the non-forfeiture protections of Article 7, Section 25 of the Constitution of the State of Louisiana.

48. At the time that the City and/or the Parish entered into the mineral leases, and at all times subsequent thereto, they knowingly and intentionally failed to follow said due process and non-forfeiture procedures prior to entering into the mineral leases and/or made no effort to determine and ensure that said procedures had been followed prior to entering into the mineral leases.

49. The opportunity to enter into a mineral lease is a property right and, as such, is protected from wrongful seizure under Article 1, Section 2 and non-forfeiture under Article 7, Section 25 of the Constitution of the State of Louisiana.

50. By entering into mineral leases on the Adjudicated Properties, the City and Parish created practical and/or legal barriers to leasing by the property owners which barriers constitute an unlawful taking by said Defendant Taxing Authorities.

51. Moreover, had the Defendant Taxing Authorities not entered into the unauthorized mineral leases, the oil and gas operators who leased the Adjudicated Properties from the Defendant Taxing Authorities would instead have leased from the property owners, thereby profiting the property owners and giving them the means to pay the taxes and redeem their property. Therefore, the unauthorized and illegal mineral leases by the Defendant Taxing Authorities actually deterred redemption of the property by the lawful owners of said property by taking away the market for a lawful lease.

52. Further, the unlawful mineral leases executed by the Defendant Taxing Authorities created a cloud or defect on the mineral title of the Adjudicated Properties, thereby making them less desirable to mineral lessees. Moreover, since many of the Adjudicated Properties at issue herein are very small, the potential cost of clearing the mineral title created an insurmountable barrier to leasing opportunities of the taxpayer/owners of said Adjudicated Properties.

53. Thereafter, the City and/or Parish knowingly and intentionally, and on a continuing basis up to and including the date of filing of this lawsuit, continued to maintain the illegal and unauthorized leases and to take the royalties that rightfully should go to the

Original Class Action Petition                                                                      pg. 22

taxpayer/owners, which conduct constitutes a continuing violation of the due process

rights guaranteed under Article 1, Section 2 and the non-forfeiture protections of Article

7, Section 25 of the Constitution of the State of Louisiana and is a continuing tort in

violation of La. C.C. art. 2315, et. seq.

54. The illegal leases, the uncredited bonus payments, and the continuing conversion of

royalty proceeds from the mineral leases continues to cause damages to the members of

the Plaintiff Class, and the members of the Plaintiff Class are entitled to a money

judgment equal to said confiscated mineral revenues, the redemption of the property upon

which such revenues have been generated, the recovery of excess revenues collected over

and above that which was necessary to redeem the property, the recovery of any

payments made by the taxpayer to redeem property which would otherwise have been

redeemed through proper application of the mineral revenues, general damages for the

unconstitutional seizure, denial of due process, and other wrongful conduct of the

defendants, the recovery of damages for property which may have been sold, donated or

otherwise disposed of after the date upon which proper application of revenues would

have necessitated redemption, recovery of damages for the period of time Plaintiffs were

denied possession of their property due to the failure of the Taxing Authority to properly

apply the revenues and issue the certificate of redemption, and such other just and

equitable relief and monetary damages as may be warranted and allowed by law.


**FIFTH CAUSE OF ACTION:** **THE FAILURE OF THE CITY AND/OR PARISH TO FOLLOW THE REQUIREMENTS OF LA. R.S. 47:2233 ET SEQ. CAUSED, AND DUE TO THE ONGOING CONVERSION OF MINERAL ROYALTY PAYMENTS CONTINUES TO CAUSE, THE UNJUST ENRICHMENT OF THE CITY AND/OR PARISH TO THE DETRIMENT OF THE MEMBERS OF THE PLAINTIFF CLASS**

55. La. C.C. art. 2298 provides, in pertinent part, that "A person who has been enriched

without cause at the expense of another person is bound to compensate that person…"

56. As set forth at length hereinabove, the City and/or Parish specifically included these

Original Class Action Petition                                              pg. 23

Adjudicated Properties within mineral leases and collected revenues therefrom. Because these Taxing Authorities failed or refused to follow the due process procedures required as a prerequisite to such leasing, and then failed or refused to apply the revenues to the benefit of the taxpayers as required by law, the City and Parish have been unjustly enriched to the detriment of the Plaintiff Class members. Pursuant to La. C.C. art. 2298 the members of the Plaintiff Class are entitled to an order from this honorable court compelling the proper application of said mineral revenues, redemption of property, recovery of excess revenues collected over and above that which was necessary to redeem the property, the recovery of any payments made by the taxpayer to redeem property which would otherwise have been redeemed through proper application of the mineral revenues, recovery of damages for property which may have been sold, donated or otherwise disposed of after the date upon which proper application of revenues would have necessitated redemption, recovery of damages for the period of time Plaintiffs were denied possession of their property due to the failure of the Taxing Authority to properly apply the revenues and issue the certificate of redemption, and such other just and equitable relief and monetary damages as may be warranted and allowed by law.

### SOLIDARY LIABILITY OF THE DEFENDANT TAXING AUTHORITIES

57. La. C.C. Art. 2324(A) provides as follows: "He who conspires with another person to commit an intentional or wilful act is answerable, in solido, with that person, for the damage caused by such act."

58. Upon information and belief, the City and Parish were each aware of the actions of the other and knowingly and jointly participated in a scheme to deprive the owners of Adjudicated Property of the benefit of the mineral revenues on the Adjudicated Property.

59. Specifically, the City and Parish routinely jointly reserved mineral rights upon the sale of Adjudicated Property, which joint reservation of mineral rights clearly demonstrates a

Original Class Action Petition                                                    pg. 24

joint effort to mutually benefit from the Mineral Leases and, to the detriment of, and in violation of the rights of, the owners of Adjudicated Property. Moreover, the fact that both the City and the Parish failed to follow the legal pre-requisites to entering into mineral leases and both failed to properly apply mineral revenues to delinquent taxes as required by statute demonstrates that they were acting in concert in entering into the Mineral Leases.

60. As the City and Parish jointly participated in the actions described hereinabove, they are solidarily liable under C.C. Art. 2324(A) for all damages suffered by the Plaintiff Class, regardless of which Taxing Authority collected the Mineral Revenues, regardless of how those Mineral Revenues were apportioned or shared between them, and regardless of which Taxing Authority subsequently sold Adjudicated Property that would have been redeemed had the mineral revenues been properly applied.

## DAMAGES AND THE NEED FOR AN ACCOUNTING BY THE TAXING AUTHORITIES

61. But for the actions of the Defendant Taxing Authorities, most, if not all, of the members of the Plaintiff Class (the exact number to be calculated with certainty through discovery) would have received sufficient credits from the bonus payments and royalty payments attributable to their land to have paid all of their property taxes and related fees.

62. But for the actions of the Defendant Taxing Authorities Defendants, most, if not all, of the members of the Plaintiff Class (the exact number to be calculated with certainty through discovery) would have been issued a proper certificate of redemption and would again own and be in possession of their property.

63. But for the actions of the Defendant Taxing Authorities, each Plaintiff Class Member would not have sustained and would not continue to sustain damages for the loss of ownership and/or possession of their property from the time that the property would have

been redeemed by proper application of the bonus and royalty payments until the time that the property was or is actually redeemed.

64. But for the actions of the Defendant Taxing Authorities, most, if not all, of the members of the Plaintiff Class (the exact number to be calculated with certainty through discovery) would currently be receiving any royalty payments attributable to their land being paid under the existing Mineral Leases.

65. The City and/or the Parish have, in a number of instances, "sold" Adjudicated Properties that would have been redeemed by members of the Plaintiff Class but for the actions of the Defendant Taxing Authorities in failing to properly apply the mineral revenues to the payment of taxes and fees owed on the Adjudicated Property. Plaintiffs are entitled to damages for the loss of their property through such sales.

66. Based on information and belief, many of those "purchasers" of said Adjudicated Property have made substantial expenditures and improvements to those properties (the exact number and value to be calculated with certainty through discovery), thereby rendering impossible the return of said property to the rightful owner.

67. But for the actions of the Defendant Taxing Authorities, the members of the Plaintiff Class would have redeemed their property after having been properly credited for the revenues earned by the property and would therefore be entitled to the value of the servitudes granted by the City and/or the Parish.

68. Upon information and belief, some taxpayers have paid to redeem their property, which payment would not have been necessary had the mineral revenues been properly credited. These taxpayers are entitled to a refund of said payments.

69. Upon information and belief, the defendant Taxing Authorities have continued to charge penalties and interest on tax liabilities that would have been reduced or extinguished by proper crediting of the mineral revenues. The members of the Plaintiff Class are entitled to a refund or elimination of all such penalties and interest.

70. The members of the Plaintiff Class are entitled to general damages for the

unconstitutional seizure, denial of due process, and other wrongful conduct of the
defendants related to the failure to properly credit the mineral revenues.

## REPRESENTATIVE CAPACITY OF PLAINTIFF, RED SOX INVESTMENTS, L.L.C.

71. Plaintiff Red Sox Investments, L.L.C. owns property ("Red Sox Investments, L.L.C.'s
    Property #1") in Caddo Parish legally described as follows:

    a.  Lot Six (6), HAPPY TRAILS SUBDIVISION, a subdivision of Caddo Parish,
        Louisiana, as per plat recorded in Book 2050, Page 49, of the Conveyance
        Records of Caddo Parish, Louisiana, containing a total of 0.57 acres, more or less,
        together with all buildings and improvements located thereon. The Caddo Parish
        Tax Assessor's Geographic Number assigned to this property is 141504-001-
        0006-00.

72. Red Sox Investments, L.L.C. acquired the title to its Property #1 as follows:

    a.  As evidenced by the Tax Sale Deed recorded on May 29, 1987 under Registry
        Number 01144082, John W. Johnson, husband of Mary E. Johnston, purchased
        Property #1 at a Caddo Parish Tax Sale held on May 6, 1987, said property
        having previously been assessed in the name of Classic Land Corporation.

    b.  By deed recorded on November 6, 2002 under Registry Number 1827452 in
        Conveyance Book 3566, Page 691 of the records of Caddo Parish, John W.
        Johnston and Mary E. Johnston, husband and wife, conveyed Property #1 to John
        W. Johnston, LLC.

    c.  By Quitclaim Deed recorded on October 10, 2003 under Registry Number
        1885402 in Conveyance Book 3636, Page 4, of the records of Caddo Parish, John
        W. Johnston, LLC transferred and conveyed Property #1 to Plaintiff Red Sox
        Investments, L.L.C.

d.  By Judgment dated February 23, 2009 and recorded on the same date under

Registry Number 2211815 in Conveyance Book 4197, Page 9 and Mortgage Book

4841, Page 801 of the records of Caddo Parish, the title of Plaintiff Red Sox

Investments, L.L.C. was confirmed and quieted in and to Property #1.

73. Red Sox Investments, L.L.C.'s Property #1 was seized for the unpaid taxes of John W.

Johnston for the year of 1990 and was subsequently adjudicated in the name of John W.

Johnston to the Parish on June 14, 1991. Additional taxes and fees have accrued since

that date.

74. By virtue of these seizures of Property #1, the title of Red Sox Investments, L.L.C. is

burdened by the unpaid taxes and related fees and costs assessed to the property.

75. On August 12, 2009, Red Sox Investments, L.L.C.'s Property #1 was included in a

Mineral Lease entered into between the Parish and Merit Energy Services (State Agency

Lease No. 20133 executed by the State Mineral and Energy Board of the State of

Louisiana on behalf of the Caddo Parish Commission, recorded under Registry Number

2248623 at Book 4265, Page 70, in the records of Caddo Parish, Louisiana).

76. That Mineral Lease covered a total of 55.75 acres of land, and Red Sox Investments,

L.L.C.'s Property #1 comprised 0.57 acres and approximately 1.02% of the total land

acreage included in the Mineral Lease.

77. Merit Energy Services made a bonus payment of $8,167.00 per acre, and there has since

been production under the Mineral Lease that has paid an approximate total of

$209,678.06 to the Parish to date.

78. Thus, as of this filing, a total of approximately $6,798.98 attributable to Red Sox

Investments, L.L.C.'s Property #1 has been paid to the Parish by Merit Energy Services

and its assignee.

79. But for the actions of the Parish, Red Sox Investments, L.L.C. would have had a portion

of this sum applied towards its outstanding taxes, fees, and costs.

80. But for the actions of the Parish, Red Sox Investments, L.L.C.'s tax debt would have

been extinguished on or about August 12, 2009.

81. But for the actions of the Parish, Red Sox Investments, L.L.C. would have been issued a redemption deed on or about August 12, 2009.

82. But for the actions of the Parish, Red Sox Investments, L.L.C. would possess and own its Property #1.

83. But for the actions of the Parish, Red Sox Investments, L.L.C. would have received the benefit of bonus, delay rental, and/or royalty payments attributable to its Property in excess of the amount required to satisfy its outstanding tax debt.

84. But for the actions of the Parish, Red Sox Investments, L.L.C. would have been and would currently be enjoying the fruits of its Property #1, including the direct receipt of all future royalty payments attributable to said Property.

85. Plaintiff Red Sox Investments, L.L.C. owns property ("Red Sox Investments, L.L.C.'s Property #2A and #2B") in Caddo Parish legally described as follows:

    a. (Red Sox Investments, L.L.C.'s Property #2A): "Lot 28 AUDUBON MEADOW SUBDIVISION, Unit No. 2, a subdivision of Caddo Parish, Louisiana, as per plat recorded in book 2050, Page 167 of the Conveyance Records of Caddo Parish, Louisiana, containing a total of .15 acres, more or less, together with all buildings and improvements located thereon. The Caddo Parish Tax Assessor's Geographic Number assigned to this property is 161505-003-0028."

    b. (Red Sox Investments, L.L.C.'s Property #2B): "Lot 29, AUDUBON MEADOW SUBDIVISION, Unit No. 2, a subdivision of Caddo Parish, Louisiana, as per plat recorded in book 2050, Page 167 of the Conveyance Records of Caddo Parish, Louisiana, containing a total of .17 acres, more or less, together with all buildings and improvements located thereon. The Caddo Parish Tax Assessor's Geographic Number assigned to this property is 161505-003-0029."

86. Red Sox Investments, L.L.C. acquired the title to its Properties #2A and #2B as follows:

    a. As evidenced by the Tax Sale Deed recorded on May 29, 1987, under Registry

Number 01144120, Mary E. Johnston, wife of John W. Johnston, purchased

Property #2A at a Caddo Parish Tax Sale held on May 6, 1987, said property

having previously been assessed in the name of Audubon Meadow Partnership.

b.   As evidenced by the Tax Sale Deed recorded on May 29, 1987, under Registry

Number 01144088, John W. Johnston, husband of Mary E. Johnston, purchased

Property #2B at a Caddo Parish Tax Sale held on May 6, 1987, said property

having previously been assessed in the name of Audubon Meadow Partnership.

c.   By deed recorded on November 6, 2002 under Registry Number 1827452 in

Conveyance Book 3566, Page 691 of the records of Caddo Parish, John W.

Johnston and Mary E. Johnston, husband and wife, conveyed Properties #2A and

#2B to John W. Johnston, LLC.

d.   By Quitclaim Deed recorded on October 10, 2003 under Registry Number

1885402 in Conveyance Book 3636, Page 4, of the records of Caddo Parish, John

W. Johnston, L.L.C. transferred and conveyed Properties #2A and #2B to Plaintiff

Red Sox Investments, L.L.C.

e.   By Quitclaim Deed recorded on August 17, 2010 under Registry Number

2308176 in Conveyance Book 4397, Page 678, of the records of Caddo Parish,

Audubon Meadow Partnership, in whose name Property #2A and #2B had been

previously assessed, attempted to transfer and convey Properties #2A and #2B to

Sapphire Land Company, L.L.C.

f.   By Quitclaim Deed recorded on October 12, 2010 under Registry Number

2317265 in Conveyance Book 4416, Page 109, of the records of Caddo Parish,

Sapphire Land Company, L.L.C. transferred and conveyed Properties #2A and

#2B to Plaintiff Red Sox Investments, L.L.C.

87. Red Sox Investments, L.L.C.'s Property #2A was seized by Caddo Parish for the unpaid

taxes of Mary E. Johnson (sic) and was subsequently adjudicated to the Parish on June

14, 1991.

88. Red Sox Investments, L.L.C.'s Property #2A was also seized by the City of Shreveport for the unpaid taxes of Mary E. Johnson (sic) and was subsequently adjudicated to the City on July 11, 1991.

89. By virtue of the seizures of Property #2A, the title of Red Sox Investments, L.L.C. is burdened by unpaid taxes and related fees and costs attributable to said property to Caddo Parish and the City of Shreveport.

90. Red Sox Investments, L.L.C.'s Property #2B was seized by Caddo Parish for the unpaid taxes of John W. Johnston and was subsequently adjudicated to the Parish on June 14, 1991.

91. Red Sox Investments, L.L.C.'s Property #2B was also seized by the City of Shreveport for the unpaid taxes of John W. Johnston and was subsequently adjudicated to the City on July 11, 1991.

92. By virtue of the seizures of Property #2B, the title of Red Sox Investments, L.L.C. is burdened by unpaid taxes and related fees and costs attributable to said property to Caddo Parish and the City of Shreveport.

93. On July 14, 2010, Red Sox Investments, L.L.C.'s Property was included in a Mineral Lease entered into between the Parish and Classic Petroleum (State Agency Lease No. 20382 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission, recorded under Registry Number 2305214, at Book 4392, Page 386, in the records of Caddo Parish, Louisiana).

94. That Mineral Lease covered a total of 85.06 acres of land, and Red Sox Investments, L.L.C.'s Property comprised a total of .32 acres (Property #2A contains .15 acres, and Property #2B contains .17 acres) and 0.37% of the total land acreage included in the Mineral Lease.

95. Classic Petroleum, Inc. made a bonus payment of $8,252.00 per acre, and there has since been production under the Mineral Lease that has paid a total of approximately $187,591.46 to the Parish as of to date.

96. Thus, as of this date, a total of $3,346.37 attributable to Red Sox Investments, L.L.C.'s Property has been paid to the Parish by Classic Petroleum, Inc. and its assignee.

97. As noted hereinabove, based upon their cooperative conduct, it is believed and alleged upon information and belief that the City and Parish were sharing mineral revenues, or, at the very least, agreed to a scheme to not apply mineral revenues to tax obligations.

98. But for the actions of the Parish and the City, Red Sox Investments, L.L.C. would have had these mineral revenues applied towards its outstanding taxes, fees, and costs.

99. But for the actions of the Parish and the City, Red Sox Investments, L.L.C.'s tax debt would have been reduced or extinguished on or about July 14, 2010.

100.    But for the actions of the Parish and the City, Red Sox Investments, L.L.C. would have been issued a redemption deed on or about July 14, 2010.

101.    But for the actions of the Parish and the City, Red Sox Investments, L.L.C. would possess and own its Properties #2A and #2B.

102.    But for the actions of the Parish and the City, Red Sox Investments, L.L.C. would have received bonus, delay rental, and/or royalty payments attributable to its Property in excess of the amount required to satisfy its outstanding tax debt.

103.    But for the actions of the Parish and the City, Red Sox Investments, L.L.C. would have been and would currently be enjoying the fruits of its Properties #2A and #2B, including the direct receipt of all future royalty payments attributable to said Properties.

104.    Red Sox Investments, L.L.C.'s claims against the Parish and the City are typical of the claims of all members of the Plaintiff Class, and it is willing and able to serve the Court and proposed class in a representative capacity.

### THE TAXING AUTHORITIES' OBLIGATION TO ACCOUNT

105. Despite being public records, the records relating to the Mineral Leases executed by the City and the Parish and the revenues received by the City and Parish from said Mineral

Leases are difficult to access.

106. Without an accounting from the City and the Parish, the members of the Plaintiff Class will be put to considerable hardship and expense in order to establish the true amount due to each member of the Plaintiff Class.

107. Accordingly, Plaintiffs are entitled in equity to a full accounting from the City and the Parish setting forth:

a.  The Mineral Lease that includes each individual Plaintiff Class Member's property that was adjudicated to the City or the Parish; and

b.  The percentage of land area, out of the total land area covered by the Mineral Lease, attributable to each individual Adjudicated Property; and

c.  The bonus and royalty payments received by the City or the Parish under the Mineral Lease that are attributable to each of those Adjudicated Properties, along with the receipt dates of said payments; and

d.  The total amount of money required for each individual Plaintiff Class Member to have redeemed his or her Adjudicated Property; and

e.  If, and, if so, upon what date, the bonus, delay rental, and royalty payments attributable to each Plaintiff Class Member's Adjudicated Property would have accrued in the amount required for the redemption of that property; and

f.  The total amount of bonus, delay rental, and royalty payments attributable to each Plaintiff Class Member's Adjudicated Property received by the City or the Parish subsequent to the date upon which the required redemption amount would have accrued.

**REQUEST FOR A PERMANENT INJUNCTION AND AN ASSOCIATED PRELIMINARY INJUNCTION PROHIBITING THE CITY AND THE PARISH FROM SELLING OR OTHERWISE DISPOSING OF ANY RELEVANT ADJUDICATED PROPERTIES UNTIL THE OBLIGATION TO CREDIT RENTAL REVENUES AND REDEEM THE PROPERTIES IS RESOLVED**

108. During the course of this dispute, it is possible that the City and/or the Parish may seek to sell or otherwise dispose of the relevant Adjudicated Properties in order to generate revenue.

109. Due to the large number of Adjudicated Properties in dispute and (approximately 1,500 separate properties, more or less, the exact number to be calculated with certainty through discovery) and the fact that additional Adjudicated Properties and Mineral Leases may be revealed through discovery, it would be practically and financially impossible for the Plaintiff Class members to file separate Notices of Lis Pendens in the records of Caddo Parish for each separate Adjudicated Property.

110. Because many Adjudicated Properties may be eligible for redemption on behalf of the individual Plaintiff Class Members, and because of the large number of Plaintiff Class members and Adjudicated Properties involved, the sale or disposal of any of those Adjudicated Properties during the pendency of this lawsuit would further complicate the process of determining how much is owed to each individual Plaintiff Class member.

111. Such complication would greatly increase the expenses of litigation for the Plaintiff Class members and could potentially prevent the Plaintiff Class members from ever receiving full compensation for their claims.

112. Thus, the sale or disposal of the Adjudicated Properties during the pendency of this lawsuit would cause irreparable injury, loss, and damage to the Plaintiff Class Members.

113. Adjudicated Properties falling within the definition of Adjudicated Property outlined herein and additional Mineral Leases may be revealed through discovery

114. Thus, during the pendency of this lawsuit, the sale by the City and/or the Parish of ANY Adjudicated Property falling within the definition of Adjudicated Property outlined herein would cause irreparable injury, loss, and damage to the Plaintiff Class Members.

115. Therefore, unless a permanent injunction is issued prohibiting the City and the Parish from selling or otherwise disposing of any relevant Adjudicated Property prior to satisfaction of their obligations to credit rental revenues and redeem the properties, the

Plaintiff Class members will suffer irreparable injury, loss, and damage.

116. Furthermore, the Plaintiff Class members will suffer irreparable injury, loss, and damage for the same reasons outlined above if the City or the Parish were to sell or otherwise dispose of any relevant Adjudicated Properties during the time in which the suit for a Permanent Injunction is pending.

117. Thus, unless a preliminary injunction is issued prohibiting the City and the Parish from selling or otherwise disposing of any relevant Adjudicated Property prior to the issuance of a judgment in the suit for a Permanent Injunction, the Plaintiff Class members will suffer irreparable injury, loss, and damage.

**Wherefore,** Plaintiff Red Sox Investments, L.L.C., individually and on behalf of the class of similarly situated property owners, prays for judgment as follows:

I.      In favor of the members of the Plaintiff Class and against Defendants in the principal amount of  for all money and other relief owed under the causes of action herein asserted, plus interest thereon at the legal rate, until paid, reasonable attorney's fees associated with the prosecution of this lawsuit, and all costs incurred in connection with this lawsuit.

II.     That the City of Shreveport and Caddo Parish be ordered to submit an accounting setting forth:

    a.  The Mineral Lease that includes each individual Plaintiff Class Member's property that was adjudicated to the City or the Parish; and

    b.  The percentage of land area, out of the total land area covered by the Mineral Lease, attributable to each individual Adjudicated Property; and

    c.  The bonus, delay rental, and royalty payments received by the City or the Parish under the Mineral Lease that are attributable to each of those Adjudicated Properties, along with the receipt dates of said payments; and

    d.  The total amount of money required for each individual Plaintiff Class

Member to have redeemed his or her Adjudicated Property; and

   e.  If, and, if so, upon what date, the bonus, delay rental, and royalty payments attributable to each Plaintiff Class Member's Adjudicated Property would have accrued in the amount required for the redemption of that property; and

   f.  The total amount of bonus, delay rental, and royalty payments attributable to each Plaintiff Class Member's Adjudicated Property received by the City or the Parish subsequent to the date upon which the required redemption amount would have accrued.

III.    That a permanent injunction issue herein permanently restraining, enjoining, and prohibiting the City of Shreveport and Caddo Parish from selling or otherwise disposing of Adjudicated Property included in any mineral lease granted by the City and/or Parish during the calendar year 2009, and/or any subsequent calendar year up to the date of this filing, until such time as they have accounted for and properly applied all mineral revenues attributable to the Adjudicated Property;

**Plaintiff further prays** that the defendants be served with a copy of this petition and be ordered to appear and show cause, if any they can, on the date and at the time fixed by the court, why a Preliminary Injunction should not be issued herein restraining, enjoining, and prohibiting the City of Shreveport and Caddo Parish from selling or otherwise disposing of adjudicated property included in any mineral lease granted by the City and/or Parish during the calendar year 2009, and/or any subsequent calendar year up to the date of this filing, so as to preserve the status of this matter pending final determination of this litigation.

Original Class Action Petition                                             pg. 36

Verification Affidavit:

On the 1st day of MAY, 2014, before the undersigned notary public, appeared Richard E. Hiller, Affiant, who after being sworn declared under oath that Affiant is authorized to bring this action and to sign this affidavit on behalf of Plaintiff Red Sox Investments, L.L.C., and that to the best of Affiant's knowledge, information and belief based upon reasonable investigation and inquiry, the facts stated above are true and correct.

_____
Richard E. Hiller, Member
For Red Sox Investments, L.L.C.

_____
Notary Public

C. VERNON RICHIE, Notary Public
Caddo Parish, Louisiana
Attorney at Law - LBRN:  11255

Submitted by:

_____
Byron A. Richie, La. Bar #11254
C. Vernon Richie, La. Bar #11255
For Richie, Richie & Oberle, L.L.P.
P. O. Box 44065
Shreveport, LA 71134
1800 Creswell Ave. (71101)
Ph. (318) 222-8305
Fax (318) 221-8311

_____
Michael H. Wainwright, La. Bar # 13155
97 Country Club Circle
Brevard, North Carolina 28712
Ph. (318) 470-9393

_____
Richard E. Hiller, La. Bar # 6920
401 Edwards Street, Suite 1300
Shreveport, LA 71101
Ph. (318) 221-8671
Fax (318) 222-4320

Attorneys for Red Sox Investments, L.L.C.

Instructions to Clerk of Court:

Service —

- Please issue a citation to, and have the citation and a certified copy of this petition served on:
    - The City of Shreveport, as detailed in Paragraph 6(a) of this Petition.
    - Caddo Parish, as detailed in Paragraph 6(b) of this Petition.

- Please mail a certified copy of this Petition to: Richie, Richie & Oberle, Attorneys at Law, P.O. Box 44065, Shreveport, LA 71134 (a postage paid envelope is provided for this purpose).

**ORDER**

**THE ABOVE PREMISES CONSIDERED,** let the City of Shreveport and Caddo Parish, Louisiana be, and they are hereby ordered to appear on the 14 day of July, 2014, at 9:30 a.m., and show cause, if any they can, why a Preliminary Injunction should not be issued herein temporarily restraining, enjoining, and prohibiting the City of Shreveport and Caddo Parish from selling or otherwise disposing of

Original Class Action Petition                                                pg. 37

ROUTE TO
MINUTE CLERK

Adjudicated Property included in any mineral lease granted by the City and/or Parish

during the calendar year 2009, and/or any subsequent calendar year up to the date of this

filing, so as to preserve the status of this matter pending final determination of this

litigation.

Shreveport, Caddo Parish, Louisiana, this 5 day of MAY, 2014.

_____
District Judge

DOCKET NUMBER: _____ - SECTION OR DIVISION: _____

| | | |
|---|---|---|
| RED SOX INVESTMENTS, L.L.C., ET AL, ON BEHALF OF ITSELF AND A CLASS OF SIMILARLY SITUATED PROPERTY OWNERS | § | FIRST JUDICIAL DISTRICT COURT |
| VERSUS | § | PARISH OF CADDO |
| CITY OF SHREVEPORT, LOUISIANA, and CADDO PARISH, LOUISIANA | § | STATE OF LOUISIANA |

## REQUESTS FOR ADMISSION OF FACT, INTERROGATORIES, AND REQUEST FOR PRODUCTION OF DOCUMENTS

TO: THE CITY OF SHREVEPORT, LOUISIANA, AND CADDO PARISH, LOUISIANA

In accordance with the provisions of Articles 1466–1468 of the *Louisiana Code of Civil Procedure*, RED SOX INVESTMENTS, L.L.C., ET AL, ON BEHALF OF ITSELF AND A CLASS OF SIMILARLY SITUATED PROPERTY OWNERS, request that, within thirty (30) days after service of this request, you admit or deny the truth of the following facts, answer the applicable interrogatories, and produce the requested documents.

A. As used in these discovery requests, the following will be referred to as "**the Mineral Leases**". In answering these requests, you are asked to refer to the individual leases by their identifying and corresponding number:

1. Mineral Lease by and between Caddo Parish and Theophilus Oil & Gas. dated July 8, 2009 (State Agency Lease No. 20104 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2241923, at Book 4251, Page 256, in the records of Caddo Parish, Louisiana;

2. Mineral Lease by and between Caddo Parish and Classic Petroleum, dated August 12, 2009 (State Agency Lease No. 20120 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2248278, at Book 4264, Page 379, in the records of Caddo Parish, Louisiana;

3. Mineral Lease by and between Caddo Parish and Merit Energy, dated August 12, 2009 (State Agency Lease No. 20120 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2248627, at Book 4265, Page 122, in the records of Caddo Parish, Louisiana;

4. Mineral Lease by and between Caddo Parish and Suncoast, dated August 12, 2009 (State Agency Lease No. 20122 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2248812, at Book 4265, Page 699, in the records of Caddo Parish, Louisiana;

5. Mineral Lease by and between Caddo Parish and Classic Petroleum, dated August 12, 2009 (State Agency Lease No. 20123 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2248281, at Book 4264, Page 379, in the records of Caddo Parish, Louisiana;

6. Mineral Lease by and between Caddo Parish and Merit Energy, dated August 12, 2009 (State Agency Lease No. 20124 executed by the State Mineral and Energy Board of the State of

RICHIE, RICHIE, OBERLE, L.L.P.

Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2248626, at Book 4265, Page 109, in the records of Caddo Parish, Louisiana;

7.  Mineral Lease by and between Caddo Parish and Merit Energy, dated August 12, 2009 (State Agency Lease No. 20126 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number Number 2248625, at Book 4265, Page 96, in the records of Caddo Parish, Louisiana;

8.  Mineral Lease by and between Caddo Parish and Classic Petroleum, dated August 12, 2009 (State Agency Lease No. 20131 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2248285, at Book 4264, Page 422, in the records of Caddo Parish, Louisiana;

9.  Mineral Lease by and between Caddo Parish and Suncoast, dated August 12, 2009 (State Agency Lease No. 20132 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2248817, at Book 4265, Page 743, in the records of Caddo Parish, Louisiana;

10. Mineral Lease by and between Caddo Parish and Merit Energy, dated August 12, 2009 (State Agency Lease No. 20133 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2248623, at Book 4265, Page 70, in the records of Caddo Parish, Louisiana;

11. Mineral Lease by and between Caddo Parish and Classic Petroleum, dated August 12, 2009 (State Agency Lease No. 20134 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2248287, at Book 4264, Page 435, in the records of Caddo Parish, Louisiana;

12. Mineral Lease by and between the City of Shreveport and Cypress Energy, dated October 14, 2009 (State Agency Lease No. 20163 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2259640, at Book 4290, Page 793, in the records of Caddo Parish, Louisiana;

13. Mineral Lease by and between the City of Shreveport and Cypress Energy, dated October 14, 2009 (State Agency Lease No. 20164 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2259641, at Book 4291, Page 1, in the records of Caddo Parish, Louisiana;

14. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated October 14, 2009 (State Agency Lease No. 20165 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2258346, at Book 4287, Page 764, in the records of Caddo Parish, Louisiana;

15. Mineral Lease by and between the Caddo Parish and Questar, dated January 13, 2010 (State Agency Lease No. 20240 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2272385, at Book 4322, Page 135, in the records of Caddo Parish, Louisiana;

16. Mineral Lease by and between the City of Shreveport and Classic Petroleum, dated , March 10, 2010 (State Agency Lease No. 20282 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2281473, at Book 4342, Page 470, in the records of Caddo Parish, Louisiana;

17. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20300 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286274, at Book 4353, Page 760, in the records of Caddo Parish, Louisiana;

18. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20303 executed by the State Mineral and Energy Board of the State of

1.7900 Adjudicated Property Class Action Discovery
Page 3 of 11

Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286277, at Book 4353, Page 799, in the records of Caddo Parish, Louisiana;

19. Mineral Lease by and between the Caddo Parish and Questar, dated April 14, 2010 (State Agency Lease No. 20304 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286999, at Book 4355, Page 660, in the records of Caddo Parish, Louisiana;

20. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20305 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286278, at Book 4354, Page 1, in the records of Caddo Parish, Louisiana;

21. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20306 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286279, at Book 4354, Page 15, in the records of Caddo Parish, Louisiana;

22. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20307 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286280, at Book 4354, Page 28, in the records of Caddo Parish, Louisiana;

23. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20309 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286281, at Book 4354, Page 41, in the records of Caddo Parish, Louisiana;

24. Mineral Lease by and between the Caddo Parish and Questar, dated April 14, 2010 (State Agency Lease No. 20310 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2287001, at Book 4355, Page 686, in the records of Caddo Parish, Louisiana;

25. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20311 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286282, at Book 4354, Page 54, in the records of Caddo Parish, Louisiana;

26. Mineral Lease by and between the Caddo Parish and Questar, dated April 14, 2010 (State Agency Lease No. 20312 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2287002, at Book 4355, Page 699, in the records of Caddo Parish, Louisiana;

27. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated April 14, 2010 (State Agency Lease No. 20313 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2286283, at Book 4354, Page 67, in the records of Caddo Parish, Louisiana;

28. Mineral Lease by and between the Caddo Parish and Encana, dated May 12, 2010 (State Agency Lease No. 20346 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2292378, at Book 4369, Page 27, in the records of Caddo Parish, Louisiana;

29. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated July 14, 2010 (State Agency Lease No. 20380 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2305212, at Book 4392, Page 352, in the records of Caddo Parish, Louisiana;

30. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated July 14, 2010 (State Agency Lease No. 20382 executed by the State Mineral and Energy Board of the State of

Richie, Richie & Oberle, L.L.P.

1.7900 Adjudicated Property Class Action Discovery
Page 4 of 11

Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2305214, at Book 4392, Page 386, in the records of Caddo Parish, Louisiana;

31. Mineral Lease by and between the Caddo Parish and Classic Petroleum, dated July 14, 2010 (State Agency Lease No. 20383 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2305215, at Book 4392, Page 403, in the records of Caddo Parish, Louisiana;

32. Mineral Lease by and between the City of Shreveport and Classic Petroleum, dated August 11, 2010 (State Agency Lease No. 20419 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2311290, at Book 4403, Page 747, in the records of Caddo Parish, Louisiana;

33. Mineral Lease by and between the Caddo Parish and Tacoma Energy, dated February 13, 2015 (State Agency Lease No. 21110 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2446929, at Book 4645, Page 213, in the records of Caddo Parish, Louisiana;

34. Mineral Lease by and between the Caddo Parish and HEP Energy, dated September 11, 2013 (State Agency Lease No. 20258 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2478185, at Book 4698, Page 398, in the records of Caddo Parish, Louisiana;

35. Mineral Lease by and between the Caddo Parish and HEP Energy, dated September 11, 2013 (State Agency Lease No. 20259 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2478186, at Book 4698, Page 412, in the records of Caddo Parish, Louisiana;

36. Mineral Lease by and between the Caddo Parish and HEP Energy, dated September 11, 2013 (State Agency Lease No. 20260 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2478187, at Book 4698, Page 426, in the records of Caddo Parish, Louisiana;

37. Mineral Lease by and between the Caddo Parish and HEP Energy, dated September 11, 2013 (State Agency Lease No. 20261 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2478188, at Book 4698, Page 440, in the records of Caddo Parish, Louisiana;

38. Mineral Lease by and between the Caddo Parish and HEP Energy, dated September 11, 2013 (State Agency Lease No. 20262 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2478189, at Book 4698, Page 454, in the records of Caddo Parish, Louisiana;

39. Mineral Lease by and between the Caddo Parish and HEP Energy, dated September 11, 2013 (State Agency Lease No. 20263 executed by the State Mineral and Energy Board of the State of Louisiana on behalf of the Caddo Parish Commission), recorded under Registry Number 2478190, at Book 4698, Page 468, in the records of Caddo Parish, Louisiana;

B. As used herein, **"Adjudicated Property"** is immovable property on which the property taxes were not paid, which was not purchased at a subsequent tax sale, and which was bid upon by the tax collector on behalf of the Taxing Authority, and subject to a tax sale certificate filed in the parish records, all pursuant to La. R.S. 47:2196; 47:2122(2).

C. As used herein, **"Bonus Money"** means the payment made by the Mineral Lessee to the Mineral Lessor in consideration of signing the Mineral Lease.

D. As used herein, "**you**" means the City of Shreveport and Caddo Parish, Louisiana.

E. As used herein, "**delay rental**" shall mean the consideration paid by the mineral lessee to the mineral lessor to extend the lease beyond its primary term, if drilling operations have not been commenced during the primary term.

F. As used herein, "**Mineral Royalty**" shall mean that share of the value of minerals produced payable to the mineral lessor under a mineral lease.

1. As used herein, "**Unlisted Mineral Lease**" shall mean any mineral lease executed by the City of Shreveport and/or Caddo Parish that included Adjudicated Property but is not included in the listing of Mineral Leases.

**REQUEST FOR ADMISSION OF FACT NO. 1:**

Please admit that all of the Mineral Leases included Adjudicated Property as a portion of the property identified by the Lessor as being covered by the lease.

INTERROGATORY TO BE ANSWERED IF THE ABOVE FACT IS DENIED:

If you contend that one or more of the Mineral Leases did not include Adjudicated Property, please identify by number each and every Mineral Lease that did not include Adjudicated Property.

**REQUEST FOR ADMISSION OF FACT NO. 2:**

Please admit that prior to executing the Mineral Leases and Unlisted Mineral Leases that included Adjudicated Property, you did not follow the procedure outlined in La. R.S. 47:2231-2232 and obtain an order from the court placing you in actual possession of any of the Adjudicated Property included within the Mineral Leases and Unlisted Mineral Leases.

INTERROGATORY TO BE ANSWERED IF THE ABOVE FACT IS DENIED:

If you deny the aforementioned fact, then with respect to each Mineral Lease and Unlisted Mineral Lease please identify by taxpayer name and GEO identification number each parcel of Adjudicated Property for which you complied with the procedure outlined in La. R.S. 47:2231-2232 and obtained an order of possession prior to including said parcel in the Mineral Lease or Unlisted Mineral Lease. Please also provide the identifying suit number for each such lawsuit by which an order of possession was secured.

Richie, Richie & Oberle, L.L.P.

DOCUMENTS TO BE PRODUCED IF THE ABOVE FACT IS DENIED:

If you deny the aforementioned fact, please produce a complete copy of each and every order of

possession obtained by you with respect to each parcel of Adjudicated Property included within the

Mineral Leases and/or Unlisted Mineral Leases.

**REQUEST FOR ADMISSION OF FACT NO. 3 :**

Please admit that by including Adjudicated Property within the property encumbered under the Mineral

Leases and Unlisted Mineral Leases, you received Bonus Money attributable to the Adjudicated Property

acreage.

INTERROGATORY TO BE ANSWERED IF THE ABOVE FACT IS DENIED:

If the above fact is denied, please detail with respect to each Mineral Lease and Unlisted Mineral Lease,

the nature and amount of consideration received in exchange for the execution of each such lease, the

manner in which the consideration was calculated, and explain why the Adjudicated Property acreage

was included in the Mineral Leases and Unlisted Mineral Leases without consideration or Bonus Money

being paid for that acreage.

DOCUMENTS TO BE PRODUCED IF THE ABOVE FACT IS DENIED:

If the above fact is denied, please produce complete copies of any and all notes, memoranda,

correspondence, emails, requests for bid, records, books, logs, ledgers, or any document or record,

electronic or otherwise, of any nature or description, which evidences, documents, records or explains the

manner in which the Bonus Money or other consideration given in exchange for execution of the Mineral

Leases and Unlisted Mineral Leases, was calculated, totaled, and apportioned to the acreage included

within the Mineral Lease and Unlisted Mineral Lease.

**REQUEST FOR ADMISSION OF FACT NO. 4:**

Please admit that by including Adjudicated Property within the property encumbered under the Mineral

Leases and Unlisted Mineral Leases, you received delay rental payments attributable to the Adjudicated

Property acreage.

INTERROGATORY TO BE ANSWERED IF THE ABOVE FACT IS DENIED:

If the above fact is denied, please detail with respect to each Mineral Lease and Unlisted Mineral Lease

the nature and amount of consideration received as delay rental, the manner in which the consideration

was calculated, and explain why the Adjudicated Property acreage was included in the Mineral Leases

and Unlisted Mineral Leases without delay rental being paid for that acreage in circumstances where

delay rental was paid to maintain the lease.


DOCUMENTS TO BE PRODUCED IF THE ABOVE FACT IS DENIED:

If the above fact is denied, please produce complete copies of any and all notes, memoranda,

correspondence, emails, requests for bid, records, books, logs, ledgers, or any document or record,

electronic or otherwise, of any nature or description, which evidences, documents, records or explains the

manner in which the Delay Rental or other consideration given in exchange for the continuation of the

Mineral Leases and Unlisted Mineral Leases, was calculated, totaled, and apportioned to the acreage

included within the Mineral Lease and Unlisted Mineral Lease.


**REQUEST FOR ADMISSION OF FACT NO. 5 :**

Please admit that by including Adjudicated Property within the property encumbered under the Mineral

Leases and Unlisted Mineral Leases, you receive or have received Mineral Royalties attributable to the

Adjudicated Property acreage.


INTERROGATORY TO BE ANSWERED IF THE ABOVE FACT IS DENIED:

If the above fact is denied, please detail with respect to each Mineral Lease and Unlisted Mineral Lease

the nature and amount of Mineral Royalties received with respect to each such lease, the manner in which

the total Mineral Royalty owed under the Mineral Lease and Unlisted Mineral Lease was calculated, and

explain why the Adjudicated Property acreage was included in the Mineral Leases and Unlisted Mineral

Leases without Mineral Royalties being owed for that acreage.


DOCUMENTS TO BE PRODUCED IF THE ABOVE FACT IS DENIED:

1.7900 Adjudicated Property Class Action Discovery
Page 8 of 11

If the above fact is denied, please produce complete copies of any and all notes, memoranda, correspondence, emails, requests for bid, records, books, logs, ledgers, or any document or record, electronic or otherwise, of any nature or description, which evidences, documents, records or explains the manner in which the Mineral Royalties are calculated, totaled, and apportioned to the acreage included within the Mineral Lease and Unlisted Mineral Lease.

**REQUEST FOR ADMISSION OF FACT NO. 6 :**

Please admit that the revenues from the Bonus Money, Delay Rental and Mineral Royalties attributable to the Adjudicated Property acreage in the Mineral Leases and Unlisted Mineral Leases have not been applied toward the payment of the tax obligations owed on Adjudicated Property, as set forth in La. R.S. 47:2233.

INTERROGATORY TO BE ANSWERED IF THE ABOVE FACT IS DENIED:

If the above fact is denied, then with respect to each Mineral Lease and Unlisted Mineral Lease, please identify by taxpayer name and GEO identification number each and every parcel of Adjudicated Property for which the revenues from the Bonus Money, Delay Rental and Mineral Royalties have been applied toward the payment of the tax obligations owed on Adjudicated Property, as set forth in La. R.S. 47:2233.

DOCUMENTS TO BE PRODUCED IF THE ABOVE FACT IS DENIED:

If the above fact is denied, please produce complete copies of any and all notes, memoranda, correspondence, emails, records, books, logs, ledgers, or any document or record, electronic or otherwise, of any nature or description, which evidences, documents, records or explains the manner in which the revenues from the Bonus Money, Delay Rental and Mineral Royalties have been applied toward the payment of the tax obligations owed on Adjudicated Property, as set forth in La. R.S. 47:2233, together with the dollar amounts so applied and the date the revenues were credited against the tax obligation.

WRITTEN INTEROGATORIES

1. Please list all Unlisted Mineral Leases and with respect to each, provide:

        a. The State Agency Lease Number of each Unlisted Mineral Lease;

b. The Conveyance Record Registry Number and Book and Page of recordation, if any, of each Unlisted Mineral Lease;

c. The identity of the Taxing Authority Lessor and the Lessee of each Unlisted Mineral Lease;

d. The Bonus Money paid for each Unlisted Mineral Lease and the total acreage included in each Unlisted Mineral Lease.

2. Please provide the name and last known address of each and every taxpayer-owner whose Adjudicated Property was included in any Mineral Lease and/or Unlisted Mineral Lease, together with the GEO identification number of each parcel of Adjudicated Property included in each  Mineral Lease and/or Unlisted Mineral Lease;

3. With respect to each and every Mineral Lease and Unlisted Mineral Lease, please provide a complete listing of any and all Delay Rental payments received for each such lease, the date the Delay Rental was received, and the payor of each such Delay Rental payment.

4. With respect to each and every Mineral Lease and Unlisted Mineral Lease, please provide a complete listing of any and all Mineral Royalty payments received for each such lease, the date the Mineral Royalty payment was received, and the payor of each such Mineral Royalty payment.

5. With respect to each and every parcel of Adjudicated Property which was included within one or more Mineral Leases or Unlisted Mineral Leases and then subsequently sold by the Taxing Authority to a third party, please provide the name and last known address of the taxpayer-owner whose property was sold, the GEO identification number of the property, the Conveyance Record Registry Number and Book and Page Number of Registry of the deed or other act of sale, the date of sale, and the consideration received by the Taxing Authority for the sale of the Adjudicated Property.

6. With respect to each and every parcel of Adjudicated Property which was included within one or more Mineral Leases or Unlisted Mineral Leases, please provide the property tax balance (including all statutory additions, costs, charges, penalties and interest) at the time the Mineral Lease or Unlisted Mineral Lease was executed and the current property tax balance (including all statutory additions, costs, charges, penalties and interest).

7. With respect to any Adjudicated Property that was adjudicated, or subject to adjudication,  to both the City and Parish, and was included within a Mineral Lease or Unlisted Mineral Lease, please provide a detailed description of the agreement, if any, between the City and Parish as to the sharing of revenues

derived from such leases. Please also provide the name and last known address of all persons with knowledge of that sharing agreement.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1. Please provide a complete copy of each and every Unlisted Mineral Lease.

2. Please provide a complete copy of each check, money order, electronic transfer record or any other such record or document by which the Taxing Authority was paid Bonus Money, Delay Rental, and/or Mineral Royalties related to any Mineral Lease or Unlisted Mineral Lease.

3. Please provide a complete copy of each and every itemization received in connection with each and every payment of Mineral Royalty under any Mineral Lease or Unlisted Mineral Lease. By "itemization" we mean any document or record of any nature or description that explains the calculation and payment of Mineral Royalties and the well or wells to which the Mineral Royalties are attributable.

4. Please produce complete copies of any and all notes, memoranda, correspondence, emails, records, books, logs, ledgers, or any document or record, electronic or otherwise, of any nature or description, which evidences, documents, records or explains the manner in which the Taxing Authority cumulated and identified the parcels of land (the "Tracts" incorporated into the request for bid by the Louisiana State Mineral Board) to be included in each Mineral Lease or Unlisted Mineral Lease.

5. With respect to any and/or all Adjudicated Property that was adjudicated, or subject to adjudication, to both the City and Parish, and was included within a Mineral Lease or Unlisted Mineral Lease, please provide complete copies of any and all notes, memoranda, correspondence, emails, records, books, logs, ledgers, or any document or record, electronic or otherwise, of any nature or description, which evidences, documents or records discussions, communications or agreements between the City and Parish as to the legal right to enter into the Mineral Leases or Unlisted Mineral Leases, any agreement to enter said leases, and any sharing agreement with respect to the revenues of such leases. If you claim that any such material is protected by the attorney/client privilege, please identify by name and position each person who was party to such communication or record or received a copy of such communication or record.

6. With respect to any Adjudicated Property that was adjudicated, or subject to adjudication, to both the City and Parish, and was included within a Mineral Lease or Unlisted Mineral Lease, please provide

complete copies of any and all notes, memoranda, correspondence, emails, records, books, logs, ledgers, or any document or record, electronic or otherwise, of any nature or description, which evidences, documents, records or explains the manner in which the revenues from the Bonus Money, Delay Rental and Mineral Royalties were shared between the City and Parish, and the amount of money received by each under that sharing agreement for each Adjudicated Property. If you claim that any such material is protected by the attorney/client privilege, please identify by name and position each person who was party to such communication or received a copy of such communication.

7.   With respect to any Adjudicated Property that was included within a Mineral Lease or Unlisted Mineral Lease, please provide a complete copy and proof of mailing, service or other delivery of any written notice of intent to enter into a mineral lease that was provided to the Adjudicated Property Owner in advance of execution of the Mineral Lease or Unlisted Mineral Lease.

8.   With respect to any Adjudicated Property that was included within a Mineral Lease or Unlisted Mineral Lease, please provide a complete copy and proof of publication of any advertisement that was published in advance of execution of the Mineral Lease or Unlisted Mineral Lease.

Respectfully submitted,

RICHIE, RICHIE & OBERLE, L.L.P.

BY:_____
     BYRON A. RICHIE (BRN 11254)
     1800 Creswell Avenue
     P.O. Box 44065
     Shreveport, Louisiana  71134
     Telephone:  318-222-8305

ATTORNEYS FOR PLAINTIFFS

---

**Certificate of Service**

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record, via United States Mail, postage prepaid.

Shreveport, Louisiana ___5/1___, 2014.

_____
BYRON A. RICHIE

---

DOCKET NUMBER: _____ - SECTION OR DIVISION: _____

| | | |
|---|---|---|
| RED SOX INVESTMENTS, L.L.C., ET AL, ON BEHALF OF ITSELF AND A CLASS OF SIMILARLY SITUATED PROPERTY OWNERS | § | FIRST JUDICIAL DISTRICT COURT |
| VERSUS | § | PARISH OF CADDO |
| CITY OF SHREVEPORT, LOUISIANA, and CADDO PARISH, LOUISIANA | § | STATE OF LOUISIANA |

## MEMORANDUM BRIEF IN SUPPORT OF REQUEST FOR A PRELIMINARY INJUNCTION

The plaintiffs herein, subject to class certification, are defined as follows:

a. Louisiana residents and non-residents who:

b. Own or owned property ("Property") in the City of Shreveport ("the City") and/or the Parish of Caddo ("the Parish") and failed to pay ad valorem taxes ("Delinquent Taxes") on said Property; and

c. By reason of the Delinquent Taxes, said Property was offered in a tax sale conducted by the City and/or the Parish; and

d. Said property was not sold at the tax sale; and

e. Said property was adjudicated ("Adjudicated Property") to the City and/or Parish under the provisions of La. R.S. 47:2196 et seq. (the "Adjudicated Property Law"); and

f. Said Property was included in a Mineral Lease granted by the City and/or Parish during the calendar year 2009, and/or any subsequent calendar year up to the date of this filing; and

g. Neither the mineral leasing bonus nor any of the royalties paid, which were attributable to the Property, were paid to Plaintiffs or credited to Plaintiffs' Delinquent Taxes and/or the fees relating to Plaintiffs' Delinquent Taxes as required by the Adjudicated Property Law;



$_____ **FILED**

MAY 0 1 2014

E. G. BRUMLEY
CADDO DEPUTY CLERK OF COURT

Defendants herein (sometimes referenced individually as "Taxing Authority" or collectively as "Taxing Authorities") are The City of Shreveport, Louisiana, and Caddo Parish, Louisiana.

Plaintiffs bring this class action lawsuit to recover damages and other appropriate relief related to the defendants' failure to properly apply the revenues derived from including plaintiffs' adjudicated property within mineral leases executed by the defendants. The factual allegations and legal theories upon which this lawsuit is based are detailed in the petition and adopted by reference herein. In a nutshell, the defendants chose to include adjudicated property within mineral leases executed by them in connection with leasing their own property. Once the Taxing Authorities leased adjudicated property, La. R.S. 47:2233 mandates that they **"shall apply the rentals first to the payment of all costs of court incurred in the proceeding"** and **"[t]hereafter, all rental income shall be applied against any taxes, charges imposed pursuant to R.S. 33:1236, or paving or other local improvement assessments due against the property."** (Emphasis added.) Furthermore, **"when all of the obligations have been paid in full, the political subdivision shall issue a proper certificate of redemption and surrender its possession of the property"** to the formerly delinquent taxpayer. La. R.S. 47:2233 (emphasis added). Obviously, once the certificate of redemption is issued reflecting satisfaction of the tax obligation through rental income, any rental payments should be payable to the formerly delinquent taxpayer whose property has now been redeemed.

Beginning in 2009, both the City and the Parish entered[1] into mineral leases covering areas that include the Adjudicated Property belonging to members of the Plaintiff Class. Each of the aforementioned leases specifically listed the Adjudicated Property attributable to the members of the Plaintiff Class as being part and parcel of the mineral acreage subject to said leases. In exchange for execution of the aforementioned leases, the City and Parish received "bonus payments", or sums of money based upon the amount of acreage subject to the lease, which necessarily meant that the respective Taxing Authority received bonus payments attributable to the acreage represented by the Adjudicated Property included within each such lease. Further, as additional compensation for said leases, the City and Parish agreed to receive annual rental and/or royalty payments based upon the acreage included within the leases,

---

[1] The execution of the original leases was made by the State Mineral and Energy Board on behalf of the City and/or the Parish pursuant to La. R.S. 30:153, which provides: "Any agency may by resolution direct the State Mineral and Energy Board to lease its land…The bonus money, if any, received for the lease shall be transmitted by the State Mineral and Energy Board to the agency. After the execution of the original lease, all rights and authority in connection therewith shall be vested in the agency to the same extent as if the agency itself had leased the land."

including the acreage attributable to the Adjudicated Property listed in each such lease. Wells have been drilled and completed under the authority of said mineral leases, and the City and Parish have received and accepted royalty payments from the production of those wells, including royalty payments attributable to the acreage included within the Adjudicated Property listed in each such lease. Accordingly, by including the Adjudicated Property within the listed acreage covered by these mineral leases, the City and Parish have received bonus payments, annual rental, and royalty payments that are directly attributable to the acreage represented by the listed Adjudicated Property within each such lease.

The City and Parish have failed and/or refused to properly apply the mineral revenues to the benefit of the Plaintiff taxpayers in accordance La. R.S. 47:2233. Furthermore, after failing to properly apply the mineral revenues so as to satisfy the tax obligations, the Taxing Authorities have failed to issue proper certificates of redemption and surrender possession of the property to the formerly delinquent taxpayer as required by La. R.S. 47:2233. Finally, after failing to properly apply the mineral revenues to satisfy the tax obligations and then failing to issue proper certificates of redemption on property whose tax obligations would have been so satisfied, the City and Parish have sold parcels of Adjudicated Properties to third parties to satisfy the tax obligations thereby permanently depriving the taxpayer owners of the ownership, possession and fruits of their property.

The requested Preliminary Injunction is intended to maintain the status quo while this matter is under litigation. Basically, plaintiffs do not want the City and Parish to continue selling adjudicated property until the court has considered and decided the manner in which mineral revenues should be credited to delinquent taxes. It would be patently unfair to the plaintiffs, and cause them irreparable harm, to have the defendants continue to take their property and sell it without due process of law while litigation is pending on the question of whether any taxes are actually owed.

Thus, unless a preliminary injunction is issued prohibiting the City and the Parish from selling or otherwise disposing of any relevant Adjudicated Property prior to the issuance of a judgment in the suit for a Permanent Injunction, the Plaintiff Class members will suffer irreparable injury, loss, and damage.

The elements of proof necessary to support a claim for preliminary injunction include proof that the loss or injury to be suffered if the injunction is not issued may be irreparable, that the mover is entitled to the relief sought, and that the mover will be likely to prevail on the merits of the case.

*Choice Professional Overnight Copy Service, Inc. v. Galeas,* 11-0034 (La. App. 4 Cir. 5/25/11), 66 So. 3d 1216, <u>writ denied</u>, 2011-1346 (La. 9/30/11), 71 So. 3d 287)  La. C.C.P. Art. 3601 provides that an injunction may only be issued "where irreparable injury, loss, or damage may otherwise result to the applicant…" Louisiana courts have long held that "irreparable injury" means a loss that cannot be adequately compensated in money damages, or is not susceptible to measurement by pecuniary standards. *Shaw v. Hingle,* 94–1579 (La.1/17/95), 648 So.2d 903; *In re Succession of Scurria,* 45,292 (La. App. 2 Cir. 8/25/10), 47 So.3d 620. However, pursuant to *Cason v. Chesapeake Operating, Inc.,* 47,084 (La. App. 2 Cir. 4/11/12), 92 So. 3d 436, the plaintiffs are not bound by the requirement of irreparable injury because they "seek to protect rights in real property."

The other elements of proof necessary to support a claim for preliminary injunction include proof that the mover will be likely to prevail on the merits of the case. *Choice Professional Overnight Copy Service, Inc. v. Galeas,* 11-0034 (La. App. 4 Cir. 5/25/11), 66 So. 3d 1216, <u>writ denied</u>, 2011-1346 (La. 9/30/11), 71 So. 3d 287) The facts, as plead in the petition and as will be shown at trial, clearly support a finding that the plaintiffs will prevail on the merits.

For the reasons set forth hereinabove, plaintiffs are entitled to the protection of a Preliminary Injunction prohibiting the defendants from continuing to sell adjudicated property during the pendency of this litigation.

<table>
<tr><td></td><td>Submitted by:<br><br><br><br>Byron A. Richie, La. Bar #11254<br>For Richie, Richie & Oberle, L.L.P.<br>P. O. Box 44065<br>Shreveport, LA 71134<br>1800 Creswell Ave. (71101)<br>Ph. (318) 222-8305<br>Fax (318) 221-8311<br><br><br>Attorneys for Red Sox Investments, L.L.C.</td></tr>
</table>

*km*

# *Citation*

RED SOX INVESTMENTS LLC · ETAL     ·    NO. 576478-C
                                     STATE OF LOUISIANA

     *VERSUS*                           PARISH OF CADDO
                                       FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO  **CITY OF SHREVEPORT, THRU**
                                   **HONORABLE CEDRIC GLOVER, MAYOR**
                                   **505 TRAVIS ST, STE 200**
                                   **SHREVEPORT LA 71101**

              of the Parish of CADDO

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition.*  The
petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within FIFTEEN (15) days
after you have received these documents, you must file an answer or other
legal pleadings in the Office of the Clerk of this Court at the Caddo
Parish Court House, 501 Texas Street, Room 103, Shreveport, Louisiana.

If you do not do what the petition asks, or if you do not file an answer
or legal pleading within FIFTEEN (15) days, a judgment may be entered
against you without further notice.

This Citation was issued by the Clerk of Court for Caddo Parish, on this
date May 12, 2014.

*Also attached are the following:     GARY LOFTIN, CLERK OF COURT
XX REQUEST FOR ADMISSIONS OF FACTS    MIKE SPENCE, CHIEF DEPUTY
XX INTERROGATORIES
__ REQUEST FOR PRODUCTION OF DOCUMENTS   By:_____
                                                  Deputy Clerk
__

                                 BYRON RICHIE - 2892
                                       Attorney

SCAN 051320140000001995

# FILE COPY

*Rule to Show Cause*

RED SOX INVESTMENTS LLC · ETAL                NO. 576478-C
                                              STATE OF LOUISIANA
     *VERSUS*                                 PARISH OF CADDO
                                              FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

TO:  **CITY OF SHREVEPORT, THRU**
     *HONORABLE CEDRIC GLOVER, MAYOR*
     *505 TRAVIS ST, STE 200*
     *SHREVEPORT LA 71101*

                              GREETINGS:

     YOU ARE HEREBY ORDERED, DIRECTED and COMMANDED, in the name of the
State of Louisiana and of this Honorable Court, to show cause before this
Court on the **14TH** day of **JULY**     , 2014, at **9:30 AM**    , why you should
not comply with all that is contained in the certified copy of the order
which accompanies this RULE AND HEREIN FAIL NOT.

WITNESS the Honorable Judges of our Court on this date May 12, 2014.

OTHER:                        GARY LOFTIN, CLERK OF COURT
                              MIKE SPENCE, CHIEF DEPUTY

                              By:_____
                                       *Deputy Clerk*


                              _____
                              BYRON RICHIE - 2892
                                       *Attorney*

# FILE COPY

*km*

# *Citation*

RED SOX INVESTMENTS LLC ETAL       NO. 576478-C
                                      STATE OF LOUISIANA
     *VERSUS*                           PARISH OF CADDO
                                      FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT LOUISIANA ETAL

THE STATE OF LOUISIANA:  TO  **CADDO PARISH, THRU**
                                  **WOODY WILSON, ADMINISTRATOR**
                                  **505 TRAVIS ST, STE 800**
                                  **SHREVEPORT LA 71101**

                  of the Parish of CADDO

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition.*  The
petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within FIFTEEN (15) days
after you have received these documents, you must file an answer or other
legal pleadings in the Office of the Clerk of this Court at the Caddo
Parish Court House, 501 Texas Street, Room 103, Shreveport, Louisiana.

If you do not do what the petition asks, or if you do not file an answer
or legal pleading within FIFTEEN (15) days, a judgment may be entered
against you without further notice.

This Citation was issued by the Clerk of Court for Caddo Parish, on this
date May 12, 2014.

*Also attached are the following:     GARY LOFTIN, CLERK OF COURT
**XX** REQUEST FOR ADMISSIONS OF FACTS    MIKE SPENCE, CHIEF DEPUTY
**XX** INTERROGATORIES
___ REQUEST FOR PRODUCTION OF DOCUMENTS   By:_____
___                                      Deputy Clerk

                             BYRON RICHIE - 2892
                                 Attorney

SCAN0513201400000000018

# FILE COPY

## Rule to Show Cause

*km*

RED SOX INVESTMENTS·LLC· ETAL

     *VERSUS*

CITY OF SHREVEPORT LOUISIANA   ETAL

NO. 576478-C
STATE OF LOUISIANA
PARISH OF CADDO
FIRST JUDICIAL DISTRICT COURT

TO:  **CADDO PARISH, THRU**
    WOODY WILSON, ADMINISTRATOR
    505 TRAVIS ST, STE 800
    SHREVEPORT LA 71101

                       GREETINGS:

    YOU ARE HEREBY ORDERED, DIRECTED and COMMANDED, in the name of the
State of Louisiana and of this Honorable Court, to show cause before this
Court on the **14TH** day of **JULY**    , 2014, at **9:30 AM**   , why you should
not comply with all that is contained in the certified copy of the order
which accompanies this RULE AND HEREIN FAIL NOT.

WITNESS the Honorable Judges of our Court on this date May 12, 2014.

OTHER:

                       *GARY LOFTIN, CLERK OF COURT*
                       *MIKE SPENCE, CHIEF DEPUTY*

                       By:_____
                                *Deputy Clerk*

                       BYRON A RICHIE - 2892
                             *Attorney*

# FILE
# COPY

DOCKET NUMBER: *576,478*          SECTION OR DIVISION: _____ C

| | | |
|---|---|---|
| RED SOX INVESTMENTS, L.L.C., ET AL.,ON BEHALF OF ITSELF AND A CLASS OF SIMILARLY SITUATED LOUISIANA RESIDENTS | § | FIRST JUDICIAL DISTRICT COURT |
| VERSUS | § | PARISH OF CADDO |
| CITY OF SHREVEPORT, LOUISIANA, and CADDO PARISH, LOUISIANA | § | STATE OF LOUISIANA |

### REQUEST FOR NOTICE OF SETTING FOR TRIAL

Clerk of Court
First Judicial District Court
Caddo Parish

In accordance with the provisions of Article 1572 of the Louisiana Code of Civil Procedure, this is submitted as a request for ten (10) days written notice of any setting of this case for trial.

These parties further request notice of any and all judgments which may be rendered in this matter.

Please file this request in the record.

PGS ____ EXH ____ MIN ____
CC ____ CP ____ MAIL ____ N/J ____
INDEX ____ REC ____ FAX ____
W/D DOC ____ CERT MAIL ____
SERVICE _____

Respectfully Submitted,

RICHIE, RICHIE & OBERLE, L.L.P.

BY: _____
BYRON A. RICHIE (BRN 11254)
1800 Creswell Avenue
P./O. Box 44065
Shreveport, Louisiana 71134
Telephone: (318) 222-8305
ATTORNEYS FOR RED SOX INVESTMENTS, LLC.

**Certificate of Service**
I hereby certify that a copy of the foregoing pleading has this day been served on all counsel of record, via United States Mail, postage prepaid.
Shreveport, Louisiana, 5/1, 2014.

_____
BYRON A. RICHIE

$ ____ **FILED**
MAY 0 1 2014
E. C. BRUMLEY
CADDO DEPUTY CLERK OF COURT

1.7900

# *Citation*

km

RED SOX INVESTMENTS LLC  ETAL

    VERSUS

CITY OF SHREVEPORT LOUISIANA  ETAL

NO. 576478-C
STATE OF LOUISIANA
PARISH OF CADDO
FIRST JUDICIAL DISTRICT COURT

THE STATE OF LOUISIANA:  TO  CITY OF SHREVEPORT, THRU
                              HONORABLE CEDRIC GLOVER, MAYOR
                              505 TRAVIS ST, STE 200
                              SHREVEPORT LA 71101

                  of the Parish of CADDO

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition.*  The
petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within FIFTEEN (15) days
after you have received these documents, you must file an answer or other
legal pleadings in the Office of the Clerk of this Court at the Caddo
Parish Court House, 501 Texas Street, Room 103, Shreveport, Louisiana.

If you do not do what the petition asks, or if you do not file an answer
or legal pleading within FIFTEEN (15) days, a judgment may be entered
against you without further notice.

This Citation was issued by the Clerk of Court for Caddo Parish, on this
date May 12, 2014.

*Also attached are the following:    GARY LOFTIN, CLERK OF COURT
XX REQUEST FOR ADMISSIONS OF FACTS    MIKE SPENCE, CHIEF DEPUTY
XX INTERROGATORIES
__ REQUEST FOR PRODUCTION OF DOCUMENTS  By: _____
                                         Deputy Clerk

                              BYRON RICHIE - 2892
                                    Attorney

-----------------------------------------------------------------
SERVICE INFORMATION:        Date  5-14-14

Personal ✓  Domiciliary ____  to  City of S'Port thru Hon.

                      Glover (Jenkins)

Unserved ____  because _____

Remarks _____

                  Val Carter
                  Deputy Sheriff

2014 MAY 13  AM 11 37

CADDO PARISH
SHERIFF'S OFFICE

**FILED**
SHERIFF RETURN

MAY 1 5 2014

GARY LOFTIN
CLERK OF COURT

085483

# *Rule to Show Cause*

*km*

RED SOX INVESTMENTS LLC  ETAL

    *VERSUS*

CITY OF SHREVEPORT LOUISIANA  ETAL

NO. 576478-C
STATE OF LOUISIANA
PARISH OF CADDO
FIRST JUDICIAL DISTRICT COURT

TO:  **CITY OF SHREVEPORT, THRU**
    HONORABLE CEDRIC GLOVER, MAYOR
    505 TRAVIS ST, STE 200
    SHREVEPORT LA 71101

                       GREETINGS:

   YOU ARE HEREBY ORDERED, DIRECTED and COMMANDED, in the name of the
State of Louisiana and of this Honorable Court, to show cause before this
Court on the 14TH day of JULY   , 2014, at 9:30 AM  , why you should
not comply with all that is contained in the certified copy of the order
which accompanies this RULE AND HEREIN FAIL NOT.

WITNESS the Honorable Judges of our Court on this date May 12, 2014.

OTHER:                  GARY LOFTIN, CLERK OF COURT
                           MIKE SPENCE, CHIEF DEPUTY

                           By: _____
                               Deputy Clerk

                         BYRON RICHIE - 2892
                              Attorney

----------------------------------------------------------------
SERVICE INFORMATION:    Date *5-14-14*

Personal ✓  Domiciliary _____ to *City of Shreveport thru*
*Hon. Cedric D Glover (Jenkins)*

Unserved _____ because _____

Remarks _____
               *Val Campbell*
               Deputy Sheriff

**FILED**
SHERIFF RETURN

MAY 1 5 2014

GARY LOFTIN
CLERK OF COURT

2014 MAY 13 AM 11 37
CADDO PARISH
SHERIFF'S OFFICE

085484

# *Citation*

RED SOX INVESTMENTS LLC  ETAL        NO. 576478-C       :

       *VERSUS*             STATE OF LOUISIANA

                       PARISH OF CADDO

CITY OF SHREVEPORT LOUISIANA  ETAL    FIRST JUDICIAL DISTRICT COURT

THE STATE OF LOUISIANA:  TO  CADDO PARISH, THRU
                         WOODY WILSON, ADMINISTRATOR
                         505 TRAVIS ST, STE 800
                         SHREVEPORT LA 71101

           of the Parish of CADDO

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition.*  The
petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within FIFTEEN (15) days
after you have received these documents, you must file an answer or other
legal pleadings in the Office of the Clerk of this Court at the Caddo
Parish Court House, 501 Texas Street, Room 103, Shreveport, Louisiana.

If you do not do what the petition asks, or if you do not file an answer
or legal pleading within FIFTEEN (15) days, a judgment may be entered
against you without further notice.

This Citation was issued by the Clerk of Court for Caddo Parish, on this
date May 12, 2014.

*Also attached are the following:     GARY LOFTIN, CLERK OF COURT
XX REQUEST FOR ADMISSIONS OF FACTS    MIKE SPENCE, CHIEF DEPUTY
XX INTERROGATORIES
__ REQUEST FOR PRODUCTION OF DOCUMENTS   By: _____
__                                   Deputy Clerk

                            BYRON RICHIE - 2892
                                Attorney

----------------------------------------------------------------

SERVICE INFORMATION:       Date *5-14-14*

Personal ✓   Domiciliary ____ to *Caddo Parish thru Woody*
                            *Wilson (MMS)*
Unserved ____ because ____

Remarks ____
         *Val Chapman*
         Deputy Sheriff

**FILED**
SHERIFF RETURN

MAY 1 5 2014

GARY LOFTIN
CLERK OF COURT

2014 MAY 13  AM 11 37
CADDO PARISH
SHERIFF'S OFFICE

085485

RED SOX INVESTMENTS, L.L.C.,                NUMBER:  576,478-c
ET AL, ON BEHALF OF ITSELF AND
A CLASS OF SIMILARLY SITUATED
PROPERTY OWNERS
VERSUS                                      FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT, LOUISIANA               CADDO PARISH, LOUISIANA
AND CADDO PARISH, LOUISIANA

## REQUEST FOR TEN DAYS NOTICE OF
## SETTING AND FOR NOTICE OF JUDGMENT

NOW INTO COURT, through undersigned counsel, comes defendant, the City of

Shreveport, who respectfully request that they be given at least ten (10) days written

notice in advance of any setting in the above captioned matter, whether same be for

trial, hearing, etc. in accordance with provisions of Louisiana Code of Civil Procedure,

article 1572.

Appearers further request written notice of any judgment or interlocutory order in

accordance with provisions of Louisiana Code of Civil Procedure, article 1914.


Respectfully submitted,

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY, BYRD & CROMWELL, L.L.P.


Edwin A. Byrd, III  #19509
Jerald L. Perlman #8602
400 Texas Street, Suite 400
Post Office Box 1786
Shreveport, LA 71166-1786
Ph. (318) 221-1800  Fax: (318) 226-0390

ATTORNEYS FOR DEFENDANT, THE CITY
OF SHREVEPORT


FILED

MAY 2 9 2014

E. G. BRUMLEY
CADDO DEPUTY CLERK OF COURT

## CERTIFICATE

I hereby certify that a copy of the above and foregoing was this date mailed, proper

postage affixed and placed in the United States mail, to

Mr. Byron A. Richie
Mr. C. Vernon Richie
Richie, Richie & Oberle, LLP
1800 Creswell Ave. (71101)
P. O. Box 44065
Shreveport, LA 71134

Mr. Michael H. Wainwright
97 Country Club Circle
Brevard, NC 28712

Mr. Richard E. Hiller
Attorney at Law
401 Edwards Street, Suite 1300
Shreveport, LA 71101

Mr. Malcolm Murchison
Mr. Leland Horton
Bradley, Murchison, Kelly & Shea
401 Edwards Street, Suite 1000
Shreveport, LA 71101

Ms. Donna Frazier
Mr. Henry Bernstein
Parish Attorney
Government Plaza
505 Travis Street
Shreveport, LA 71101

Shreveport, Louisiana this the 29ᵗʰ day of _____May_____, 2014.

_____
OF COUNSEL

RED SOX INVESTMENTS, L.L.C.,         NUMBER: 576,478-C
ET AL, ON BEHALF OF ITSELF AND
A CLASS OF SIMILARLY SITUATED
PROPERTY OWNERS
VERSUS                             FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT, LOUISIANA     CADDO PARISH, LOUISIANA
AND CADDO PARISH, LOUISIANA

## PEREMPTORY EXCEPTIONS OF NO CAUSE AND NO RIGHT OF ACTION

NOW INTO COURT, through undersigned counsel, comes defendant, the City of Shreveport ("the City"), who, reserving all other pleadings, motions and exceptions not included herein, with respect represents:

1.

This suit, containing 117 numbered paragraphs, pertains to properties adjudicated to Caddo Parish ("the Parish") and the City for non-payment of taxes and other governmental assessments, and mineral leases that are purported to include these properties.

2.

In Paragraph 9 of the Petition, the Plaintiff lists thirty-nine (39) separate mineral leases to which this suit allegedly pertains.

3.

Of the thirty-nine (39) identified leases, only four (4) are described as having been entered into by the City.

4.

Plaintiff does not allege that it has an ownership interest in property included in any of the four (4) leases entered into by the City.

5.

Additionally, nowhere in the 117 paragraphs of the Petition does Plaintiff identify any mineral leases entered into by the City involving property in which Plaintiff claims an ownership interest.

6.

Therefore, the Petition does not indicate that Plaintiff has either a cause or right of action against the City.

7.

The City attaches hereto a memorandum in support of its Exceptions.

PGS _6_ EXH ___ MIN ✓
CC _3_ CP ___ MAIL _✓_ N/
INDEX ___ REC ___ FAX
W/D DOC ___ CERT MAIL
SERVICE ___

$ _城TY_ FILED
JUN 0 9 2014
COLVIN ROBERSON
CADDO DEPUTY CLERK OF COURT

WHEREFORE, THE CITY PRAYS that its Exceptions be filed and, after due proceedings had, that this Court enter an Order dismissing Plaintiff's suit as to the City with prejudice and at Plaintiff's cost.

Respectfully submitted,

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY, BYRD & CROMWELL, L.L.P.

Edwin H. Byrd, III  #19509
Jerald L. Perlman #8602
400 Texas Street, Suite 400
Post Office Box 1786
Shreveport, LA 71166-1786
Ph. (318) 221-1800  Fax: (318) 226-0390

ATTORNEYS FOR DEFENDANT, THE CITY
OF SHREVEPORT

RED SOX INVESTMENTS, L.L.C.,          NUMBER:  576,478-C
ET AL, ON BEHALF OF ITSELF AND
A CLASS OF SIMILARLY SITUATED
PROPERTY OWNERS
VERSUS                               FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT, LOUISIANA        CADDO PARISH, LOUISIANA
AND CADDO PARISH, LOUISIANA

## ORDER

Considering the foregoing:

IT IS ORDERED that the Exceptions of No Cause and No Right of Action of the

City of Shreveport be and hereby are fixed for hearing on the _28_ day of _July_ 2014,

at _9:30_ m.

DONE AND SIGNED at Shreveport, Louisiana, this _9th_ day of June, 2014.

_____
District Judge

**Service Information:**

**Please serve Plaintiff
Through its Counsel of Record**

Mr. Byron A. Richie
Mr. C. Vernon Richie
Richie, Richie & Oberle, LLP
1800 Creswell Ave.
Shreveport, LA 71101
        and
Mr. Richard E. Hiller
Attorney at Law
401 Edwards Street, Suite 1300
Shreveport, LA 71101

## ROUTE TO
## MINUTE CLERK

RED SOX INVESTMENTS, L.L.C.,            NUMBER:  576,478-C
ET AL, ON BEHALF OF ITSELF AND
A CLASS OF SIMILARLY SITUATED
PROPERTY OWNERS
VERSUS                                  FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT, LOUISIANA           CADDO PARISH, LOUISIANA
AND CADDO PARISH, LOUISIANA

<u>MEMORANDUM IN SUPPORT OF PEREMPTORY EXCEPTIONS OF NO
CAUSE AND NO RIGHT OF ACTION</u>

MAY IT PLEASE THE COURT:

This suit, containing 117 numbered paragraphs, pertains to properties allegedly

adjudicated to Caddo Parish ("the Parish") and the City of Shreveport ("the City") for

non-payment of taxes and other governmental assessments, and mineral leases that

are purported to include these properties. In Paragraph 9 of the Petition, the Plaintiff

lists thirty-nine (39) separate mineral leases to which this suit allegedly pertains. Of the

thirty-nine (39) identified leases, only four (4) are described as having been entered into

by the City. See Plaintiff's Petition  ¶ 9 l., m. p and ff. Plaintiff does not allege that it has

an ownership interest in property included in any of the four (4) leases entered into by

the City. Additionally, nowhere in the 117 paragraphs of the Petition does Plaintiff

identify any mineral leases entered into by the City involving property in which Plaintiff

claims an ownership interest.  In light of the above, the City has filed Exceptions of No

Cause and No Right of Action.[1]

<u>Law and Argument</u>

The Petition does not indicate that the Plaintiff owns property subject to a mineral

lease by the City.  While the Petition does, in Paragraph 85, allege an ownership

interest in to tracts of land inside the limits of the City, the Petition describes the lease

executed on that tract as a *Parish* lease.  Petition ¶ 93.  The mere fact that the Parish

may have included this property in one of its leases as property adjudicated for non-

payment of *parish* taxes does not mean that the City also did this.  A petition that argue-

---

[1] The City is fully aware that this suit has been filed by Plaintiff as a class action.
However, there has to date been no class certification hearing held.  A suit may be a
proper class action and still be dismissed for failure to state a cause of action.  <u>Stewart
v. Rhodia, Inc.</u>, 2011-0434 <u>et seq.</u>, (La. App. 1 Cir. 3/14/12), 96 So.2d 482, 488.
Therefore, it is entirely appropriate at this juncture for the Court to determine if the
petition states a cause or right of action as to a particular defendant.

FILED

$_____

JUN 0 9 2014

COLVIN ROBERSON
CADDO DEPUTY CLERK OF COURT

ably states a cause of action against one defendant does not imply that a cause of action has been stated as to all defendants.  As one Louisiana court has stated:

> "...it would be time-consuming, expensive and unfair to require defendant or defendants to remain in the case and assist in its defense simply because a cause of action has been stated as to another defendant."  Bacon v. Peerless Ins. Co., 148 So.2d 811, 813 (La. App. Fourth Cir. 1963).

There is no assertion whatsoever in the Plaintiff's extremely detailed Petition suggesting these two tracts are included in any City mineral lease.  While the Petition arguably could be held to state a cause of action against the Parish, or a right of action by Plaintiff against the Parish, under the facts alleged, no such argument can be made as to the City.  It should therefore be dismissed from these proceedings.

Respectfully submitted,

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY, BYRD & CROMWELL, L.L.P.

Edwin H. Byrd, III  #19509
Jerald L. Perlman #8602
400 Texas Street, Suite 400
Post Office Box 1786
Shreveport, LA 71166-1786
Ph. (318) 221-1800  Fax: (318) 226-0390

ATTORNEYS FOR DEFENDANT, THE CITY OF SHREVEPORT

## CERTIFICATE

I hereby certify that a copy of the above and foregoing was this date mailed, proper

postage affixed and placed in the United States mail, to

Mr. Byron A. Richie
Mr. C. Vernon Richie
Richie, Richie & Oberle, LLP
1800 Creswell Ave. (71101)
P. O. Box 44065
Shreveport, LA 71134

Mr. Michael H. Wainwright
97 Country Club Circle
Brevard, NC 28712

Mr. Richard E. Hiller
Attorney at Law
401 Edwards Street, Suite 1300
Shreveport, LA 71101

Mr. Malcolm Murchison
Mr. Leland Horton
Bradley, Murchison, Kelly & Shea
401 Edwards Street, Suite 1000
Shreveport, LA 71101

Ms. Donna Frazier
Mr. Henry Bernstein
Parish Attorney
Government Plaza
505 Travis Street
Shreveport, LA 71101

Shreveport, Louisiana this the 9th day of June, 2014.

_____
OF COUNSEL

# *Notice of Filing*

ds

RED SOX INVESTMENTS LLC  ETAL        NO. 576478-C
                                     STATE OF LOUISIANA

    VERSUS                           PARISH OF CADDO
                                       FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO  **RED SOX INVESTMENTS, LLC, ETAL**
                                  THRU BYRON RICHIE, ATTORNEY
                                  1800 CRESWELL AVE
                                  SHREVEPORT, LA  71101

   YOU ARE HEREBY NOTIFIED that on the **9TH**  day of **JUNE**     , **2014**,

CITY OF SHREVEPORT                               herein, filed

PEREMPTORY EXCEPTIONS OF NO CAUSE AND NO RIGHT OF ACTION

a copy of which accompanies this notice.

   CLERK'S OFFICE this date June 12, 2014.

                              GARY LOFTIN, CLERK OF COURT
                              MIKE SPENCE, CHIEF DEPUTY

JERALD L PERLMAN _____      By:_____
            Attorney                               Deputy Clerk

FILE COPY

## Notice of Filing

ds

RED SOX INVESTMENTS LLC  ETAL      NO. 576478-C
                                 STATE OF LOUISIANA
    VERSUS                     PARISH OF CADDO
                                   FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO  **RED SOX INVESTMENTS LLC, ETAL**
                             THRU RICHARD E HILLER, ATTORNEY
                             401 EDWARDS ST SUITE 1300
                             SHREVEPORT, LA  71101

    YOU ARE HEREBY NOTIFIED that on the **9TH**  day of **JUNE**       , **2014**,

CITY OF SHREVEPORT                            herein, filed

PEREMPTORY EXCEPTIONS OF NO CAUSE AND NO RIGHT OF ACTION

a copy of which accompanies this notice.

    CLERK'S OFFICE this date June 12, 2014.

                           GARY LOFTIN, CLERK OF COURT
                           MIKE SPENCE, CHIEF DEPUTY

JERALD L PERLMAN _____    By: _____
          Attorney                         Deputy Clerk

# FILE COPY

ds

# *Notice of Filing*

RED SOX INVESTMENTS LLC  ETAL          NO. 576478-C
                                       STATE OF LOUISIANA
    *VERSUS*                           PARISH OF CADDO
                                       FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO  **RED SOX INVESTMENTS, LLC, ETAL**
                             THRU BYRON RICHIE, ATTORNEY
                             1800 CRESWELL AVE
                             SHREVEPORT, LA  71101


    YOU ARE HEREBY NOTIFIED that on the 9TH  day of JUNE      , 2014,

CITY OF SHREVEPORT                                     herein, filed

PEREMPTORY EXCEPTIONS OF NO CAUSE AND NO RIGHT OF ACTION



a copy of which accompanies this notice.

    CLERK'S OFFICE this date June 12, 2014.

                         GARY LOFTIN, CLERK OF COURT
                         MIKE SPENCE, CHIEF DEPUTY

JERALD L PERLMAN            By: _____
     Attorney                      Deputy Clerk

-----------------------------------------------------------------
SERVICE INFORMATION:          Date ___6·12·14_____

Personal __✓__ Domiciliary _____ to _____

Unserved _____ because _____

Remarks _____
              
                     Deputy Sheriff   1100


||||||| (barcode)

**FILED**
SHERIFF RETURN

JUN 1 9 2014

GARY LOFTIN
CLERK OF COURT



090031

# Notice of Filing

ds

RED SOX INVESTMENTS LLC ETAL        NO. 576478-C
                                    STATE OF LOUISIANA
    VERSUS                          PARISH OF CADDO
                                    FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA ETAL

THE STATE OF LOUISIANA: TO **RED SOX INVESTMENTS LLC, ETAL**
                           THRU RICHARD E HILLER, ATTORNEY
                           401 EDWARDS ST SUITE 1300
                           SHREVEPORT, LA 71101

    YOU ARE HEREBY NOTIFIED that on the **9TH** day of **JUNE**        , 2014,

CITY OF SHREVEPORT                                      herein, filed

PEREMPTORY EXCEPTIONS OF NO CAUSE AND NO RIGHT OF ACTION

a copy of which accompanies this notice.

    CLERK'S OFFICE this date June 12, 2014.

                           GARY LOFTIN, CLERK OF COURT
                           MIKE SPENCE, CHIEF DEPUTY

JERALD L PERLMAN             By: _____
        Attorney                    Deputy Clerk

SCAN0624201400000137

----------------------------------------------------------------

SERVICE INFORMATION:           Date 6-19-14

Personal ✓ Domiciliary _____ to _____

Unserved _____ because _____

Remarks _____


        Deputy Sheriff

FILED
SHERIFF RETURN

JUN 2 3 2014

GARY LOFTIN
CLERK OF COURT

2014 JUN 13 AM 11 23
CADDO PARISH
SHERIFF'S OFFICE

090012

RED SOX INVESTMENTS, LLC,      NUMBER: 576,478-C
ET AL

VERSUS                         FIRST  JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT, ET AL      CADDO PARISH, LOUISIANA

## MOTION TO INTERVENE

NOW INTO COURT, through undersigned counsel, comes  Steve Prator, Sheriff of Caddo

Parish, Louisiana ("Sheriff Prator"), who moves this court to allow his intervention in this matter

for the following reasons:

1.

As reflected in the Petition for Declaratory Judgment submitted herewith, upon information

and belief, Red Sox Investments, LLC and all individuals or entities comprising "Plaintiff Class"

described in the captioned litigation intend to join Sheriff Prator as a defendant in this matter.

2.

Should Sheriff Prator be joined as a defendant in this suit, he will incur unnecessary legal

expenses, suffer business interruption and otherwise be embroiled in litigation unnecessarily.

3.

Because Sheriff Prator does not believe he should have to respond to a suit by plaintiffs or

be involved in this litigation, he seeks a declaratory judgment of this court seeking the relief prayed

for in his Petition for Declaratory Judgment.

4.

Pursuant to the provisions of La. C.C.P. art. 1091, Sheriff Prator seeks to intervene in this

action and, to the extent necessary, oppose any demands of plaintiffs in this suit.

PGS _8_ EXH _1_ MIN ✓
CC _1_ CP ___ MAIL ___ N/J ___
INDEX ___ REC ___ FAX ___
W/D DOC ___ CERT MAIL ___
SERVICE _/ul_

$ _150_  **FILED**

JUN 30 2014

COLVIN ROBERSON
CADDO DEPUTY CLERK OF COURT

Respectfully submitted,

WIENER, WEISS & MADISON
A PROFESSIONAL CORPORATION

By: _____
    John M. Madison, Jr   8836
    Charles E. Tabor      31984
    Reid A. Jones         34611
2350 Regions Tower, 333 Texas Street
P.O. Box 21990
Shreveport, Louisiana 71120-1990
Telephone:  318  226-9100
Facsimile:  318  424-5128

ATTORNEYS FOR STEVE PRATOR

## CERTIFICATE

I hereby certify that a copy of the foregoing was this day served on the following, by placing

a copy of same in the United States Mail, properly addressed and with proper postage affixed.

| | |
|---|---|
| Byron A. Richie<br>Richie, Richie & Oberle, LLC<br>P.O. Box 44065<br>Shreveport, Louisiana 71101 | Michael H. Wainright<br>97 Country Club Circle<br>Brevard, North Carolina 28712 |
| Richard E. Hiller<br>401 Edwards Street, Ste. 1300<br>Shreveport, Louisiana 71101 | Edwin H. Byrd, III<br>Pettiette, Armand, Dunkleman, Woodley,<br>Byrd & Cromwell<br>P.O. Box 1786<br>Shreveport, Louisiana 71166 |
| Leland Horton<br>Bradley, Murchison, Kelly & Shea<br>401 Edwards Street, Suite 1000<br>Shreveport, Louisiana 71101 | |

Shreveport, Louisiana, this **30**day of June, 2014.

_____
John M. Madison, Jr.

RED SOX INVESTMENTS, LLC,                    NUMBER: 576,478-C
ET AL

VERSUS                                       FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT, ET AL                    CADDO PARISH, LOUISIANA

## PETITION FOR DECLARATORY JUDGMENT

The petition of Steve Prator, Sheriff of Caddo Parish, Louisiana ("Sheriff Prator"), with

respect, shows:

1.

This is a petition for declaratory judgment pursuant to the provisions of La. C.C.P. Art. 1871,

et seq.

2.

Defendants are Red Sox Investments, LLC and all individuals or entities comprising the

"Plaintiff Class" described in the original petition in this litigation.

3.

Upon information and belief, Sheriff Prator shows that a question has arisen whether he

should be a party, either as a plaintiff or defendant, in the captioned litigation.

4.

In the captioned litigation, plaintiffs seek a judgment in their favor, and against City of

Shreveport, Louisiana ("City") and Caddo Parish, Louisiana ("Commission") for a sum of money

and other relief, as more fully set forth in the prayer of plaintiffs' petition in the captioned litigation.

5.

In the captioned litigation, plaintiffs claim that the City and Commission leased or otherwise

dealt with "Adjudicated Property", as defined in their petition, without having followed the

procedures regarding adjudicated property, as set forth in La. R.S. 2196, et seq.

6.

According to plaintiffs' petition, the City and Commission obtained tracts, or interest in

tracts, of adjudicated property, as set forth in their petition. Plaintiffs define such adjudicated tracts

as "Adjudicated Property".



FILED

JUN 3 0 2014

COLVIN ROBERSON
CADDO DEPUTY CLERK OF COURT

7.

La. R.S. 47:2231 provides, in pertinent part:

"After the tax sale certificate for adjudicated property is filed with the recorder of conveyances, the political subdivision (city or commission) may institute a suit in the district court of the parish in which the property is located to obtain possession of the adjudicated property..." (Emphasis added)

8.

La. R.S. 47:2232 provides, in pertinent part:

"Upon the presentation of a certified copy of the tax sale certificate, after 10 days notice to the owner and proper hearing, the judge shall grant an order of possession commanding the sheriff to place the political subdivision (city or commission) in actual possession of the adjudicated property."

9.

La. R.S. 47:2233 provides, in pertinent part:

"The political subdivision (city or commission) through its [their] tax collector, upon taking or being placed in possession by judgment of court may, without the necessity of public letting, lease the adjudicated property on commercially reasonable terms and collect rentals. The political subdivision shall apply the rentals first to the payment of all costs of court incurred in the proceeding. Thereafter, all income shall be applied against any taxes, charges imposed pursuant to La. R.S. 33:1236, or paving or local improvement assessments due against the property. When all the obligations have been paid in full, the political subdivision shall issue a proper certificate of redemption and surrender its possession of the property."

10.

Sheriff Prator does not conduct tax sales for the City, nor does he have anything to do with certificates for property adjudicated to the City at City tax sales.

11.

When Sheriff Prator conducted tax sales of immovable Caddo Parish property, because some of those sales did not generate bids to cover the taxes and other amounts due, Sheriff Prator adjudicated those tracts to the Commission, as required by law.

12.

When Sheriff Prator conducted the various tax sales resulting in his issuance and filing of tax sale certificates for the Adjudicated Property, Sheriff Prator thereby had fulfilled all of his duties with respect to such Adjudicated Property, as provided in La. R.S. 47:2196, et seq.

13.

Sheriff Prator is unaware whether, after he issued and filed the tax sale certificates of the Adjudicated Property with the recorder of conveyances of Caddo Parish, as required by law, the Commission instituted any suit in the First Judicial District Court to obtain possession of the Adjudicated Property.

14.

La. R.S. 47:2233 allows the Commission, through Sheriff Prator, as its tax collector, to lease Adjudicated Property on commercially reasonable terms.

15.

Such leasing can take place only after the Commission has been placed in possession of the Adjudicated Property by a judgment of court.

16.

To the best of Sheriff Prator's knowledge, the Commission has not been placed in possession of any of the Adjudicated Property by a judgment of court and, more importantly, the Commission has not asked Sheriff Prator to grant a lease any of the Adjudicated Property.

17.

Sheriff Prator has no knowledge of any leasing activity by the Commission relating to any Adjudicated Property.

18.

If the Commission leased any of the Adjudicated Property and received bonuses, royalties or other income as a result of such leasing, Sheriff Prator was unaware of such activity and, in any event, had no obligation to collect any taxes or other payments due on the Adjudicated Property when such leases were made.

19.

Sheriff Prator is a "person interested," under La. C.C.P. Art. 1872 and, as such, seeks a declaratory judgment of this court that:

a.    After issuing the tax sales certificate for the Adjudicated Property, as authorized and directed by La. R.S. 2196, he had no duty to the Commission or any other person to

file suit in the district court to obtain possession for the Commission of the

Adjudicated Property;

b.   He had no duty to the Commission or any other person to lease the Adjudicated

Property to anyone unless, and until, the Commission asked him to do so;

c.   He had no duty to attempt to obtain from the Commission, on behalf of the plaintiffs,

the proceeds of any lease of the Adjudicated Property made by the Commission

SHERIFF PRATOR FURTHER PRAYS for all general, necessary and equitable relief.

Respectfully submitted,

WIENER, WEISS & MADISON
A PROFESSIONAL CORPORATION

By: _____
        John M. Madison, Jr.   8836
        Charles E. Tabor         31984
        Reid A. Jones            34611
        2350 Regions Tower, 333 Texas Street
        P.O. Box 21990
        Shreveport, Louisiana 71120-1990
        Telephone: 318 226-9100
        Facsimile: 318 424-5128

        ATTORNEYS FOR STEVE PRATOR

PLEASE SERVE:
RED SOX INVESTMENTS, LLC and PLAINTIFF CLASS,
as described in the captioned petition through
Byron A. Richie
Richie, Richie & Oberle
1800 Creswell Avenue
Shreveport, Louisiana 71101

## CERTIFICATE

I hereby certify that a copy of the foregoing was this day served on the following, by placing

a copy of same in the United States Mail, properly addressed and with proper postage affixed.

| | |
|---|---|
| Byron A. Richie<br>Richie, Richie & Oberle, LLC<br>P.O. Box 44065<br>Shreveport, Louisiana 71101 | Michael H. Wainright<br>97 Country Club Circle<br>Brevard, North Carolina 28712 |
| Richard E. Hiller<br>401 Edwards Street, Ste. 1300<br>Shreveport, Louisiana 71101 | Edwin H. Byrd, III<br>Pettiette, Armand, Dunkleman, Woodley,<br>Byrd & Cromwell<br>P.O. Box 1786<br>Shreveport, Louisiana 71166 |
| Leland Horton<br>Bradley, Murchison, Kelly & Shea<br>401 Edwards Street, Suite 1000<br>Shreveport, Louisiana 71101 | |

Shreveport, Louisiana, this **30** day of June, 2014.

_____
John M. Madison, Jr.

SCAN0703-2014000000168

RED SOX INVESTMENTS, LLC,                NUMBER: 576,478-C
ET AL

VERSUS                                   FIRST  JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT, ET AL                CADDO PARISH, LOUISIANA

### ORDER

The foregoing considered, Steve Prator, Sheriff of Caddo Parish, Louisiana, be, and he is hereby, authorized to intervene in this matter and file his Petition for Declaratory Judgment submitted with his motion.

Shreveport, Caddo Parish, Louisiana this 30 day of June, 2014.

_____
District Judge

WIENER, WEISS & MADISON
A Professional Corporation

ATTORNEYS AT LAW
333 TEXAS STREET, SUITE 2350
SHREVEPORT, LOUISIANA 71101

U.S. Mail Address:
P. O. BOX 21990
SHREVEPORT, LOUISIANA 71120-1990

JOHN M. MADISON Jr.
jmmadison@wwmlaw.com
Direct Dial No.(318) 213-9242
www.wwmlaw.com

Telephone (318) 226-9100 Ext.242
Telecopier (318) 424-5128

File No.  4409-37

June 30, 2014

Gary Loftin, Clerk of Court
Caddo Parish Courthouse
501 Texas Street
Shreveport, Louisiana 71101

Re:   Red Sox Investments, LLC v. City of Shreveport, et al, Number
      576,478-C, First Judicial District Court, Caddo Parish, Louisiana

Dear Mr. Loftin:

Please file the enclosed Motion to Intervene and present it and the attached
order to the court for consideration and signature.

After the court has signed the order of intervention, please file the enclosed
Petition for Declaratory Judgment and serve it on plaintiffs, as shown on the
last page of the petition.

Our check is enclosed to cover the cost of this service.

Should you have any questions or need anything further, please let us know.

Yours very truly,

WIENER, WEISS & MADISON

By: _____
     John M. Madison, Jr.

JMMjr/klb
Enclosures
Cc:   Byron Richie (w/encs)
      Edwin Byrd, III (w/encs)
      Sheriff Steve Prator (w/encs)

## *Citation*

```
RED SOX INVESTMENTS LLC   ETAL          NO. 576478-C
                                        STATE OF LOUISIANA
        VERSUS                          PARISH OF CADDO
                                        FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA   ETAL
```

THE STATE OF LOUISIANA:  TO **RED SOX INVESTMENTS, LLC, ETAL**
**THRU BYRON RICHIE, ATTORNEY**
**1800 CRESWELL AVE**
**SHREVEPORT, LA  71101**

                    of the Parish of CADDO

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition.*  The
petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within FIFTEEN (15) days
after you have received these documents, you must file an answer or other
legal pleadings in the Office of the Clerk of this Court at the Caddo
Parish Court House, 501 Texas Street, Room 103, Shreveport, Louisiana.

If you do not do what the petition asks, or if you do not file an answer
or legal pleading within FIFTEEN (15) days, a judgment may be entered
against you without further notice.

This Citation was issued by the Clerk of Court for Caddo Parish, on this
date July 02, 2014.

```
*Also attached are the following:       GARY LOFTIN, CLERK OF COURT
__ REQUEST FOR ADMISSIONS OF FACTS      MIKE SPENCE, CHIEF DEPUTY
__ INTERROGATORIES
__ REQUEST FOR PRODUCTION OF DOCUMENTS   By:_____
XX MOTION TO INTERVENE AND PETITION                 Deputy Clerk
   FOR DECLARATORY JUDGMENT

                                        JOHN M MADISON JR_____
                                               Attorney
```

SCAN07032014000000171

# FILE COPY

C _ _ _ _ ion

td

RED SOX INVESTMENTS LLC  ETAL        NO. 576478-C
                                     STATE OF LOUISIANA
      VERSUS                         PARISH OF CADDO
                                     FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO  **RED SOX INVESTMENTS, LLC, ETAL**
                             **THRU BYRON RICHIE, ATTORNEY**
                             **1800 CRESWELL AVE**
                             **SHREVEPORT, LA  71101**

                  of the Parish of CADDO

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition.*  The
petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within FIFTEEN (15) days
after you have received these documents, you must file an answer or other
legal pleadings in the Office of the Clerk of this Court at the Caddo
Parish Court House, 501 Texas Street, Room 103, Shreveport, Louisiana.

If you do not do what the petition asks, or if you do not file an answer
or legal pleading within FIFTEEN (15) days, a judgment may be entered
against you without further notice.

This Citation was issued by the Clerk of Court for Caddo Parish, on this
date July 02, 2014.

*Also attached are the following:      GARY LOFTIN, CLERK OF COURT
__ REQUEST FOR ADMISSIONS OF FACTS      MIKE SPENCE, CHIEF DEPUTY
   INTERROGATORIES
__ REQUEST FOR PRODUCTION OF DOCUMENTS  By: _____
XX MOTION TO INTERVENE AND PETITION             Deputy Clerk
   FOR DECLARATORY JUDGMENT

                                       JOHN M MADISON JR
                                       _____
                                               Attorney
-------------------------------------------------------------------
SERVICE INFORMATION:            Date  7-7-14

Personal  ✓   Domiciliary ____  to  Red Sox Investments Thru

Unserved ____  because  ____Byron Richie_____

Remarks _____

          Val Campbell                    **FILED**
          _____       SHERIFF RETURN
            Deputy Sheriff
                                          JUL 0 8 2014

                                            GARY LOFTIN
                                          _____
                                           CLERK OF COURT

SCAN07082014000000069

[barcode]

2014 JUL  3  AM 10 31
SHERIFF'S OFFICE
CADDO PARISH

093432

Street Address: 1800 Creswell Avenue, Shreveport, Louisiana 71101

Mailing Address: P. O. Box 44065, Shreveport, Louisiana, 71134

Telephone: 318-222-8305;   FAX: 318-227-8311

**RICHIE, RICHIE & OBERLE**
**Attorneys-at-Law**

576,478



| To: | Caddo Parish Clerk of Court | From: | Paul D. Oberle, Jr. |
|---|---|---|---|
| Fax: | 227-9080 | Pages: | 2 |
| CC: | Honorable Mike Pitman<br>Jerald Perlman<br>Leland G. Horton | Date: | 7/9/2014 |
| Fax: | 226-6840<br>226-0390<br>227-1141 | Re: | Class Action Suit<br>City of Shreveport and Caddo Parish<br>Our file: 1.7900 |

☐ Urgent    X For Review    ☐ Please Comment    ☐ Please Reply    ☐ Original Mailed

● Comments:

This is a confidential communication and is not to be delivered to or read by any person other than the addressee. The facsimile transmission of the information contained herein and in the documents transmitted herewith is not intended as a waiver of the attorney-client privilege or any other privilege.  If this transmission is received by anyone other than the addressee, the recipient is requested to call RICHIE, RICHIE & OBERLE, L.L.P. collect at (318) 222-8305, and to immediately return the documents transmitted, to RICHIE, RICHIE & OBERLE, L.L.P., P. O. Box 44056, Shreveport, Louisiana, 71134, by United States mail. We guarantee return postage.

SCAN07192014000000101

**FILED**

PGS _____ EXH ___2___ MIN _____
CC _____ CP _____ MAIL _____ N/J _____
INDEX _____ REC _____ FAX _____
W/D DOC _____ CERT MAIL _____
SERVICE _____

JUL 0 9 2014
*Tara Estein*
TARA ESTEIN
DEPUTY CLERK OF COURT
CADDO PARISH

Jul. 9. 2014 2:42PM                    No. 0656   P. 2/2

# RICHIE, RICHIE & OBERLE, L.L.P.
## ATTORNEYS AT LAW

C. Vernon Richie, J.D.
Byron A. Richie, J.D.
Paul D. Oberle, Jr., J.D., LL.M.*

*Also Admitted in Texas

Laurel Fleming Richie, J.D.
Margaret Richie Gaskins, J.D., D.C.L.
John A. Richie, J.D. (2002)

TIN: 72-0747703

July 8, 2014

**_VIA FACSIMILE & REGULAR MAIL_**
Clerk of Court
Caddo Parish
1st Judicial District Court
501 Texas Street, Room 103
Shreveport, Louisiana 71101

Re:    Red Sox Investments, LLC, et al vs.
       vs. City of Shreveport, et al
       Suit No. 576,478
       Our File No: 1.7900

Gentleman:

The above referenced matter is currently scheduled for a Rule to Show Cause hearing on the Preliminary Injunction filed by the plaintiffs which is currently scheduled for July 14, 2014 at 9:30 AM. By agreement of all parties, we request that the hearing be passed without date.

If you need anything further, please feel free to call.

Yours truly,

RICHIE, RICHIE, & OBERLE, LLP

BY: _____
        PAUL D. OBERLE, JR.

PDO/jlc

cc:    All Counsel (via facsimile & regular mail)
       Honorable Mike Pitman (via facsimile & regular mail)
       Michael Wainwright (via regular mail)

# RICHIE, RICHIE & OBERLE, L.L.P.
## ATTORNEYS AT LAW

C. Vernon Richie, J.D.
Byron A. Richie, J.D.*
Paul D. Oberle, Jr., J.D., LL.M.*

Laurel Fleming Richie, J.D.
Margaret Richie Gaskins, J.D., D.C.L.
John A. Richie, J.D. (2002)

TIN: 72-0747703

*Also Admitted in Texas

July 8, 2014

**_VIA FACSIMILE & REGULAR MAIL_**
Clerk of Court
Caddo Parish
1st Judicial District Court
501 Texas Street, Room 103
Shreveport, Louisiana 71101

Re:   Red Sox Investments, LLC, et al vs.
      vs. City of Shreveport, et al
      Suit No. 576,478
      Our File No: 1.7900

Gentleman:

The above referenced matter is currently scheduled for a Rule to Show Cause hearing on the Preliminary Injunction filed by the plaintiffs which is currently scheduled for July 14, 2014 at 9:30 AM.  By agreement of all parties, we request that the hearing be passed without date.

If you need anything further, please feel free to call.

Yours truly,

RICHIE, RICHIE, & OBERLE, LLP

BY: _____
        PAUL D. OBERLE, JR.

PDO/jlc

cc:   All Counsel (via facsimile & regular mail)
      Honorable Mike Pitman (via facsimile & regular mail)
      Michael Wainwright (via regular mail)

PGS ____ EXH ____ MIN ____
CC ____ CP ____ MAIL ____ N/J ____
INDEX ____ REC ____ FAX ✓
W/D DOC ____ CERT MAIL ____
SERVICE ____

FILED
JUL 09 2014
TORI HAYES
DEPUTY CLERK OF COURT

---

1800 Creswell Avenue • P.O. Box 44065
Shreveport, Louisiana 71134

(P) 318.222.8305 • (F) 318.227.8311
www.richierichieoberle.com

Street Address: 1800 Creswell Avenue, Shreveport, Louisiana 71101

Mailing Address: P. O. Box 44065, Shreveport, Louisiana, 71134

Telephone: 318-222-8305;  FAX: 318-227-8311

**RICHIE, RICHIE & OBERLE**
**Attorneys-at-Law**

# Fax

| | | | |
|---|---|---|---|
| **To:** | Caddo Parish Clerk of Court | **From:** | Paul D. Oberle, Jr. |
| **Fax:** | 227–9080 | **Pages:** | 2 |
| **CC:** | Honorable Mike Pitman<br>Jerald Perlman<br>Leland G. Horton | **Date:** | 7/9/2014 |
| **Fax:** | 226-6840<br>226-0390<br>227-1141 | **Re:** | Class Action Suit<br>City of Shreveport and Caddo Parish<br>Our file: 1.7900 |

☐ Urgent     X For Review     ☐ Please Comment     ☐ Please Reply     ☐ Original Mailed

● Comments:

This is a confidential communication and is not to be delivered to or read by any person other than the addressee. The facsimile transmission of the information contained herein and in the documents transmitted herewith is not intended as a waiver of the attorney-client privilege or any other privilege. If this transmission is received by anyone other than the addressee, the recipient is requested to call RICHIE, RICHIE & OBERLE, L.L.P. collect at (318) 222-8305, and to immediately return the documents transmitted, to RICHIE, RICHIE & OBERLE, L.L.P., P. O. Box 44056, Shreveport, Louisiana, 71134, by United States mail. We guarantee return postage.

SCAN0710201400000099

## RICHIE, RICHIE & OBERLE, L.L.P.
### ATTORNEYS AT LAW

C. Vernon Richie, J.D.
Byron A. Richie, J.D.
Paul D. Oberle, Jr., J.D., LL.M.*

*Also Admitted in Texas

Laurel Fleming Richie, J.D.
Margaret Richie Gaskins, J.D., D.C.L.
John A. Richie, J.D. (2002)

TIN: 72-0747703

July 8, 2014

***VIA FACSIMILE & REGULAR MAIL***
Clerk of Court
Caddo Parish
1st Judicial District Court
501 Texas Street, Room 103
Shreveport, Louisiana 71101

Re:   Red Sox Investments, LLC, et al vs.
      vs. City of Shreveport, et al
      Suit No. 576,478
      Our File No: 1.7900

Gentleman:

The above referenced matter is currently scheduled for a Rule to Show Cause hearing on the Preliminary Injunction filed by the plaintiffs which is currently scheduled for July 14, 2014 at 9:30 AM.  By agreement of all parties, we request that the hearing be passed without date.

If you need anything further, please feel free to call.

Yours truly,

RICHIE, RICHIE, & OBERLE, LLP

BY: _____
       PAUL D. OBERLE, JR.

PGS _____ EXH _____ MIN _____
CC _____ CP _____ MAIL _____ N/J _____
INDEX _____ REC _____ FAX _____
W/D DOC _____ CERT MAIL _____
SERVICE _____

**FILED**

PDO/jlc

cc:   All Counsel (via facsimile & regular mail)
      Honorable Mike Pitman (via facsimile & regular mail)
      Michael Wainwright (via regular mail)

JUL 1 4 2014
TARA ESTER
DEPUTY CLERK OF COURT
CADDO PARISH

1800 Creswell Avenue • P.O. Box 44065
Shreveport, Louisiana 71134

(P) 318.222.8305 • (F) 318.227.8311
www.richierichieoberle.com

## RICHIE, RICHIE & OBERLE, L.L.P.
### ATTORNEYS AT LAW

C. Vernon Richie, J.D.
Byron A. Richie, J.D.
Paul D. Oberle, Jr., J.D., LL.M.*

Laurel Fleming Richie, J.D.
Margaret Richie Gaskins, J.D., D.C.L.
John A. Richie, J.D. (2002)

*Also Admitted in Texas

TIN: 72-0747703

July 8, 2014

**VIA FACSIMILE & REGULAR MAIL**
Clerk of Court
Caddo Parish
1st Judicial District Court
501 Texas Street, Room 103
Shreveport, Louisiana 71101

Re:   Red Sox Investments, LLC, et al vs.
      vs. City of Shreveport, et al
      Suit No. 576,478
      Our File No: 1.7900

Gentleman:

The above referenced matter is currently scheduled for a Rule to Show Cause hearing on the Preliminary Injunction filed by the plaintiffs which is currently scheduled for July 14, 2014 at 9:30 AM. By agreement of all parties, we request that the hearing be passed without date.

If you need anything further, please feel free to call.

Yours truly,

RICHIE, RICHIE, & OBERLE, LLP

BY: _____
         PAUL D. OBERLE, JR.

PDO/jlc

cc:   All Counsel (via facsimile & regular mail)
      Honorable Mike Pitman (via facsimile & regular mail)
      Michael Wainwright (via regular mail)

PGS /
CC ____ CP ____ EXH ____ MAIL ____ MIN ____
INDEX ____ REC ____ N/J ____
W/D DOC ____ CERT MAIL ____ FAX ____
SERVICE ____

$ _____ **FILED**

JUL 1 0 2014

GARY ROBERSON
CADDO DEPUTY CLERK OF COURT

1800 Creswell Avenue • P.O. Box 44065
Shreveport, Louisiana 71134

{P} 318.222.8305 • {F} 318.227.8311
www.richierichieoberle.com

RED SOX INVESTMENTS, L.L.C., ET AL    NO. 576,478 — C

VS.                    FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT,         CADDO PARISH, LOUISIANA
LOUISIANA and CADDO PARISH
LOUISIANA

## PEREMPTORY AND DILATORY EXCEPTIONS

CADDO PARISH, LOUISIANA ("the Parish") hereby excepts to the suit and petition filed by Plaintiff, RED SOX INVESTMENTS, L.L.C., ON BEHALF OF ITSELF AND A CLASS OF SIMILARLY SITUATED PROPERTY OWNERS, ("Red Sox") and responds to the petition as follows, reserving all rights to file additional responses by way of motions, exceptions, or answers:

1.

Red Sox alleges that Caddo Parish converted funds and property owed to Red Sox (or for its benefit) by failing to follow proper procedures with respect to granting, managing, and handling certain mineral leases and funds received thereon, where such mineral leases were granted on properties alleged to have been adjudicated to, and held by, the Parish in connection with a prior failure of the record owners thereof to pay taxes as required by law.

2.

Many of the allegations made in the Petition are very general in nature, particularly those related to an alleged class of hundreds of similarly situated persons with purportedly similar claims.

3.

All such claims fail and should be dismissed at this stage based on peremptory and dilatory grounds, as asserted in more detail below.

**I.   No Right of Action for Red Sox**

4.

The Parish asserts the peremptory exception of No Right of Action pursuant to Louisiana Civil Code article 927.

PGS 21  EXH 1  MIN ✓
CC ____ CP ____ MAIL ____ N/J ____
INDEX ____ REC ____ FAX ____
W/D DOC ____ CERT MAIL ____
SERVICE ____

$134.00  FILED

JUL 03 2014

E. G. BRUMLEY
CADDO DEPUTY CLERK OF COURT

1

5.

Red Sox relies entirely on certain misconstrued and misinterpreted language contained in Louisiana Revised Statute 47:2233 and related statutes to allege that the proceeds of certain identified and unidentified mineral leases should have been applied to the taxes previously owed on all related properties adjudicated to the Parish.

6.

However, Red Sox is not among the persons or types of persons granted a right of action for the alleged actions by the Parish or the City.  Its reliance on Louisiana Revised Statute 47:2233 ("R.S. 47:2233") is unfounded.

7.

Red Sox is not a tax debtor or other party granted rights or the basis for a right of action under R.S. 47:2233, particularly as contemplated and defined in Revised Statutes 47:2231 *et seq.* and 47:2242 in particular.

II.     **Failure to State a Claim Upon Which Relief May be Granted**

8.

The Parish further asserts the peremptory exception of failure to state a claim upon which relief may be granted pursuant to Louisiana Civil Code article 927.

9.

Red Sox's claims rely entirely upon its assertion that R.S. 47:2233 requires the Parish to (i) apply all proceeds received on mineral leases executed by the Parish to any taxes previously owed on adjudicated properties affected by such mineral leases and (ii) later redeem those properties of its own accord on account of such payments, if they fully satisfy the previously outstanding taxes.

10.

However, R.S. 47:2233 does not apply to mineral leases, by its very nature.  R.S. 47:2233 applies only to traditional leases of buildings or the surface of the property.  A mineral lease is an entirely different thing under the law, with very different effects that are governed by the Mineral Code.  In fact, the Mineral Code and the Public Records Doctrine address how such mineral leases are to be handled where there remains a right to redeem the property, if there are any effects at all.

2

11.

Red Sox does not allege that there have been any surface leases granted, maintained, or administered by the Parish in violation of the referenced statutory provisions – only mineral leases.

12.

Additionally, the strange, hybrid remedies sought by Red Sox do not exist under the statutes at issue.

**III.    Improper Cumulation of Parties and Claims**

13.

The Parish further asserts the dilatory exception of improper cumulation of parties and claims pursuant to Louisiana Civil Code article 926.

14.

However, Red Sox fails to establish that any other of the hundreds of alleged plaintiffs exist, or have claims sufficiently similar to those raised by Red Sox.

15.

In particular, Red Sox itself acquired the specific properties at issue through tax sales and quitclaim deeds.  As such, Red Sox does not have claim to the same rights and remedies as any parties who acquired or lost their alleged rights in different ways (particularly where such parties were the original tax debtor).

16.

There are simply too many potential differences between the alleged, and currently fictitious, additional plaintiffs for them to be lumped together in a single lawsuit.

WHEREFORE, Exceptor, CADDO PARISH LOUISIANA, prays that this Court dismiss the claims asserted by Plaintiff, RED SOX INVESTMENTS, LLC, with prejudice and at its costs for lack of any Right of Action, lack of any Cause of Action, and Improper Cumulation of Actions and Parties.

3

The Parish further prays for all other such orders and decrees necessary or warranted on the premises, and for all available full, general, and equitable relief.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: _____
       Leland G. Horton (Bar Roll No. 26928)

       401 Edwards Street, Suite 1000
       Shreveport, Louisiana 71101
       Telephone: (318) 227-1131
       Facsimile:  (318) 227-1141

--   Attorneys for CADDO PARISH, LOUISIANA

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing *Memorandum in Support of the Peremptory Exceptions of No Right of Action, No Cause of Action, and Prescription* has this day been served by United States mail, postage prepaid and properly addressed, upon all counsel of record.

Shreveport, Louisiana, this 2d day of _____ July _____ 2014.

_____
OF COUNSEL

5

RED SOX INVESTMENTS, L.L.C., ET AL  NO. 576,478

VS.        FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT,    CADDO PARISH, LOUISIANA
LOUISIANA and CADDO PARISH
LOUISIANA

### <u>MEMORANDUM IN SUPPORT OF PEREMPTORY AND DILATORY EXCEPTIONS</u>

  CADDO PARISH, LOUISIANA (the "Parish") files this Memorandum to support its

peremptory and dilatory exceptions, and respectfully represents as follows:

<u>I.  Summary of Issues and Relief Requested</u>

  The claims asserted by Red Sox Investments, L.L.C. ("Red Sox") should be dismissed

with prejudice because they are not properly raised against the Parish, and Red Sox does not

have the right to pursue any such claims.  In any event, Red Sox and all similarly situated parties

have a more appropriate solution not addressed at all in this lawsuit – they can redeem the

property and, if necessary, ask for a determination as to what rights remain under the mineral

leases.  That becomes an issue between Red Sox and the lessees and well operators, and need not

involve the Parish or the City of Shreveport.

  Red Sox claims that the Parish converted funds owed to Red Sox (or for its benefit) by

failing to follow particular procedures alleged to apply with respect to granting, managing, and

handling certain mineral leases and funds received thereon.  Purportedly, the Parish should have

applied all proceeds of such mineral leases against the outstanding taxes for properties

previously owned by Red Sox – even where the initial redemption period had passed and the

Parish did nothing but lease its own inchoate rights in the property.  However, the law does not

work that way with respect to mineral leases and the circumstances of this case.

  First and foremost, no cause of action has been properly raised.  The tax statutes relied

upon by Red Sox do not apply to mineral leases, only to surface leases.  Mineral leases are

entirely different things, which are governed by the Mineral Code.  Applying the implicated tax

statutes to mineral leases as demanded by Red Sox would create impermissible conflicts with the

Mineral Code.  To the extent Red Sox has (or ever had) any remaining rights against the Parish,

$_____ FILED

JUL 0 3 2014

_____
E. G. BRUMLEY
CADDO DEPUTY CLERK OF COURT

1

1855109-1

those rights are governed by the Mineral Code and the Public Records Doctrine – and create no cause or right of action as advanced in this case.[1] All the Parish did was lease its own inchoate rights in the property, and not assume management of any rights remaining for Red Sox.  No statutory obligations were triggered as claimed.

In any event, Red Sox is simply not the right party to assert the claims made in the Petition.  The personal and substantive rights claimed by Red Sox would be available only to the original tax debtor, and not to a subsequent claimant like Red Sox – which acquired its own rights, if any exist, by quitclaim deed and through a tax sale.[2] For these reasons, Red Sox is also attempting to improperly cumulate actions and plaintiffs.  Red Sox is simply not the right party to raise these claims or try and represent the alleged hundreds of similarly situated persons.

For these reasons, it would be unnecessary and wasteful of the Court's resources to go any further in this case.  The claims should be dismissed.

## II.    Relevant Facts and Procedural Background

Red Sox filed this action individually and purportedly on behalf of a proposed class of "similarly situated property owners" who "own or owned property in the City of Shreveport and/or Parish of Caddo and failed to pay ad valorem taxes on the property."[3] As a result of that failure to pay property taxes, the properties at issue were offered at tax sales and ultimately adjudicated to the City or the Parish.[4] The tax adjudications at issue are not identified with specificity, but could range over many years.

Red Sox alleges that the adjudicated properties remained in possession of the City or the Parish during and beyond the initial redemption period and were later included in various mineral leases facilitated by the State and executed during and after 2009 (the "Mineral Leases"). Red Sox further alleges that (i) the City and the Parish were required to take certain steps to gain formal and legal possession of the adjudicated property before executing the Mineral Leases, (ii) the City and the Parish were required to apply all proceeds generated from the Mineral Leases on

---

[1] Judge Crichton has already reviewed this same issue in a case pending in the First Judicial District, and concluded that a party in Red Sox's situation has no cause of action.

[2] Red Sox acquired its rights through quitclaim deeds that transferred nothing more than possibly the right to redeem the property under certain specific circumstances.  Red Sox's quitclaim sellers acquired the property via tax sales, and did not transfer any personal rights against the Parish other than possibly the right of redemption, because they did not, and could not, purport to have or transfer any other rights against the Parish.

[3] Plaintiffs' Original Petition, ¶ 2.

[4] *Id.*

the adjudicated property towards satisfaction of delinquent taxes for such tracts, and (iii) the Parish was ultimately required to issue a certificate of redemption in favor of the delinquent taxpayer when Mineral Lease proceeds attributable to each adjudicated property fully satisfied the delinquent tax debt and all related fees for each such tract.[5]  Red Sox asserts, then, that the Parish has failed to comply with these statutory mandates and, as a result, various delinquent taxpayers have been illegally deprived of their property.  The Parish and the City disagree with those allegations.

Notably, Red Sox does not claim that the Mineral Leases are null and void, or that the Mineral Leases terminate upon any redemption.  Red Sox also does not allege to have itself redeemed the claimed properties, or thereby claim ownership free and clear of any Mineral Leases.  Rather, Red Sox argues that the rights and benefits of the Mineral Leases somehow automatically pass through to Red Sox and other similarly situated claimants (before and after redemption).  That is not the law.

Red Sox claims a specific interest in this litigation by virtue of its "ownership" of three individual parcels of property (hereinafter collectively referred to as the "Red Sox Properties") that were allegedly seized and sold or otherwise adjudicated by the City or the Parish.[6]  The Red Sox Properties are more specifically described in the Petition as:

1.  Lot Six (6), HAPPY TRAILS SUBDIVISION, a subdivision of Caddo Parish Louisiana, as per plat recorded in Book 2050, Page 49, of the Conveyance Records of Caddo Parish, Louisiana, containing a total of 0.57 acres, more or less, together with all buildings and improvements thereon (Property #1).[7]

2.  Lot 28, AUDUBON MEADOW SUBDIVISION, Unit No. 2, a subdivision in Caddo Parish, Louisiana, as per plat recorded in Book 2050, Page 167 of the Conveyance Records of Caddo Parish, Louisiana, containing a total of 0.15 acres, more or less, together with all improvements thereon (Property #2).[8]

3.  Lot 29, AUDUBON MEADOW SUBDIVISION, Unit No. 2, a subdivision in Caddo Parish, Louisiana, as per plat recorded in Book 2050, Page 167 of the Conveyance Records of Caddo Parish, Louisiana, containing a total of 0.17 acres, more or less, together with all improvements thereon (Property #3).[9]

---

[5] *See id.* at ¶¶ 2, 8, 10, 17, 18.

[6] *Id.* at ¶¶ 71, 85.

[7] *Id.* at ¶ 71.

[8] *Id.* at ¶ 85(a).

[9] *Id.* at ¶ 85(b).

Red Sox acquired its purported interest in Property #1 via a Quitclaim Deed from John W. Johnston L.L.C. dated October 10, 2003.[10] John W. Johnson, individually, acquired the property from a Caddo Parish Tax Sale on May 6, 1987.[11] On June 14, 1991 Property #1 was seized for unpaid taxes from the year 1990 and adjudicated to the Parish in the name of John W. Johnston.[12] Mr. Johnston transferred whatever interest he had in the property to John W. Johnston, L.L.C. on November 6, 2002.[13] The LLC transferred its interest in the property to Red Sox via Quitclaim Deed more than 12 years after the property had been adjudicated to the Parish.

Red Sox acquired its alleged interest in Property #2 and Property #3 via two (2) Quitclaim Deeds, the first from John W. Johnston dated October 10, 2003, and the second from Sapphire Land Company, L.L.C. dated October 12, 2010.[14] As with Property #1, Mary E. Johnston, wife of John W. Johnston, purchased Property #2 and Property #3 at a Caddo Parish Tax Sale held on May 6, 1987.[15] These properties were seized and adjudicated to the Parish for unpaid taxes on June 14, 1991.[16] By deed recorded November 6, 2002, Mary E. Johnston and John W. Johnston conveyed Property #2 and Property #3 to John W. Johnston, L.L.C.[17] By Quitclaim Deed recorded August 17, 2010, Red Sox acquired whatever, if any, interest that the John W. Johnston L.L.C. held in Property #2 and Property #3.[18] By Quitclaim Deed recorded October 12, 2010, Red Sox acquired whatever interest, if any, that Sapphire Land Company, L.L.C. had in Property #2 and Property #3 by virtue of an attempted conveyance from Audubon Meadow Partnership.[19]

By these various Quitclaim Deeds, Red Sox purportedly obtained some tenuous interest in the above-described properties <u>years after</u> these properties had been adjudicated to the Parish

---

[10] *Id.* at ¶ 72(c).
[11] *Id.* at ¶ 72(a).
[12] *Id.* at ¶ 73.
[13] *Id.* at ¶ 72.
[14] *Id.* at ¶ 86.
[15] *Id.*
[16] *Id.* at ¶¶ 87, 90 (the properties were also seized and adjudicated to the City of Shreveport on July 11, 1991. *Id.* at ¶¶ 88, 91).
[17] *Id.* at ¶ 86(c).
[18] *Id.* at ¶ 86(d).
[19] *Id.* at ¶ 86.

4

or City due to delinquent taxes.[20]  Nevertheless, Red Sox filed this lawsuit on May 1, 2014 seeking injunctive relief, an accounting, and damages for the Parish's alleged failure to comply with the Louisiana Adjudicated Property Law, specifically Louisiana Revised Statute 47:2233. Red Sox also seeks to have this suit certified as a class action on behalf of hundreds of purported delinquent taxpayers whose property was allegedly adjudicated to the City and/or Parish and included in one of numerous oil and gas leases executed by the taxing entities in favor of various operators.  Class certification has not yet been granted.

## III.  Law and Argument on Exceptions

Based on those facts, the claims by Red Sox should be dismissed for the reasons set forth below.

### A.  No Cause of Action

Red Sox fails to state a cause of action on which relief can be granted because no rights or remedies are available as pled.[21]  The exception of no cause of action is a peremptory exception used to test the legal sufficiency of the petition by determining whether the plaintiff can be afforded any remedy in law based on the facts alleged in the pleadings.[22]  The function of a peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law.[23]  In this case, the statutes relied upon by Red Sox do not apply to Mineral Leases, leaving no remedy as claimed.

#### 1.  The Parish Merely Leased its Own Inchoate Rights in the Property

What happened here is that the Parish held an inchoate right in the properties at issue, due to the tax adjudications in favor of the Parish.[24]  That inchoate right itself is a sufficient basis for the Parish to enter into a mineral lease in its own name, and not on behalf of the underlying tax debtor or as a manager of the property.  As such, the Parish can lease its own rights in the property for mineral development, for so long as they last, and is not required to undertake management of the property for another.

---

[20] *Id.* at ¶¶ 72, 73, 85, 86.
[21] *Thornton v. Carthon,* 47,948 (La. App. 2 Cir. 5/15/13), 114 So. 3d 554, 561, *writ denied,* 13-1785 (La. 11/1/13), 125 So. 3d 435.
[22] *Id.*
[23] La. Code Civ. Proc. art. 923.
[24] *Wells v. Joseph,* 95 So. 2d 843, 845-47 (La. App. 2d Cir. 1957), *aff'd,* 234 La. 780, 101 So. 2d 667 (1958).

What the Parish accomplished was only a lease of what rights it held in the property – and not a lease of any rights held through or retained by Red Sox (which is a critical difference between a mineral lease and a surface lease). The Mineral Leases were made with no warranties and only with respect to any rights held by the Parish – whatever those rights may have encompassed at the time. As such, the Mineral Leases were granted with no recourse against the Parish for any failure of title or redemption by the former tax debtor. One of the hallmarks of a surface lease is the warranty of peaceable possession – which was expressly not made in this instance or with many "non-warranty" mineral leases.

Moreover, the landowner can still redeem the property, if it has such a right, and assert then whatever rights remain or accrue in its favor at that time. That is made even clearer by the relevant provisions in the Louisiana Mineral Code.

Under the Mineral Code, the remedy available to the tax debtor remains redemption by payment of the amounts and fees owed and possibly the termination of any conditional mineral leases. Upon such redemption, the tax debtor reclaims ownership of the property. The extent to which any mineral lease granted by the Parish remains in place after such redemption is dependant upon a variety of factors under the Mineral Code and the Public Records Doctrine. But, in no case is the Parish liable for repayment of any proceeds of the Mineral Leases. The Parish was merely leasing its own inchoate mineral rights, and not undertaking any management of the property – as might be the case with a surface lease (which requires the Parish to physically take possession of the property, unlike with these Mineral Leases).

### 2. Louisiana Revised Statute 47:2233 Does Not Apply to Mineral Leases

Red Sox's entire case is based on Louisiana Revised Statutes 47:2231 – 2234, which it cites in support of the proposition that all revenues generated from mineral leases covering adjudicated properties must be applied to the delinquent tax debt secured by the property. That is not a correct statement of the law.

### a. The clear wording of Revised Statutes 42:2231–34 indicates that they are only intended to apply to surface leases.

The provisions at issue provide (emphasis added):

> § 47:2231, Suit to obtain possession of property adjudicated to political subdivision: After the tax sale certificate for adjudicated

6

property is filed with the recorder of conveyances, the political subdivision may institute a suit in the district court of the parish in which the property is located to obtain possession of the adjudicated property. The suit shall be tried by summary proceeding and shall be prosecuted without costs of court to the political subdivision. Whenever revenue is received from the adjudicated property as provided in this Subpart, the political subdivision shall pay the court costs out of the first revenue received.[25]

§ 47:2232, Order of seizure and possession: Upon the presentation of a certified copy of the tax sale certificate, after ten days' notice to the owner and proper hearing, the judge shall grant an order of possession commanding the sheriff to place the political subdivision in actual possession of the adjudicated property.[26]

§ 47:2233, Leasing adjudicated property; use of income to pay taxes or assessments: The political subdivision, through its tax collector, upon taking or being placed in possession by judgment of court may, without the necessity of public letting, lease the adjudicated property on commercially reasonable terms and collect rentals. The political subdivision shall apply the rentals first to the payment of all costs of court incurred in the proceeding. Thereafter, all rental income shall be applied against any taxes, charges imposed pursuant to R.S. 33:1236, or paving or other local improvement assessments due against the property. When all of the obligations have been paid in full, the political subdivision shall issue a proper certificate of redemption and surrender its possession of the property.[27]

§ 47:2234, Redemption of property, payment of assessments: Whenever any property has been adjudicated to a political subdivision for the full amount of the past and future installments of paving or other local improvement assessments, the owner of the property may be permitted, upon written request, to redeem the property by paying the past due and current installments only, together with interest, costs, and penalties. In this event, the remaining and future installments of the charges shall be collected as they fall due, and the lien shall remain unaffected and shall be valid and effective against the property until fully paid.[28]

Red Sox's reliance upon these provisions is misplaced. These sections do not provide requirements for mineral leases. Rather, these provisions provide requirements for the entry into surface leases only, or in other words, the renting of adjudicated surface property. The difference is clear for various reasons, including the fact that these statutes contemplate and require taking possession of the property by the Parish. The inchoate rights of the Parish in and to the minerals can be leased without taking physical possession of the property. The same principles that apply to surface leases simply do not apply to mineral leases.

---

[25] La. Rev. Stat. § 47:2231.
[26] La. Rev. Stat. § 47:2232.
[27] La. Rev. Stat. § 47:2233 (emphasis added).
[28] La. Rev. Stat. § 47:2234.

1855109-1

"The plain meaning of legislation should be conclusive, except in rare cases wherein the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters."[29]  A plain reading of Sections 2231 – 2234 indicates that these provisions address actual possession of the property and the lease of its surface.[30]  As a predicate to "leasing" adjudicated property, the political subdivision must take certain steps to be placed in actual possession of that property.  This is a logical prerequisite for a political subdivision that wishes to rent land and stand in place of a landlord.  Furthermore, the statutes use the term "rentals" as opposed to terms of art such as "royalties," "bonus payments," or "delay rentals," clearly suggesting that the Legislature intended for these provisions to apply to the common rental payment made by a lessee to a lessor.  The Legislature's decision to use the words "rentals" and "rental income" clearly implies the exclusion of terms such as "royalties," "bonus payments," and "delay rentals."[31]

    b.  **The Mineral Leases are governed by the Louisiana Mineral Code, and to the extent the provisions therein are inconsistent with the Louisiana Tax Code, the Mineral Code must apply.**

The Louisiana Mineral Code, Section 31 of the Louisiana Revised Statutes, governs the issuance and maintenance of mineral leases.[32]  The provisions of the Mineral Code are supplementary to those of the Civil Code and are specifically applicable to the subject of mineral law.[33]  In the event of a conflict between the provisions of the Mineral Code and other laws of the state, the provisions of the Mineral Code must prevail.[34]  Under applicable provisions of the Mineral Code, a "mineral lease may be granted by a person having an executive interest in the mineral rights of the leased property."[35]  Such a mineral lease can even be made where the interest is conditional or uncertain, particularly where a "no warranty" lease is used.[36]

---

[29] *Foti v. Holliday*, 09-0093 (La. 10/30/09), 27 So. 3d 813, 822.
[30] *See* La. Rev. Stat. §§ 47:2231-2234.
[31] This is in accordance with the maxim of statutory interpretation, *"expression unius est exclusion alterius,"* or the expression of one thing implies the exclusion of another.  *See Hidalgo v. Wilson Certified Express, Inc.*, 94-1322 (La. App. 1 Cir. 5/14/96), 676 So. 2d 114, 119.
[32] *See generally,* La. Rev. Stat. §§ 31:114-145.
[33] La. Rev. Stat. § 31:2.
[34] *Id.*
[35] La. Rev. Stat. § 31:116.
[36] La. Rev. Stat. § 31:117.

8

There is no requirement that the lessor be placed in actual possession of the property prior to issuing the lease.  That is in direct conflict with the situation contemplated by Revised Statutes 47:2231-2234, which requires that the political subdivision obtain possession of the adjudicated property prior to executing a "lease."  While possession is not a prerequisite for a mineral lease, it is an essential element of a surface lease.[37]

The Mineral Code also specifically states that a person who holds only conditional rights in property can grant a mineral lease.[38]  For example, a governmental entity holding inchoate title to property acquired by tax adjudication can grant a mineral lease on that property – to the extent of its interest and in anticipation of potentially holding a greater interest.

Therefore, Louisiana Revised Statutes 47:2231-2234 cannot be applied as asserted by Red Sox.  Doing so would create an inconsistency between the provisions of the Mineral Code where possession is not a prerequisite to a mineral lease, and the Tax Code where a political subdivision must be placed in actual possession before leasing property.  It would also be inconsistent to allow for conditional leases, but hold the Parish somehow liable as a manager of the minerals for leasing its own inchoate rights.  Statutes should not be interpreted to create inconsistencies.[39]  Accordingly, the application of Revised Statutes 47:2231–2234 must be restricted to a traditional surface lease as contemplated by the Civil Code and should not be expanded to mineral leases granted under the Mineral Code.

Moreover, it is perfectly legal and legitimate for a lessee to enter into a mineral lease and agree to pay an entity like the Parish for whatever rights it might have, with no warranty – such as occurred in this case.  If it turns out the Parish has no rights, or those rights terminate, the lessee may be able to stop making royalty payments.  It is not necessarily the case that the mineral lease somehow transfers to the actual or future owner of the property, particularly where the Parish had only conditional rights in the first place.

In no situation does the City or the Parish have any obligation to pay Red Sox for any royalties or bonuses received on the Mineral Leases.

---

[37] See *Stauffer v. Hartz*, Orleans No. 8043, 4 Pelt. 545, 1920 WL 961 (1920); La. Civ. Code art. 2674; La. Civ. Code art. 2674, Comments (a) – (d).

[38] La. Rev. Stat. § 31:117.

[39] See *Mallard Bay Drilling, Inc. v. Kennedy*, 04-1089 (La. 6/29/05), 914 So. 2d 533, 540 (noting that, where possible, courts have a duty to adopt a statutory construction that harmonizes and reconciles the statute with other provisions and should avoid an interpretation that creates inconsistencies in the law).

9

c. **The application of Revised Statutes 47:2231–2234 to Mineral Leases has already been considered and rejected by the First Judicial District Court of Caddo Parish.**

In an almost identical proceeding before the First Judicial District Court, Suit No. 547,511, one of Red Sox's alleged predecessors in title, Sapphire Land Company, L.L.C., sought a judgment applying Louisiana Revised Statutes 47:2231-2234 to a mineral lease granted by the Parish. In denying Sapphire's Motion for Summary Judgment, Judge Scott Crichton stated:

> By its Motion for Summary Judgment, Sapphire Land Company, LLC alleges that the mineral lease at issue granted by the Parish of Caddo should be deemed an absolute nullity and that there should be a monetary summary judgment rendered against the Parish, and the Chesapeake defendants with attorneys' fees and legal interest. Because the Court is of the opinion that Sapphire, referenced by Chesapeake as "an interloping company" mistakenly relies on inapplicable law, R.S. 47:2231–34 and Louisiana Mineral Code R.S. 31:117, it is obviously not entitled to summary judgment. Moreover, it is clear that Sapphire, which obtained certain rights through quitclaim and redemption, took the property "subject to all restrictions, right of way grants and servitudes of public record. There are issues of material fact, and certainly, Sapphire is not entitled to summary judgment as a matter of law.[40]

Under Louisiana Code of Civil Procedure article 931, the general rule is that "no evidence may be introduced at any time to support or controvert the exception that the petition fails to state a cause of action."[41] The Parish submits that the judgment issued in *Sapphire Land Co., LLC v. Chesapeake Louisiana, L.P. et al.*, No. 547,511, is not impermissible evidence, but rather a persuasive opinion and statement of the law from a well-respected judge of the First Judicial District concerning the very point of law upon which this dispute revolves, namely the application of provisions of the Tax Code to the Mineral Leases.

However, to the extent the noted judgment constitutes "evidence," it should still be considered. The jurisprudence has recognized a limited exception to the rule that evidence typically is not admissible in considering an exception of no cause of action.[42] This exception applies when the "evidence" being submitted is part of an official record of the trial court before

---

[40] Judgment on Plaintiff's Motion for Summary Judgment, *Sapphire Land Co., LLC v. Chesapeake Louisiana, L.P. et al.*, No. 547,511, attached hereto as Exhibit 3.

[41] La. Code Civ. Proc. art. 931; *Atherton v. Rosteet Law Firm*, 13-864 (La. App. 3 Cir. 4/16/14), 137 So. 3d 1246, 1250.

[42] *Id.*; *Matassa v. Bel*, 156 So. 2d 250, 253 (La. App. 4th Cir. 1963), *rev'd on other grounds*, 246 La. 294, 164 So. 2d 332 (1964), *citing McDonald v. Union Indem. Co.*, 149 So. 143 (La. App. 2d Cir. 1933).

10

which the evidence is being offered.[43]  Judge Crichton's judgment, with the reasons cited therein, is part of an official record of the First Judicial District and therefore falls within this limited exception.  Accordingly, even if this record is found to be evidence rather than a persuasive authority, it should still be considered in rendering a judgment on the Parish's Exception of No Cause of Action.

### 3.  Red Sox cannot have any claim against the Parish or the City

In any case, the Parish did nothing more than grant to its lessees whatever rights it held, if any.  It did not act as a manager for Red Sox or any other landowner; it simply executed a mineral lease on any rights it may have now or in the future for the particular property at issue.  If the Parish has no such rights of its own to lease (or loses in the future any rights it may have), then Red Sox can assert its own claims to the Red Sox Properties, whatever they may be.  The Parish made its own deal, without warranty and without recourse.  None of the payment generated by that no-warranty lease accrues to the benefit of any third parties.  Those third parties are free to exercise their own rights as they see fit.

### B.    No Right of Action

Additionally, Red Sox is not a proper party plaintiff because it cannot assert any real or legitimate interests as alleged in this case.[44]  The exception of no right of action is a peremptory exception designed to determine whether the plaintiff has a real and actual interest in the proceeding or "belongs to a particular class to which the law grants a remedy for a particular harm alleged."[45]  Evidence is admissible on the hearing of an exception of no right of action to aid in the determination of whether the plaintiff is legally invested with the right to stand in judgment.[46]

Red Sox asserts that the Louisiana Adjudicated Property Law, specifically Revised Statute 47:2233, creates certain rights in its favor as the alleged owner of an interest in certain tracts of adjudicated property.  In particular, Red Sox asserts that it is entitled to have all proceeds of any Mineral Leases affecting the Red Sox Properties applied to any outstanding

---

[43] *Id.*
[44] La. Code Civ. Proc. art. 681.
[45] La. Code Civ. Proc. art. 927; *Richland Parish Police Jury v. Debnam*, 42,421 (La. App. 2 Cir. 10/17/07), 968 So. 2d 294, 299–300.
[46] *Id.*

taxes and fees, with an automatic redemption in its favor when those proceeds cover all of the taxes and fees.[47]

Louisiana Revised Statute 47:2233 provides:

> The political subdivision, through its tax collector, upon taking or being placed in possession by judgment of court may, without the necessity of public letting, lease the adjudicated property on commercially reasonable terms and collect rentals. The political subdivision shall apply the rentals first to the payment of all costs of court incurred in the proceeding. Thereafter, all rental income shall be applied against any taxes, charges imposed pursuant to R.S. 33:1236, or paving or other local improvement assessments due against the property. When all of the obligations have been paid in full, the political subdivision shall issue a proper certificate of redemption and surrender its possession of the property.

However, that provision must be read in conjunction with other relevant provisions. Louisiana Revised Statute 47:2242 provides that: "[a]ny person may redeem tax sale title to property, *but the redemption shall be in the name of the tax debtor.*"[48]  Under this provision, any person may pay the price for a redemption of property, but the redemption only restores title as it was prior to the tax sale.[49]  At the time of the initial tax sale, John W. Johnston and Mary E. Johnston (hereinafter collectively referred to as the "Johnstons") were the record owners of the property – having obtained the property themselves through a tax sale.  In that respect, the Johnsons held nothing more than a potential personal right under Revised Statute 47:2233 (if it even applies to mineral leases) and possibly a right to redeem the property.

That personal right could not have been transferred by a mere quitclaim deed or tax adjudication in favor of Red Sox.[50]  Such personal rights do not pass along with any real rights unless expressly transferred or assigned, which is not accomplished by a quitclaim deed.  As such, no such personal rights can be asserted against the Parish by Red Sox.  The later quitclaim deed acquired from Sapphire regarding one of the tracts puts Red Sox in no different, or better, position.

At the time of the quitclaim sales to Red Sox, the only right arguably remaining with the Johnstons was the right to redeem the Red Sox Properties from the Parish and City in accordance

---

[47] *See* Plaintiffs' Original Petition.
[48] La. Rev. Stat. § 47:2242 (emphasis added).
[49] *Blocker v. Continental Securities Corp.*, 157 So. 155, 156 (La. App. 2d Cir. 1934).
[50] *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10-2267 (La. 10/25/11), 79 So. 3d 246, 256-74.

12

with Louisiana Revised Statute 47:2246, which allows for the redemption of property adjudicated to a political subdivision, after the expiration of the applicable redemptive period, by any person "in the name of the tax debtor."[51]  Red Sox is not itself the original tax debtor or delinquent taxpayer on any of the Red Sox Properties.  It is a third party who purported to purchase an interest in the property from a third party after the property had been adjudicated to the Parish.[52]

By way of example, the situation with Red Sox is entirely different than in the case of *Lemoine v. Kelone*.[53]  In *Lemoine*, the Louisiana Second Circuit held that a right of redemption passed to the purchaser by way of a "perfect act of sale."[54]  However, Red Sox did not acquire such a "perfect act of sale" for any of the Red Sox Properties.  Rather, Red Sox holds mere quitclaim deeds on the Red Sox Properties, in which the seller specifically noted that "it has not maintained any interest in the properties listed on Exhibit 'A' attached hereto and believes that it has no interest therein, said properties having been previously adjudicated for taxes."  The seller did not intend to transfer any personal rights of action, because it did not believe any such rights existed.

More specifically, in *Lemoine*, certain property belonging to the plaintiffs was adjudicated to the state for the nonpayment of taxes.  Following the adjudication of the property, the plaintiff sold her interest in the property to Thomas J. Klone by an authentic act of sale that expressly included a provision authorizing the purchaser to redeem the property from the State of Louisiana.[55]  After Klone had redeemed the property, the plaintiffs brought suit seeking to invalidate the sale.  In maintaining the defendants' interest in the property, the court stated: "[o]n

---

[51] La. Rev. Stat. § 47:2246.

[52] It should be noted that the Quitclaim Deeds executed with the Johnstons specifically noted the limited interest, as they provide: "SELLER declares that, it has not maintained any interest in the properties listed on Exhibit "A" attached hereto and believes that it has no interest therein, said properties having been previously adjudicated for taxes."  Exhibit 1 to the Exception of No Right of Action (the Quitclaim Deed executed by the Johnstons in favor of Red Sox on Property #1, Property #2, and Property # 3);  This language is not contained in the Quitclaim Deed executed by the Sapphire Land Company, L.L.C., Exhibit 2 to the Exception of No Right of Action.  However, based upon the Plaintiffs' petition, it appears that Red Sox claims title through the Johnstons as Audubon Meadow Partnership only "attempted to transfer and convey Property #2 and Property #3 to Sapphire."  Plaintiffs' Original Petition, ¶ 86(e).

[53] *Lemoine v. Kelone*, 18 So. 2d 516 (La. App. 2d Cir. 1944).

[54] *Lemoine*, 18 So. 2d at 518 (the court held that the deed on its face was a perfect act of sale).

[55] *Id.* at 517.

its face the deed is a perfect act of sale.  In addition to transferring title to the land, it gave to Kelone the right to redeem the property from the tax adjudication to the State."[56]

That is not at the case here.  Red Sox did not acquire its interest in the property through a perfect act of sale and did not expressly acquire any personal rights held by its sellers (as opposed to real rights in the property).  Red Sox purchased some tenuous interest in the property from the Johnstons by way of quitclaim deeds that did not include specifically the right to redeem the property as a tax debtor and certainly not the right to benefit from a 2009 mineral lease that had yet to be granted.  A quitclaim deed is not a "perfect act of sale"; it is a deed that is understood to convey nothing more than the interest in the land the grantor possesses, if any, at the time of execution.[57]  Personal rights are not transferred by such a quitclaim deed.

At the time the Johnstons executed the quitclaim deed in favor of Red Sox, the only interest that could have been transferred, potentially, was an inchoate right to redeem the property from the Parish.  The right to benefit from revenue generated through a later mineral lease was not referenced in the quitclaim deed and was not yet in existence (because the mineral leases did not exist yet), and thus could not have been transferred.  That right, if it exists at all, vested only with the original tax debtors and because the After Acquired Title Doctrine is expressly excluded from sales by quitclaim deed, that right does not inure to the benefit of Red Sox.[58]  Accordingly, if any right to this revenue exists under Revised Statute 47:2233, it lies with the original tax debtors, not Red Sox.

### C.   Exception of Improper Cumulation

Red Sox also attempts to cumulate its claims against the City and the Parish with speculative claims asserted on behalf of hundreds of other potential plaintiffs.  However, none of the other potential plaintiffs or affected properties are identified with any level of specificity.  Any such properties will be subject to different leases, with different lessees, for different periods of time, and with different prescriptive issues.

Moreover, those purported hundreds of other plaintiffs likely do not stand in the same capacity as Red Sox (we cannot know, because they are not identified).  Red Sox acquired its

---

[56] *Id.* at 518-19.
[57] *Waterman v. Tidewater Associated Oil Co.*, 213 La. 588, 35 So. 2d 225, 230 (1947).
[58] La. Civ. Code art. 2502

interest via one or more quitclaims from a seller who acquired the property at a tax sale. As such, Red Sox and its immediate predecessors in title never paid taxes on the property and acquired the property looking only to make money on the prior forfeitures. Those are not the kind of entities given a right of action under the referenced Tax Statutes, if any right or cause of action even exists.

## IV.    Conclusion

For these reasons, the claims asserted by Red Sox Investments, L.L.C. must be dismissed with prejudice on the grounds asserted herein, which can be summarized as follows:

- Red Sox is not a delinquent tax debtor seeking to redeem its property years after its adjudication to the State.

- Red Sox is an interloper that acquired interests in the property well after it had been adjudicated to the State and in some cases even after the Mineral Leases had been executed.[59] It is not the party in whose favor these statutes were ever intended to operate.

- The clear wording of the tax provisions indicates they are applicable only to a traditional surface lease, not a mineral lease. Broadening these provisions to apply to mineral leases would place large tracts of property out of commerce and hinder the development of the State's natural resources.

- Red Sox is attempting to improperly cumulate claims by a multitude of unknown plaintiffs with potential claims created under entirely different circumstances.


Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: _____
Leland G. Horton (Bar Roll No. 26928)

401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile:  (318) 227-1141

--  Attorneys for CADDO PARISH, LOUISIANA

1855109-1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing *Memorandum in Support of the Exceptions of No Right of Action, No Cause of Action, and Improper Cumulation* has this day been served by United States mail, postage prepaid and properly addressed, upon all counsel of record.

Shreveport, Louisiana, this 3rd day of _____ July _____ 2014.

_____
OF COUNSEL

1885402

FILED & RECORDED
CADDO PARISH
SHREVEPORT, LA.

GARY LOFTIN
CLERK OF COURT

2003 OCT 10 P 12: 12

*[signature]*
DPY. CLERK & RECORDER

STATE OF LOUISIANA

PARISH OF CADDO

C 3636

<u>QUIT CLAIM DEED</u>

BE IT KNOWN, that on the date written below, before me, the undersigned Notary Public, duly commissioned and qualified in and for the aforesaid State and Parish, and in the presence of the undersigned witnesses, personally came and appeared:

JOHN W. JOHNSTON, L.L.C. a Louisiana limited liability company, represented herein by John W Johnston, Manager, whose mailing address is 9526 Kroetz Drive, Shreveport, Louisiana 71118, hereinafter referred to as "SELLER",

who declared that it does by these presents quitclaim, grant, bargain, sell, convey and deliver, with no warranty of title whatsoever, whether express or implied; all of such warranties being explicitly waived by PURCHASER, but with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed, together with all rights of prescription, whether acquisitive or liberative, to which said Sellers may be entitled, unto:

RED SOX INVESTMENTS, L.L.C., a Louisiana limited liability company, represented by Richard E. Hiller, Managing Member, whose mailing address is 509 Market Street, Ninth Floor, Shreveport, Louisiana 71101, hereinafter referred to as "PURCHASER";

the following described property, with all its component parts, including all rights, ways, privileges, servitudes and appurtenances thereto belonging, the possession of which PURCHASER acknowledges:

All immovable property as described on Exhibit "A" attached hereto and made a part hereof.

SUBJECT TO ALL MORTGAGES, LIENS, RESTRICTIONS, EASEMENTS AND/OR RIGHTS-OF-WAY FILED OF RECORD.

SELLER declares that it has not maintained any interest in the properties listed on Exhibit "A" attached hereto and believes that it has no interest therein, said properties having been previously adjudicated for taxes. Without acknowledging any right, title or interest in the properties listed on Exhibit "A", SELLER does hereby quitclaim and convey to PURCHASER all of SELLER'S right title and interest therein, if any. PURCHASER agrees to assume any and all liabilities of SELLER with respect to such properties listed on Exhibit "A".

The sale is made for the purposes of transferring any and all right, title and interest that SELLER may have in the properties described herein, the consideration for which SELLER acknowledges to be good and sufficient.

Taxes for the current year will be assumed by the PURCHASER herein.

All parties signing the within instrument have declared themselves to be of full legal capacity and have declared that the name, marital status, domicile and address of each is correct as set forth above.

All agreements and stipulations herein and all the obligations assumed herein shall inure to the benefit of and be binding upon the heirs, successors and assigns of the respective parties, and the PURCHASER, PURCHASER's heirs and assigns shall have and hold the described property in full ownership forever.

*'04*

EXHIBIT

*[handwritten]* 1

THUS DONE AND PASSED in Shreveport, Louisiana, on this 10th day of October , 2003, in the presence of the undersigned competent witnesses, who sign with appearers and me, Notary, after due reading of the whole.

WITNESSES:

_____

_____
JOHN W. JOHNSTON, L.L.C.
BY: JOHN W. JOHNSTON,
    MANAGING MEMBER

_____

_____
RED SOX INVESTMENTS, L.L.C.
BY:   RICHARD E. HILLER,
    MANAGING MEMBER

_____
NOTARY PUBLIC

'05

EXHIBIT "A"

| GEOGRAPHICAL NUMBER | LEGAL DESCRIPTION |
|---|---|
| 181436-32-57 | Lot 57, Flanagan, Tal 7 Allendale |
| 181435-100-63 | Lot 63, Hotchkiss Subdivision, Tal 7 Allendale |
| 171421-21-34 | Lot 34, Cora Snowden Subdivision |
| 171330-106-2 | Southeasterly 40 ft. of Lot B & southeasterly 40 ft. of southwesterly 30 ft. of Lot A, Lincoln Subdivision |
| 171306-13-22 | Lot 22, Beverly Hills Annex, 3rd Filing |
| 161505-3-28 | Lot 28, Audubon Subdivision, Unit No. 2 |
| 171421-18-37 | Lot 37, Dellinger Addition, Unit No. 1 |
| 171402-18-9 | East 50 ft. of Lot 6, Block 16, Parkview Subdivision |
| 171305-28-57 | Lot 57, E. M. Smith Subdivision |
| 141504-1-6 | Lot 6, Happy Trails |
| 161505-3-29 | Lot 29, Audubon Subdivision, Unit No. 2 |
| 171416-52-35 | Lots 27 and 28, Delmar Subdivision |
| 171305-28-58 | Lot 58, E. M. Smith Subdivision |
| 171422-17-34 | Lot 34, Steere Courts Subdivision |
| 171403-59-32 | Lot 32, Block 24, Queensborough, 2nd filing |
| 181435-59-60 | North 54 feet of Lot 15, N. 54.4 ft. of West 29 ft. of Lot 14, North 62 ft. of East 11 ft. of Lot 14 |
| 171424-87-39 | Lot 22 and N/2 of Lot 21, Block E, Southside Park Subdivision |
| 171424-60-105 | Lot 105 of North Cedar Grove Addition |
| 171404-69-25 | Lot 25, Parham Park Estates |
| 171404-69-26 | Lot 26, Parham Park Estates |
| 171424-0-113 | A tract of land, 25 X 250 feet in SE/4 of the NW/4, Section 24, Township 17 North, Range, 14 West |
| 161412-1-43 | Lot 43, Burnley Pines Subdivision |
| 161307-5-21 | Lots 1 & 2, Block 3, Forbing Annex Home Site |

SCANNED 07/05/2014 999999

AUG '06

C 4416

Gary Loftin
Caddo Parish Clerk of Court
**2317265**
10/12/2010 03:44 PM

AFTER RECORDING PLEASE RETURN TO:
FIRST COMMERCE TITLE COMPANY, INC.
2708 VILLAGE LANE
BOSSIER CITY, LOUISIANA 71112

WENDY CLARK
DEPUTY CLERK

[Space above this line for recording data]

## NON-WARRANTY DEED

BE IT KNOWN, that this day before us, the undersigned authorities, Notaries Public in and for the below stated jurisdictions, duly commissioned and sworn, came and appeared:

SAPPHIRE LAND COMPANY, L.L.C., a Louisiana limited liability company, whose mailing address is 2611 Kings Highway, Shreveport, Louisiana 71103, appearing herein through its agent, Steve Clark (hereafter referred to as "Transferor"),

who declared that it does by these presents, GRANT, BARGAIN, SELL, CONVEY, AND DELIVER, without any warranty of title whatsoever, not even as to return of the purchase price, but with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed, together with all rights of prescription, whether acquisitive or liberative, to which said Transferor may be entitled, unto:

RED SOX INVESTMENTS, L.L.C., appearing herein through Richard E. Hiller, Managing Member, having a mailing address of 509 Market Street, Ninth Floor, Shreveport, Louisiana 71101 (hereafter referred to as "Transferee"),

All of Transferor's right, title, and interest in the following described property, to-wit:

Lots 28 and 29, AUDUBON MEADOW SUBDIVISION, Unit No. 2, a subdivision of Caddo Parish, Louisiana, as per plat recorded in Book 2050, Page 167 of the Conveyance Records of Caddo Parish, Louisiana, together with all buildings and improvements located thereon.

Subject to all restrictions, right of way grants, and servitudes of public record.

TO HAVE AND TO HOLD said described property unto said Transferee, its successors and assigns, forever.

This transfer is made for the consideration of ONE THOUSAND FIVE HUNDRED AND NO/100 ($1,500.00) DOLLARS, cash in hand, the receipt of which is hereby acknowledged, and for other good and valuable consideration.

The certificate of mortgage is hereby waived by the parties, and evidence of the payment of taxes produced.

The Transferee takes cognizance of all future Parish and City taxes and agrees to pay same.

THUS DONE AND PASSED in the Parish of Bossier, Louisiana, before me, Notary, and the undersigned competent witnesses, on this ___ day of October, 2010.

WITNESSES:

SAPPHIRE LAND COMPANY, L.L.C.

PRINT NAME: _____

By: _____
STEVE CLARK, Agent

PRINT NAME: Danette Rivers

NOTARY PUBLIC

109

EXHIBIT
2

**THUS DONE AND PASSED** in the Parish of ___Caddo___, Louisiana, before me, Notary, and the undersigned competent witnesses, on this ___11th___ day of October, 2010.

WITNESSES:                                   RED SOX INVESTMENTS, L.L.C.

_Sharon Brazil_                              By: _____
PRINT NAME: SHARON BRAZIL                    RICHARD E. HILLER, Managing Member

_Lisa Lovewell_
PRINT NAME: LISA LOVEWELL


_Laurie L Mitchell_
NOTARY PUBLIC

LAURIE L. MITCHELL
NOTARY PUBLIC #004106
BOSSIER PARISH, LOUISIANA
MY COMMISSION IS FOR LIFE.

SCAN0716201400000083

110

| | | |
|---|---|---|
| SAPPHIRE LAND CO., L.L.C. | : | NUMBER: 547,511-B |
| VERSUS | : | FIRST JUDICIAL DISTRICT COURT |
| CHESAPEAKE LOUISIANA, L.P., ET AL | : | CADDO PARISH, LOUISIANA |

## JUDGMENT ON PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

Having thoroughly considered the Motion for Summary Judgment filed August 15, 2011 by Sapphire Land Company, L.L.C., its 32 exhibits and memoranda; the opposition memoranda filed November 28, 2011 by Defendant Parish of Caddo; the opposition memoranda filed November 29, 2011 by Defendants Chesapeake Louisiana, L.P. and Chesapeake Operating, Inc. and its 7 exhibits; the memorandum of authorities filed December 5, 2011 and January 17, 2012 by the plaintiff, the post hearing opposition brief filed January 13 by defendants; oral arguments of December 5, 2011, applicable law and for reasons assigned[1], the Court concludes that the Motion for Summary Judgment should be denied at plaintiff's costs.

IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed August 15, 2011 by Sapphire Land Company, L.L.C. is denied at its costs.

Signed this 23rd day of April in Shreveport, Caddo Parish, Louisiana.



SCOTT J. CRICHTON
DISTRICT JUDGE

DISTRIBUTION:

David M. Touchstone, Counsel for Sapphire Land Company, L.L.C.
Donna Y. Frazier, Counsel for Parish of Caddo
Michael B. Donald, Counsel for Chesapeake Louisiana, L.P. and
    Chesapeake Operating, Inc.

**FILED**
APR 2 4 2012
COLVIN ROBERSON
CADDO DEPUTY CLERK OF COURT

---

[1]By its Motion for Summary Judgment, Sapphire Land Company, L.L.C. alleges that the mineral lease at issue granted by the Parish of Caddo should be deemed an absolute nullity and that there should be a monetary summary judgment rendered against the Parish, and the Chesapeake defendants with attorneys' fees and legal interest.   Because the Court is of the opinion that the plaintiff Sapphire, referenced by Chesapeake as "an interloping company" mistakenly relies on inapplicable law, R.S. 47:2231-34 and Louisiana Mineral Code R.S. 31:117, it is obviously not entitled to summary judgment.   Moreover, it is clear that Sapphire, which obtained certain rights through quit claim and redemption, took the property "subject to all restrictions, right of way grants and servitudes of public record."   See exhibits P-12 – P-15 and the rationale of Sparks v. United Title and Abstract, LLC, No. 45,766 (La. App. 2 Cir. 12/15/10), 56 So. 3d 302.   There are issues of material fact, and, certainly, Sapphire is not entitled to summary judgment as a matter of law.

PGS ___  EXH ___  MIN ___
CC ___  CP ___  MAIL ___  N/J ___
INDEX ___  REC ___  FAX ___
W/O DOC ___  CERT MAIL ___
SERVICE ___

**EXHIBIT**
3

# CERTIFICATE OF NOTICE OF JUDGMENT

SAPPHIRE LAND COMPANY, LLC

       VERSUS

CHESAPEAKE LOUISIANA LP  ETAL

SUIT NUMBER 547511
FIRST JUDICIAL DISTRICT COURT

**I HEREBY CERTIFY THAT ON THIS DAY A NOTICE OF THE ATTACHED**

**JUDGMENT WAS MAILED BY ME, WITH SUFFICIENT POSTAGE TO:**

       DAVID TOUCHSTONE
       P O BOX 6152
       BOSSIER CITY, LA   71171

       DONNA Y. FRAZIER
       505 TRAVIS ST., STE. 810
       SHREEPORT, LA  71101

       MICHAEL B. DONALD
       600 TRAVIS ST., SUITE 6601
       HOUSTON, TEXAS 77002

**DONE AND SIGNED ON April 25, 2012**

                               Deputy Clerk

SCANNED 04/27/2012 000064

# PETTIETTE, ARMAND, DUNKELMAN, WOODLEY, BYRD & CROMWELL, L.L.P.

Attorneys and Counselors at Law
Chase Bank Tower
400 Texas Street, Suite 400
Shreveport, Louisiana 71101

Lawrence W. Pettiette, Jr. †
Donald Armand, Jr.
Robert A. Dunkelman
Joseph S. Woodley
Edwin H. Byrd, III
L. David Cromwell
S. Michael Cooper
Rendi Wiggins *
Joshua P. Monteleone †
Jessica L. Thornhill
Graham H. Todd ‡
Trey W. Carter

Jerald L. Perlman
Of Counsel

Mailing Address:
Post Office Box 1786
Shreveport, La 71166-1786
Tel. (318) 221-1800
Fax (318) 226-0390

†Also Admitted in Georgia
* Also Admitted in Texas
‡ Also Admitted in Florida

July 16, 2014

**VIA FAX:  (318) 429-7606 AND HAND DELIVERY**
The Honorable Michel A. Pitman
District Judge – First Judicial District Court
501 Texas Street, Room 300D
Shreveport, LA 71101

      Re:    **Red Sox Investments, L.L.C., et al, on behalf of itself and a Class of Similarly Situated Property Owners v. City of Shreveport and Caddo Parish, Louisiana, No. 576,478, First Judicial District Court, Caddo Parish, Louisiana**

Dear Judge Pitman:

    The exceptions set for hearing on July 28, 2014 in this matter are being continued without a new date by agreement of counsel.

             Very truly yours,

             Jerald L. Perlman

JLP/rem
cc:    Mr. Byron A. Richie – Fax:  (318) 227-8311
       Mr. Leland Horton – Fax:  (318) 227-1141

PGS_____   EXH_____   MIN_____
CC_____   CP_____   MAIL_____   N/J_____
INDEX_____   REC_____   FAX_____
W/D DOC_____   CERT MAIL_____
SERVICE _____

FILED

JUL 17 2014

ERIN GILCREASE
DEPUTY CLERK OF COURT
CADDO PARISH

DOCKET NUMBER: 576,478 - SECTION OR DIVISION: C

| | | |
|---|---|---|
| RED SOX INVESTMENTS, L.L.C., ET AL.,ON BEHALF OF ITSELF AND A CLASS OF SIMILARLY SITUATED PROPERTY OWNERS | § | FIRST JUDICIAL DISTRICT COURT |
| VERSUS | § | PARISH OF CADDO |
| CITY OF SHREVEPORT, LOUISIANA, and CADDO PARISH, LOUISIANA, ET AL | § | STATE OF LOUISIANA |

**MOTION FOR CLASS ACTION CERTIFICATION**

Now into court comes Red Sox Investments, L.L.C., a domestic Limited Liability

Company whose domicile and principal place of business are in Caddo Parish, Louisiana, on

behalf of itself and a class of similarly situated Louisiana property owners, who alleges that:

1. The above named action is an action in tort, or, alternatively, an action in Negotiorum

    Gestio, or, alternatively, an action for compensation due to unjust enrichment, or,

    alternatively, an action for violation of the due process rights guaranteed by Article 1,

    Section 2 and the non-forfeiture protections of Article 7, Section 25 of the Constitution of

    the State of Louisiana.

2. There exists a class of persons having suffered injury, loss, or unjust impoverishment in a

    manner substantially legally and factually similar to that addressed in the above named

    action as to require certification of the above named action as a Class Action for the

    following reasons:

3. This aforementioned class of persons is or may be defined as:

    a. Louisiana residents and non-residents who:

    b. Own or owned property ("Property") in the City of Shreveport ("the City") and/or

        the Parish of Caddo ("the Parish") and failed to pay ad valorem taxes

        ("Delinquent Taxes") on said Property; and

    c. By reason of the Delinquent Taxes, said Property was offered in a tax sale

        conducted by the City and/or the Parish; and

PGS _13_ EXH ____ MIN ✓

CC _5_ CP ____ MAIL ____ N/J ____

INDEX ____ REC ____ FAX ____

W/D DOC _____ CERT MAIL ____

SERVICE _____ _3 Rules_

_1 NIF_

_450.00_

Motion for Class Certification                                                                                  pg. 1

ROUTE _____
MINUTE CLERK

**FILED**

**JUL 2 9 2014**

JIM SCOTT
CADDO DEPUTY CLERK OF COURT

d. Said property was not sold at the tax sale; and

e. Said property was adjudicated ("Adjudicated Property") to the City and/or Parish under the provisions of La. R.S. 47:2196 et seq. (the "Adjudicated Property Law"); and

f. Said Property was included in a Mineral Lease granted by the City and/or Parish during the calendar year 2009, and/or any subsequent calendar year; and

g. Neither the mineral leasing bonus nor any of the royalties paid, which were attributable to the Property, were paid to Plaintiffs or credited to Plaintiffs' Delinquent Taxes and/or the fees relating to Plaintiffs' Delinquent Taxes as required by the Adjudicated Property Law;

4. To the best knowledge, information, and belief of the plaintiff, the combined number of parcels of Adjudicated Property included in the Mineral Leases executed by the City and/or the Parish (the exact number of which to be calculated with certainty through discovery), is 500, more or less; thus, the combined number of persons whose Adjudicated Property was included in the Mineral Leases executed by the City and/or the Parish, is so numerous as to render joinder of all interested parties judicially impracticable or impossible.

5. The claims of the individual class members depend on the common contention that the Plaintiffs, who owned land that became Adjudicated Property of the City or Parish, have been wrongfully deprived of the fruits, possession, and/or ownership of that land and/or other property rights associated with the fruits, possession and/or ownership of that land due to the acts and/or omissions of the City and/or Parish in connection with the execution of mineral leases during the calendar year of 2009 and/or subsequent calendar years up to the date on which the above-named action was filed.

6. The claims of the individual class members also depend on the common contention that the City and the Parish were each aware of the actions of the other and knowingly and jointly participated in a scheme to deprive the owners of Adjudicated Property of the

benefit of the mineral revenues on that Adjudicated Property.

7. These common contentions are capable of class-wide resolution, and the determination of the truth or falsity of the contentions will resolve issues that are central to the validity of each one of the claims.

8. The judicial resolution of individual claims by members of this class would involve judicial consideration and analysis of common questions of law or fact, including:

    a. The interpretation and application of the Louisiana Adjudicated Property Law, i.e., La. R.S. 47:2196 et seq. and La. R.S. 47:2231 et seq.;

    b. Whether, because the City and/or the Parish voluntarily undertook the benefits of renting the Plaintiffs' properties, they are obligated to apply the rental and royalty revenues attributable to Plaintiffs' properties in the manner specified by La. R.S. 47:2233;

    c. Whether, by including the Adjudicated Properties within the land covered by the Mineral Leases without first complying with the due process requirements of La. R.S. 47:2231-2232, the City and/or the Parish acted as negotiorum gestors on behalf of their taxpayers;

    d. Whether, by including the Adjudicated Properties within the land covered by the Mineral Leases without first complying with the due process requirements of La. R.S. 47:2231-2232 and then failing or refusing to properly apply the revenues derived from the Adjudicated Properties in the manner set forth by La. R.S. 47:2233, the City and/or the Parish violated Article 1, Section 2 and/or Article 7, Section 25 of the Constitution of the State of Louisiana;

    e. Whether, by specifically including the Adjudicated Properties within the Mineral Leases without complying with the due process requirements of La. R.S. 47:2231-2232, the City and/or the Parish created practical and legal barriers to the leasing of the property by the proposed Plaintiff Class Members, thus violating Article 1, Section 2 and/or Article 7, Section 25 of the Constitution of the State of

Louisiana.

f.  Whether, by including the Adjudicated Properties within the land covered by the Mineral Leases without first complying with the due process requirements of La. R.S. 47:2231-2232 and then failing or refusing to properly apply the revenues derived from the Adjudicated Properties in the manner set forth by La. R.S. 47:2233, the City and/or the Parish intentionally or negligently caused damages to the proposed Plaintiff Class Members;

g.  Whether, by including the Adjudicated Properties within the land covered by the Mineral Leases without first complying with the due process requirements of La. R.S. 47:2231-2232 and then failing or refusing to properly apply the revenues derived from the Adjudicated Properties in the manner set forth by La. R.S. 47:2233, the City and/or the Parish were unjustly enriched at the expense of the proposed Plaintiff Class Members;

h.  Whether, by knowingly and jointly participating in a scheme to deprive the owners of Adjudicated Property of the benefit of the mineral revenues on the Adjudicated Property, the City and the Parish are answerable in solido for the damages caused by their actions.

i.  And other questions of law and fact as stated in the Original Class Action Petition.

9.  The claims of the above-named representative are typical of those of the aforementioned class, insofar as all of the claims are based upon the same computation formula:

a.  Step 1: Divide the total acreage in the subject Mineral Lease by the acreage of the individual plaintiff's Adjudicated Property that was included in the lease to determine the percentage of the total leased acreage that is attributable to the plaintiff's Adjudicated Property.

b.  Step 2: Multiply the total amount of bonus and royalty payments made pursuant to the subject Mineral Lease by the percentage of the total leased acreage

attributable to the plaintiff's Adjudicated Property to determine the amount of money paid pursuant to the subject Mineral Lease (the "Lease Income") that is attributable to the plaintiff's Adjudicated Property.

c. Step 3: Determine whether the Lease Income attributable to the plaintiff's Adjudicated Property would have been sufficient to extinguish the plaintiff's debt for taxes, fees, and costs ("Tax Debt").

d. If the Lease Income attributable to the plaintiff's Adjudicated Property is less than the amount of the plaintiff's Tax Debt, then:

   i. The full amount of the Lease Income attributable to the plaintiff's Adjudicated Property should have been credited towards the plaintiff's Tax Debt; and

   ii. All future Lease Income should be credited towards the plaintiff's Tax Debt until such time as the debt is extinguished, at which point a redemption certificate should be issued for the plaintiff's Adjudicated Property.

e. If the Lease Income attributable to the plaintiff's Adjudicated Property is exactly equal to the amount of the plaintiff's Tax Debt, then:

   i. The Lease Income should be credited towards plaintiff's Tax Debt; and

   ii. The plaintiff's Tax Debt should be extinguished; and

   iii. A certificate of redemption should be issued for the plaintiff's Adjudicated Property; and

   iv. Any and all future Lease Income should be paid directly to the plaintiff by the Mineral Lessee and or its Assignee.

f. If the Lease Income attributable to the plaintiff's Adjudicated Property is greater than the amount of the plaintiff's Tax Debt, then:

   i. The plaintiff should have been credited for the full amount of his or her Tax Debt; and

ii.   The plaintiff's Tax Debt should have been extinguished; and

iii.  A certificate of redemption should have been issued for the plaintiff's

Adjudicated Property; and

iv.   The plaintiff should have received any Lease Income exceeding the

amount of his or her Tax Debt; and

v.    Any and all future Lease Income should be paid directly to the plaintiff by

the Mineral Lessee and or its Assignee.

10. By way of example, assume that the total acreage in a Mineral Lease was 100 acres, that

Plaintiff X had 10 acres of Adjudicated Property included in that lease, the Mineral

Lessee paid $10,000.00 per acre in bonus money, and that Plaintiff X owed unpaid ad

valorem taxes totaling $5,000.00 and costs and fees totaling an additional $1,500.00. The

City or the Parish should have retained $6,500.00 of bonus money, issued Plaintiff X a

redemption certificate, and remitted the remaining $93,500.00 to Plaintiff X. Any and all

future royalties should have been paid directly to Plaintiff X by the Mineral Lessee or its

Assignee.

11. Having established that the claims of the aforementioned representative plaintiff to be

typical of those of the above-defined class, it must follow that, in asserting its own claims

it shall adequately and fairly protect the interests of the class, as:

a.   The aforementioned representative plaintiff has a personal interest in having the

Mineral Lease proceeds credited towards its outstanding tax debt, in receiving any

excess revenues attributable to its property that are due to it, in receiving all future

royalties and rental income attributable to its property, and in having its property

either restored to its possession or otherwise being compensated for the property

having already been restored to the market;

b.   The aforementioned representative plaintiff has multiple properties for which it

has made claims, and this personal interest in the outcome of the suit is sufficient

to ensure the vigorous advocacy thereof;

---

Motion for Class Certification                                                    pg. 6

c.  The aforementioned representative plaintiff has no claims that are antagonistic to

or that conflict with the claims of other class members; and

d.  Counsel for the aforementioned representative plaintiff is competent,

experienced, qualified, and generally able to conduct the proposed litigation

vigorously.

Wherefore, Mover prays for judgment as follows:

I.    That the defendants be duly cited and served with a copy of this Motion for Class Action

Certification, that they be required to answer, and after all legal delays, that there be

judgment rendered herein in favor of Red Sox Investments, L.L.C. and against defendants

certifying the above named action as a Class Action.

II.   For all costs relating to this motion including, if legally recoverable, attorney's fees.

III.  For any additional relief to which Mover may be entitled based upon the facts asserted

herein.

Submitted by:

*[signature]*

Margaret Richie Gaskins, La, Bar #34055
For Richie, Richie & Oberle, L.L.P.
P. O. Box 44065
Shreveport, LA 71134
1800 Creswell Ave. (71101)
Ph. (318) 222-8305
Fax (318) 221-8311
Attorneys for Red Sox Investments, L.L.C.

Instructions to Clerk of Court:

●  Please have the judge to whom this matter is assigned sign the attached order.

●  Please have a certified copy of this motion and the attached order served on:

| Name: | Address: |
|---|---|
| Malcolm Murchison<br>Leland G. Horton<br>Bradley Murchison Kelly & Shea<br>attorneys for Caddo Parish, Louisiana | 401 Edwards Street, Suite 1000<br>Shreveport, LA 71101 |

Motion for Class Certification                                                                     pg. 7

| Donna Frazier<br>Henry Bernstein<br>Parish Attorney | Government Plaza<br>505 Travis Street<br>Shreveport, LA 71101 |
|---|---|
| Edwin H. Byrd, III<br>Jerald L. Perlman<br>Pettiette, Armand, Dunkelman, Woodley,<br>Byrd & Cromwell<br>Attorneys for the City of Shreveport | 400 Texas Street, Suite 400<br>Shreveport, LA 71101 |
| John M. Madison, Jr.<br>Wiener, Weiss & Madison<br>Attorneys for Steve Prator | 2350 Regions Tower<br>333 Texas Street<br>Shreveport, LA 71101 |

- Please <u>mail</u> a certified copy of this motion and the attached order to: Byron A. Richie, Attorney at Law, P.O. Box 44065, Shreveport, LA 71134 (a postage paid envelope is provided for this purpose).

DOCKET NUMBER: 576,478 - SECTION OR DIVISION: C

RED SOX INVESTMENTS, L.L.C.,  §    FIRST JUDICIAL DISTRICT COURT
ET AL.,ON BEHALF OF ITSELF
AND A CLASS OF SIMILARLY
SITUATED PROPERTY OWNERS

VERSUS                §    PARISH OF CADDO

CITY OF SHREVEPORT,       §    STATE OF LOUISIANA
LOUISIANA, and CADDO PARISH,
LOUISIANA, ET AL

## **CERTIFICATE IN COMPLIANCE WITH**
## **THE UNIFORM DISTRICT COURT RULES**

1. It is anticipated that this motion will be contested. Accordingly, in compliance with Rule
   9.8(a) of the Uniform District Court Rules, undersigned counsel attaches hereto a
   proposed order setting this motion for hearing.

2. In compliance with Rule 9.8(a) of the Uniform District Court Rules, undersigned counsel
   advises the court that this matter is set for trial on the merits.

3. In compliance with Rule 9.8(a) of the Uniform District Court Rules, undersigned counsel
   advises the court that testimony will not be offered at the hearing on this motion.

4. Undersigned counsel certifies that on the **29** day of **July**, 20**14**, a copy of
   the foregoing pleading was sent by United States Mail, postage prepaid to:

| Name: | Address: |
|---|---|
| Malcolm Murchison<br>Leland G. Horton<br>Bradley Murchison Kelly & Shea<br>attorneys for Caddo Parish, Louisiana | 401 Edwards Street, Suite 1000<br>Shreveport, LA 71101 |
| Donna Frazier<br>Henry Bernstein<br>Parish Attorney | Government Plaza<br>505 Travis Street<br>Shreveport, LA 71101 |
| Edwin H. Byrd, III<br>Jerald L. Perlman<br>Pettiette, Armand, Dunkelman, Woodley,<br>Byrd & Cromwell<br>Attorneys for the City of Shreveport | 400 Texas Street, Suite 400<br>Shreveport, LA 71101 |

| John M. Madison, Jr. | 2350 Regions Tower |
| Wiener, Weiss & Madison | 333 Texas Street |
| Attorneys for Steve Prator | Shreveport, LA 71101 |

_Margaret Richie Gaskins_

DOCKET NUMBER: 576,478 - SECTION OR DIVISION: C

RED SOX INVESTMENTS, L.L.C.,          §          FIRST JUDICIAL DISTRICT COURT
ET AL.,ON BEHALF OF ITSELF
AND A CLASS OF SIMILARLY
SITUATED PROPERTY OWNERS

VERSUS                                §          PARISH OF CADDO

CITY OF SHREVEPORT,                   §          STATE OF LOUISIANA
LOUISIANA, and CADDO PARISH,
LOUISIANA, ET AL

<u>ORDER</u>

    The foregoing motion having been considered by the court:

The City of Shreveport, Louisiana, Caddo Parish, Louisiana, and Sheriff Steve Prator are hereby

ordered to appear before this court on the 13 day of _October_ , 20 14 at

_9:30_ o'clock A m. and show cause why the foregoing motion should not be granted.

    This order has been issued on the 4th day of _August_ , 20 14 , Shreveport,

Louisiana.

_____
District Judge

ROUTE
MINUTE CLERK

Motion for Class Certification                                        pg. 11

DOCKET NUMBER: 576,478 - SECTION OR DIVISION: C

| | | |
|---|---|---|
| RED SOX INVESTMENTS, L.L.C., ET AL.,ON BEHALF OF ITSELF AND A CLASS OF SIMILARLY SITUATED PROPERTY OWNERS | § | FIRST JUDICIAL DISTRICT COURT |
| VERSUS | § | PARISH OF CADDO |
| CITY OF SHREVEPORT, LOUISIANA, and CADDO PARISH, LOUISIANA, ET AL | § | STATE OF LOUISIANA |

## MEMORANDUM IN SUPPORT

This matter is before the court on the foregoing Motion filed herein by Red Sox

Investments, LLC, on behalf of itself and a class of similarly situated property owners.  This

memorandum is submitted in support thereof.

<u>Relief sought in the Motion:</u>

That judgment be rendered certifying the action filed by Red Sox Investments, LLC on

behalf of itself and a class of similarly situated property owners as a class action.

<u>Law upon which the Motion is based:</u>

- La. C.C.P. art. 591(A): "One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
  (1) The class is so numerous joinder of all members is impracticable.
  (2) There are questions of law or fact common to the class.
  (3) The claims or defenses of representative parties are typical of claims or defenses of the class.
  (4) The representative parties will fairly and adequately protect the interests of the class.
  (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of conclusiveness of any judgment that may be rendered in the case."

- La. C.C.P. art. 591 (B)(1) and (B)(3): "An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
  (1) The prosecution of separate actions by or against individual members of the class would create a risk of:
      (a) Inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class; or
      (b) Adjudications with respect to individual members of the class that would as a practical matter be dispositive of interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or...
  (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
      (a) The interest of members of the class in individually controlling the prosecution or

Motion for Class Certification                                                                          pg. 12

$ _____ FILED

JUL 2 9 2014

JIM SCOTT
CADDO DEPUTY CLERK OF COURT

defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating litigation in the particular forum;
(d) The difficulties likely to be encountered in management of the class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation."

- La. C.C.P. art. 592 (A)(3)(a): "No motion to certify an action as a class action shall be granted prior to a hearing on the motion. Such hearing shall be held as soon as practicable, but in no event before:
    (i) all named adverse parties have been served with the pleading containing the demand for class relief, or have made an appearance or, with respect to unserved defendants who have not appeared, the proponent of the class has made due and diligent effort to perfect service of such pleading; and
    (ii) the parties have had a reasonable opportunity to obtain discovery on class certification issues, on such terms and conditions as the court deems necessary which may include expert witness testimony or evidence…"

- La. C.C.P. art. 592 (A)(3)(b): "If the court finds that the action should be maintained as a class action, it shall certify the action accordingly. If the court finds that the action should not be maintained as a class action, the action may continue between the named parties. In either event, the court shall give in writing its findings of fact and reasons for judgment provided a request is made not later than ten days after notice of the order or judgment."

Facts upon which the Motion is based:

The facts alleged in the Motion for Class Certification and in the Original Petition filed on May 1, 2014 by Red Sox Investments, LLC on behalf of itself and a class of similarly situated property owners are adopted herein by reference.

Conclusion:

The action filed by Red Sox Investments, LLC on behalf of itself and a class of similarly situated property owners meets all of the prerequisites to be maintained as a class action and should therefore be certified as a class action by this court.

Respectfully submitted:

Richie, Richie & Oberle, L.L.P., by:

_Margaret Richie Gaskins_

Margaret Richie Gaskins, La. Bar Roll # 34055
P.O. Box 44065, Shreveport, LA 71134
1800 Creswell Ave., Shreveport, LA 71101
Ph: (318) 222-8305; Fax (318) 227-8311
Attorneys for Movers

*Rule to Show Cause*

sn

RED SOX INVESTMENTS LLC   ETAL                    NO. 576478-C
                                                 STATE OF LOUISIANA
     VERSUS                                      PARISH OF CADDO
                                                 FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA   ETAL

TO:   **STEVE PRATOR**
      THRU JOHN M MADISON JR, ATTORNEY
      2350 REGIONS TOWER
      333 TEXAS STREET
      SHREVEPORT LA 71101

                             GREETINGS:

     YOU ARE HEREBY ORDERED, DIRECTED and COMMANDED, in the name of the
State of Louisiana and of this Honorable Court, to show cause before this
Court on the **13TH** day of **OCTOBER**   , **2014**, at **9:30AM**   , why you should
not comply with all that is contained in the certified copy of the order
which accompanies this RULE AND HEREIN FAIL NOT.

WITNESS the Honorable Judges of our Court on this date August 07, 2014.

OTHER: MOTION FOR CLASS ACTION          GARY LOFTIN, CLERK OF COURT
       CERTIFICATION                    MIKE SPENCE, CHIEF DEPUTY

                                        By:_____
                                                Deputy Clerk


                                        _____
                                        MARGARET RICHIE GASKINS
                                                Attorney

# FILE COPY

*Rule to Show Cause*

sn

RED SOX INVESTMENTS LLC  ETAL

    VERSUS

CITY OF SHREVEPORT LOUISIANA  ETAL

NO. 576478-C
STATE OF LOUISIANA
PARISH OF CADDO
FIRST JUDICIAL DISTRICT COURT

TO:  **CITY OF SHREVEPORT**
    THRU EDWIN H BYRD III, ATTORNEY
    400 TEXAS STREET SUITE 400
    SHREVEPORT LA 71101

GREETINGS:

    YOU ARE HEREBY ORDERED, DIRECTED and COMMANDED, in the name of the
State of Louisiana and of this Honorable Court, to show cause before this
Court on the **13TH** day of **OCTOBER**  , **2014**, at **9:30AM**   , why you should
not comply with all that is contained in the certified copy of the order
which accompanies this RULE AND HEREIN FAIL NOT.

WITNESS the Honorable Judges of our Court on this date August 07, 2014.

OTHER: *MOTION FOR CLASS ACTION
    CERTIFICATION*

GARY LOFTIN, CLERK OF COURT
MIKE SPENCE, CHIEF DEPUTY

By:_____
          Deputy Clerk

MARGARET RICHIE GASKINS
        Attorney

FILE
COPY

## Notice of Filing

sn

RED SOX INVESTMENTS LLC  ETAL      NO. 576478-C
                                        STATE OF LOUISIANA
      VERSUS                         PARISH OF CADDO
                                        FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO  **PARISH OF CADDO**
                             THRU DONNA FRAZIER, ATTORNEY
                             GOVERNMENT PLAZA
                             505 TRAVIS STREET
                             SHREVEPORT LA 71101

    YOU ARE HEREBY NOTIFIED that on the **29TH** day of **JULY**    , 2014,

RED SOX INVESTMENTS LLC                                  herein, filed

MOTION FOR CLASS ACTION CERTIFICATION

a copy of which accompanies this notice.

    CLERK'S OFFICE this date August 07, 2014.

                              GARY LOFTIN, CLERK OF COURT
                              MIKE SPENCE, CHIEF DEPUTY

MARGARET RICHIE GASKINS        By:_____
         Attorney                         Deputy Clerk

FILE
COPY

## Rule to Show Cause

sn

RED SOX INVESTMENTS LLC  ETAL

    VERSUS

CITY OF SHREVEPORT LOUISIANA  ETAL

NO. 576478-C
STATE OF LOUISIANA
PARISH OF CADDO
FIRST JUDICIAL DISTRICT COURT

TO:  **CADDO PARISH, LOUISIANA**
    THRU MALCOLM MURCHISON, ATTORNEY
    401 EDWARDS STREET SUITE 1000
    SHREVEPORT LA 71101

GREETINGS:

    YOU ARE HEREBY ORDERED, DIRECTED and COMMANDED, in the name of the
State of Louisiana and of this Honorable Court, to show cause before this
Court on the **13TH** day of **OCTOBER**  , 2014, at **9:30AM**  , why you should
not comply with all that is contained in the certified copy of the order
which accompanies this RULE AND HEREIN FAIL NOT.

WITNESS the Honorable Judges of our Court on this date August 07, 2014.

OTHER: MOTION FOR CLASS ACTION
    CERTIFICATION

GARY LOFTIN, CLERK OF COURT
MIKE SPENCE, CHIEF DEPUTY

By:_____
          Deputy Clerk

MARGARET GASKINS
       Attorney

FILE COPY

## *Notice of Filing*

sn

RED SOX INVESTMENTS LLC  ETAL          NO. 576478-C
                                       STATE OF LOUI
       *VERSUS*                        PARISH OF CADDO
                                       FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO  **PARISH OF CADDO**
                             *THRU DONNA FRAZIER, ATTORNEY*
                             *GOVERNMENT PLAZA*
                             *505 TRAVIS STREET*
                             *SHREVEPORT LA 71101*

   YOU ARE HEREBY NOTIFIED that on the **29TH** day of **JULY**        , 2014,

RED SOX INVESTMENTS LLC                                   herein, filed

MOTION FOR CLASS ACTION CERTIFICATION

a copy of which accompanies this notice.

   CLERK'S OFFICE this date August 07, 2014.

                               GARY LOFTIN, CLERK OF COURT
                               MIKE SPENCE, CHIEF DEPUTY

MARGARET RICHIE GASKINS         By:
        Attorney                          *Deputy Clerk*

------------------------------------------------------------

SERVICE INFORMATION:           Date 8-11-14

Personal ✓  Domiciliary _____  to _____

Unserved _____  because _____

Remarks _____


                *Deputy Sheriff*

SCAN0813201400000078

FILED
SHERIFF RETURN

AUG 1 2 2014

GARY LOFTIN
CLERK OF COURT

2014 AUG  8  AM 11 16

CADDO PARISH
SHERIFF'S OFFICE

098762

## Rule to Show Cause

RED SOX INVESTMENTS LLC   ETAL

     VERSUS

CITY OF SHREVEPORT LOUISIANA   ETAL

NO. 576478-C
STATE OF LOUISIANA
PARISH OF CADDO
FIRST JUDICIAL DISTRICT COURT

TO: **CADDO PARISH, LOUISIANA**
    THRU MALCOLM MURCHISON, ATTORNEY
    401 EDWARDS STREET SUITE 1000
    SHREVEPORT LA 71101

GREETINGS:

   YOU ARE HEREBY ORDERED, DIRECTED and COMMANDED, in the name of the
State of Louisiana and of this Honorable Court, to show cause before this
Court on the **13TH** day of **OCTOBER** , **2014**, at **9:30AM** , why you should
not comply with all that is contained in the certified copy of the order
which accompanies this *RULE AND HEREIN FAIL NOT.*

WITNESS the Honorable Judges of our Court on this date August 07, 2014.

OTHER: MOTION FOR CLASS ACTION
     CERTIFICATION

GARY LOFTIN, CLERK OF COURT
MIKE SPENCE, CHIEF DEPUTY

By: _____
              Deputy Clerk

MARGARET GASKINS
       Attorney

-------------------------------------------------------------------

SERVICE INFORMATION:    Date _____

Personal __✓__ Domiciliary _____ to _____

Unserved _____ because _____

Remarks _____


          Deputy Sheriff

FILED
SHERIFF RETURN

AUG 1 3 2014

GARY LOFTIN
_____
CLERK OF COURT

2014 AUG 8 AM 11 16

CADDO PARISH
SHERIFF'S OFFICE

098761

## *Rule to Show Cause*

sn

RED SOX INVESTMENTS LLC  ETAL          NO. 576478-C
                                        STATE OF LOUISIANA
    VERSUS                              PARISH OF CADDO
                                        FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

TO:  **STEVE PRATOR**
     THRU JOHN M MADISON JR, ATTORNEY
     2350 REGIONS TOWER
     333 TEXAS STREET
     SHREVEPORT LA 71101

                            GREETINGS:

    YOU ARE HEREBY ORDERED, DIRECTED and COMMANDED, in the name of the
State of Louisiana and of this Honorable Court, to show cause before this
Court on the 13TH day of OCTOBER  , 2014, at 9:30AM   , why you should
not comply with all that is contained in the certified copy of the order
which accompanies this RULE AND HEREIN FAIL NOT.

WITNESS the Honorable Judges of our Court on this date August 07, 2014.

OTHER: MOTION FOR CLASS ACTION       GARY LOFTIN, CLERK OF COURT
       CERTIFICATION                 MIKE SPENCE, CHIEF DEPUTY

                            By: _____
                                      Deputy Clerk


                            _____
                            MARGARET RICHIE GASKINS
                                    Attorney
--------------------------------------------------------------------
SERVICE INFORMATION:          Date 8-12-14_____

Personal __✓__ Domiciliary _____ to _____

Unserved _____ because _____

Remarks __________
                          _____
                               Deputy Sheriff

FILED
SHERIFF RETURN

AUG 1 3 2014

GARY LOFTIN
CLERK OF COURT

2014 AUG  8  AM 11 16

CADDO PARISH
SHERIFF'S OFFICE

0 9 8 7 5 9

**RED SOX INVESTMENTS, L.L.C.,**
**ET AL, ON BEHALF OF ITSELF AND**
**A CLASS OF SIMILARLY SITUATED**
**PROPERTY OWNERS**
**VERSUS**

**CITY OF SHREVEPORT, LOUISIANA**
**AND CADDO PARISH, LOUISIANA**

**NUMBER: 576,478-C**

**FIRST JUDICIAL DISTRICT COURT**

**CADDO PARISH, LOUISIANA**

<u>**ORDER**</u>

By agreement of counsel:

IT IS ORDERED that the Exceptions of No Cause and No Right of Action previously filed by the CITY OF SHREVEPORT be and hereby are re-fixed for hearing on the **13th** day of **October**, 2014, at _9:30_ a.m.

DONE AND SIGNED at Shreveport, Louisiana, this ___6___ day of August, 2014.

_____
District Judge

**Service Information:**

**Please serve Plaintiff**
**Through its Counsel of Record**

Mr. Byron A. Richie
Mr. C. Vernon Richie
Richie, Richie & Oberle, LLP
1800 Creswell Ave.
Shreveport, LA 71101
       and
Mr. Richard E. Hiller
Attorney at Law
401 Edwards Street, Suite 1300
Shreveport, LA 71101

**Please serve Defendant**
**City of Shreveport through**
**Its Counsel of Record**

Mr. Edwin H. Byrd, III
Mr. Jerald L. Perlman
Pettiette, Armand, Dunkelman, Woodley
Byrd & Cromwell
400 Texas St. Ste. 400
Shreveport, LA 711101

**Please serve Defendant**
**Caddo Parish through**
**Its Counsel of Record**

Mr. Malcolm Murchison
Mr. Leland G. Horton
Bradley, Murchison, Kelly & Shea
401 Edwards St., Ste. 1000
Shreveport, LA 71101

**Please serve Intervenor**
**Sheriff Steve Prator through**
**His Counsel of Record**

Mr. John M. Madison, Jr.
Wiener, Weiss & Madison
2350 Regions Tower
333 Texas St.
Shreveport, LA 71101

FILED
AUG 0 5 2014
E. G. BRUMLEY
CADDO DEPUTY CLERK OF COURT

*Notice of Filing*                                                sn

RED SOX INVESTMENTS LLC  ETAL          NO. 576478-C
                                       STATE OF LOUISIANA
    VERSUS                             PARISH OF CADDO
                                       FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO  **STEVE PRATOR**
                             THRU JOHN M MADISON JR, ATTORNEY
                             2350 REGIONS TOWER
                             333 TEXAS STREET
                             SHREVEPORT LA 71101

    YOU ARE HEREBY NOTIFIED that on the **5TH**  day of **AUGUST**    , 2014,

CITY OF SHREVEPORT                                    herein, filed

AN ORDER

a copy of which accompanies this notice.

    CLERK'S OFFICE this date August 13, 2014.

                        GARY LOFTIN, CLERK OF COURT
                        MIKE SPENCE, CHIEF DEPUTY

_____     By:_____
        Attorney                     Deputy Clerk

# FILE COPY

## Notice of Filing

sn

RED SOX INVESTMENTS LLC ETAL      NO. 576478-C
                                                   STATE OF LOUISIANA

     VERSUS                                            PARISH OF CADDO
                                                    FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT LOUISIANA ETAL

THE STATE OF LOUISIANA: TO **CADDO PARISH, LOUISIANA**
                                         THRU MALCOLM MURCHISON, ATTORNEY
                                         401 EDWARDS STREET SUITE 1000
                                         SHREVEPORT LA 71101

     YOU ARE HEREBY NOTIFIED that on the **5TH** day of **AUGUST** , 2014,

CITY OF SHREVEPORT                                  herein, filed

AN ORDER

a copy of which accompanies this notice.

     CLERK'S OFFICE this date August 13, 2014.

                         GARY LOFTIN, CLERK OF COURT
                         MIKE SPENCE, CHIEF DEPUTY

                         By: _____

_____                        Deputy Clerk
             Attorney

SCAN08142014000000065

# FILE COPY

## Notice of Filing

RED SOX INVESTMENTS LLC  ETAL          NO. 576478-C
                                        STATE OF LOUISIANA
    VERSUS                              PARISH OF CADDO
                                        FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO  **CITY OF SHREVEPORT**
                             THRU EDWIN H BYRD III, ATTORNEY
                             400 TEXAS STREET SUITE 400
                             SHREVEPORT LA 71101


    YOU ARE HEREBY NOTIFIED that on the **5TH**  day of **AUGUST**    , **2014**,

CITY OF SHREVEPORT                                    herein, filed

AN ORDER



a copy of which accompanies this notice.

    CLERK'S OFFICE this date August 13, 2014.

                             GARY LOFTIN, CLERK OF COURT
                             MIKE SPENCE, CHIEF DEPUTY

_____        By: _____
        Attorney                                Deputy Clerk

# FILE COPY

*Notice of Filing*

sn

RED SOX INVESTMENTS LLC  ETAL      NO. 576478-C
                                   STATE OF LOUISIANA

     VERSUS                     PARISH OF CADDO

CITY OF SHREVEPORT LOUISIANA  ETAL    FIRST JUDICIAL DISTRICT COURT

THE STATE OF LOUISIANA:  TO  **RED SOX INVESTMENTS LLC, ETAL**
                           THRU RICHARD E HILLER, ATTORNEY
                           401 EDWARDS ST SUITE 1300
                           SHREVEPORT, LA  71101

     YOU ARE HEREBY NOTIFIED that on the **5TH**  day of **AUGUST**   , **2014**,

CITY OF SHREVEPORT                       herein, filed

AN ORDER

a copy of which accompanies this notice.

     CLERK'S OFFICE this date August 13, 2014.

                       GARY LOFTIN, CLERK OF COURT
                       MIKE SPENCE, CHIEF DEPUTY

                       By:_____
_____
     Attorney                          Deputy Clerk

SCAN0814201400000067

# FILE COPY

*sn*

## *Notice of Filing*

RED SOX INVESTMENTS LLC  ETAL          NO. 576478-C
                                        STATE OF LOUISIANA
     VERSUS                             PARISH OF CADDO
                                        FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO **RED SOX INVESTMENTS, LLC, ETAL**
                            THRU BYRON RICHIE, ATTORNEY
                            1800 CRESWELL AVE
                            SHREVEPORT, LA  71101


   YOU ARE HEREBY NOTIFIED that on the **5TH**  day of **AUGUST**    , 2014,

CITY OF SHREVEPORT                                    herein, filed

AN ORDER



a copy of which accompanies this notice.

   CLERK'S OFFICE this date August 13, 2014.

                            GARY LOFTIN, CLERK OF COURT
                            MIKE SPENCE, CHIEF DEPUTY


_____          By:_____
        Attorney                            Deputy Clerk

SCAN081420140000000068

# FILE COPY

sn

# *Rule to Show Cause*

RED SOX INVESTMENTS LLC  ETAL

    *VERSUS*

CITY OF SHREVEPORT LOUISIANA  ETAL

NO. 576478-C
STATE OF LOUISIANA
PARISH OF CADDO
FIRST JUDICIAL DISTRICT COURT

TO:  **CITY OF SHREVEPORT**
    THRU EDWIN H BYRD III, ATTORNEY
    400 TEXAS STREET SUITE 400
    SHREVEPORT LA 71101

GREETINGS:

    YOU ARE HEREBY ORDERED, DIRECTED and COMMANDED, in the name of the
State of Louisiana and of this Honorable Court, to show cause before this
Court on the **13TH** day of **OCTOBER**  , **2014** , at **9:30AM**  , why you should
not comply with all that is contained in the certified copy of the order
which accompanies this RULE AND HEREIN FAIL NOT.

WITNESS the Honorable Judges of our Court on this date August 07, 2014.

OTHER: MOTION FOR CLASS ACTION
       CERTIFICATION

GARY LOFTIN, CLERK OF COURT
MIKE SPENCE, CHIEF DEPUTY

By: _____
             Deputy Clerk

MARGARET RICHIE GASKINS
         Attorney

-----------------------------------------------------------------

SERVICE INFORMATION:     Date _8-13-14_

Personal _✓_ Domiciliary _____ to _____

Unserved _____ because _____

Remarks _____



_____
    Deputy Sheriff

**FILED**
SHERIFF RETURN

AUG 1 5 2014

GARY LOFTIN
CLERK OF COURT

||||||||||||||||||||||||||||||||||||||||||

2014 AUG 11 AM 8 16
CADDO PARISH
SHERIFF'S OFFICE

0987600

# Notice of Filing

sn

RED SOX INVESTMENTS LLC  ETAL

    VERSUS

CITY OF SHREVEPORT LOUISIANA  ETAL

NO. 576478-C
STATE OF LOUISIANA
PARISH OF CADDO
FIRST ████ CIAL DISTRICT COURT

THE STATE OF LOUISIANA:  TO  *RED SOX INVESTMENTS LLC, ETAL*
                                 THRU RICHARD E HILLER, ATTORNEY
                                 401 EDWARDS ST SUITE 1300
                                 SHREVEPORT, LA  71101

    YOU ARE HEREBY NOTIFIED that on the **5TH**  day of **AUGUST**   , 2014,

CITY OF SHREVEPORT                               herein, filed

AN ORDER

a copy of which accompanies this notice.

    CLERK'S OFFICE this date August 13, 2014.

                    GARY LOFTIN, CLERK OF COURT
                    MIKE SPENCE, CHIEF DEPUTY

_____     By: _____
      Attorney                      Deputy Clerk

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SERVICE INFORMATION:        Date *8-15-14*

Personal _✓_ Domiciliary ____ to *Red Sox Investments LLC*
                               *thru Richard Hiller*

Unserved _____ because _____

Remarks _____

    *Val Campbell*
     Deputy Sheriff

**FILED**
SHERIFF RETURN

AUG 1 8 2014

GARY LOFTIN
CLERK OF COURT

2014 AUG 14  AM 11 12

CADDO PARISH
SHERIFF'S OFFICE

099756

# Notice of Filing

sn

RED SOX INVESTMENTS LLC ETAL     NO. 576478-C
                                      STATE OF LOUISIANA

      VERSUS                        PARISH OF CADDO
                                       FIRST JUDICIAL DISTRICT COURT

CITY OF SHREVEPORT LOUISIANA ETAL

THE STATE OF LOUISIANA: TO **CITY OF SHREVEPORT**
                                THRU EDWIN H BYRD III, ATTORNEY
                                400 TEXAS STREET SUITE 400
                                SHREVEPORT LA 71101

     YOU ARE HEREBY NOTIFIED that on the **5TH** day of **AUGUST** , 2014,

CITY OF SHREVEPORT                                   herein, filed

AN ORDER

a copy of which accompanies this notice.

    CLERK'S OFFICE this date August 13, 2014.

                          GARY LOFTIN, CLERK OF COURT
                          MIKE SPENCE, CHIEF DEPUTY

                          By: _____
_____
      Attorney                             Deputy Clerk

--------------------------------------------------------

SERVICE INFORMATION:      Date _8-15-14_

Personal _✓_ Domiciliary ___ to _City of Shreveport thru_
_Edwin H. Byrd III (Patchey)_

Unserved ___ because _____

Remarks _____

_____
           Deputy Sheriff

**FILED**
SHERIFF RETURN

AUG 18 2014

GARY LOFTIN
CLERK OF COURT

2014 AUG 14 AM 11 12
CADDO PARISH
SHERIFF'S OFFICE

0 9 9 7 5 5

# Notice of Filing

*sn*

RED SOX INVESTMENTS LLC  ETAL                    NO. 576478-C
                                                 STATE OF LOUISIANA
     VERSUS                                      PARISH OF CADDO
                                                 FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO  RED SOX INVESTMENTS, LLC, ETAL
                             THRU BYRON RICHIE, ATTORNEY
                             1800 CRESWELL AVE
                             SHREVEPORT, LA  71101

    YOU ARE HEREBY NOTIFIED that on the *5TH*  day of *AUGUST*     , 2014,

CITY OF SHREVEPORT                                        herein, filed

AN ORDER

a copy of which accompanies this notice.

    CLERK'S OFFICE this date August 13, 2014.

                              GARY LOFTIN, CLERK OF COURT
                              MIKE SPENCE, CHIEF DEPUTY

_____       By: _____
        Attorney                        Deputy Clerk

------------------------------------------------------------
SERVICE INFORMATION:         Date  *8-18-14*

Personal  ✔  Domiciliary ____   to *Red Sox Investments Thru*

Unserved ____  because  *Byron Richie*

Remarks _____

          *Vic Campbell*              **FILED**
          Deputy Sheriff           SHERIFF RETURN

                                    AUG 19 2014

                                   GARY LOFTIN
                                  CLERK OF COURT

# *Notice of Filing*   sn

RED SOX INVESTMENTS LLC  ETAL            NO. 576478-C
                                        STATE OF LOUISIANA
     *VERSUS*                           PARISH OF CADDO
                                        FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA  ETAL

THE STATE OF LOUISIANA:  TO  **STEVE PRATOR**
                             THRU JOHN M MADISON JR, ATTORNEY
                             2350 REGIONS TOWER
                             333 TEXAS STREET
                             SHREVEPORT LA 71101

   YOU ARE HEREBY NOTIFIED that on the **5TH**  day of **AUGUST**   , 2014,

CITY OF SHREVEPORT                                    herein, filed

AN ORDER

a copy of which accompanies this notice.

   CLERK'S OFFICE this date August 13, 2014.

                              GARY LOFTIN, CLERK OF COURT
                              MIKE SPENCE, CHIEF DEPUTY

_____     By: _____
        Attorney                   Deputy Clerk

----------------------------------------------------------------
SERVICE INFORMATION:          Date 8-15-14

Personal  ✓  Domiciliary ____  to *Steve Prator thru John Madison Jr.*

Unserved ____  because _____

Remarks _____


              Deputy Sheriff

                              ~~FILED~~
                              SHERIFF RETURN

                              AUG 2 0 2014

                              GARY LOFTIN
                              CLERK OF COURT

2014 AUG 14  AM 11 12

CADDO PARISH
SHERIFF'S OFFICE

099753

# Notice of Filing

#576478 sn

RED SOX INVESTMENTS LLC   ETAL          NO. 576478-C
                                        STATE OF LOUISIANA
    VERSUS                              PARISH OF CADDO
                                        FIRST JUDICIAL DISTRICT COURT
CITY OF SHREVEPORT LOUISIANA   ETAL

THE STATE OF LOUISIANA:  TO  **CADDO PARISH, LOUISIANA**
                             THRU MALCOLM MURCHISON, ATTORNEY
                             401 EDWARDS STREET SUITE 1000
                             SHREVEPORT LA 71101

*8-15 @ 10:02*
*unable to contra*
*8-19 @ 1:403*

    YOU ARE HEREBY NOTIFIED that on the **5TH**  day of **AUGUST**   , 2014,

CITY OF SHREVEPORT                                    herein, filed

AN ORDER

SCAN0821201400000064

a copy of which accompanies this notice.

    CLERK'S OFFICE this date August 13, 2014.

                              GARY LOFTIN, CLERK OF COURT
                              MIKE SPENCE, CHIEF DEPUTY

                              By: _____
                                     Deputy Clerk
_____
        Attorney

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
SERVICE INFORMATION:          Date *8-19-14*

Personal ✓  Domiciliary _____ to *Caddo Parish La. thru Malcolm Murchison*

Unserved _____ because _____

Remarks _____

              *Vee Campbell*
              Deputy Sheriff

FILED
SHERIFF RETURN

AUG 2 1 2014

GARY LOFTIN
CLERK OF COURT

2014 AUG 14  AM 11 12

CADDO PARISH
SHERIFF'S OFFICE

099754